UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GONZALES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TP-LINK USA CORPORATION, et al.,<br><br>Defendants. | Case No. 18-cv-05824-RS<br><br>**ORDER DENYING MOTION TO TRANSFER; GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND, AND; DENYING MOTION TO COMPEL, WITHOUT PREJUDICE** |

I. INTRODUCTION

In this putative class action, named plaintiffs Richard Gonzales and Mathew Walker each allege they purchased wireless routers from "TP-Link" that were marketed and sold as conforming with certain performance standards defined by an industry association. Plaintiffs allege that in actual operating conditions the routers achieve nothing close to those claimed performance specifications. The liability theory in the complaint focuses on a claim that the routers do not comply with standards—a contention defendants insist is belied by the actual factual allegations. Defendants argue the complaint shows the routers *do* comply with the standards, and plaintiffs simply misunderstand what those standards mean.

In opposing defendants' motion to dismiss, plaintiffs suggest they are alleging, or could allege, that the marketing of the routers is deceptive even assuming they meet the

specifications of the standards. Because plaintiffs' current arguments are not sufficiently consistent with the allegations of the complaint, the motion to dismiss will be granted, with leave to amend. Defendants' separate motion to transfer venue will be denied. Finally, the parties will be directed to address their discovery disputes anew in light of this order.

## II.  BACKGROUND

Plaintiffs allege they each bought routers labeled as compliant with IEEE 802.11n and/or IEEE 802.11ac standards. "IEEE" refers to the Institute of Electrical and Electronics Engineers. The standards at issue allegedly were developed and adopted by the "Wireless LAN Working Group" of the IEEE's "LAN/MAN Standards Committee." The complaint defines the routers in issue as "the Purported 802.11 Routers."

Plaintiffs allege the Purported 802.11 Routers were advertised as offering particular data transmission speeds. The router Gonzales purchased was represented as providing a speed of 1300 megabits per second on the 5GHz band and 450 megabits per second on the 2.4GHz band for a total of 1750 megabits per second. Walker's router was sold as offering 300 megabits per second on each band for a total of 600 megabits per second.

Gonzales asserts his router provides about 361 megabits per second on the 5GHz band and 70 megabits per second on the 2.4GHz band for a total of only 431 megabits per second—less than a quarter of what was advertised. Walker claims his router only performs at 123 megabits per second on the 5GHz band—41% of the advertised rate.

Defendants are TP-Link USA Corporation and TP-Link North America, both California corporations headquartered in Brea, in the Central District. They move to transfer to the Central District, and to dismiss the complaint.

## III. DISCUSSION

A.  Motion to transfer

"For the convenience of parties and witnesses, in the interest of justice, a district

court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In determining whether to transfer a case under section 1404, courts consider a variety of factors including: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of witnesses, (4) access to evidence, (5) each forum's familiarity with the applicable law, (6) feasibility of consolidation with other claims, (7) local interest in the controversy, and (8) relative court congestion in each forum. *Martin v. Glob. Tel\*Link Corp.*, No. 15-cv-00449, 2015 WL 2124379, at \*2 (N.D. Cal. May 6, 2015). The decision whether to transfer is generally left to the discretion of the district court. *Ventress v. Japan Airlines*, 486 F.3d 1111, 1118 (9th Cir. 2007); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

Here, there is no dispute that the motion to transfer satisfies the threshold requirement of showing that the proposed transferee district is one in which the matter could have properly been brought in the first instance. Defendants insist they have also shown that six of the eight factors bearing on transfer weigh in their favor.

*1. Plaintiffs' choice of forum*

Defendants' contention that this factor weighs in their favor is not persuasive. Defendants are correct that a plaintiff's choice of forum generally is entitled to *less* weight in a putative class action, particularly where the plaintiff cannot show he or she, or the underlying transactions, have any particular specific connection to the forum.  It does not follow, however, that this factor tips in defendants' favor here.

While defendants suggest three of the four named parties are based in the Central District, that counts the two related defendant entities separately. Even if that is otherwise a fair way to number the parties, the fact remains that both plaintiffs—one with an undeniable legitimate connection to this district—chose this forum. Although the

deference to that choice may be somewhat less in a class action, the factor still weighs against transfer.

*2. Convenience of the parties*

Defendants contend litigating in the Central District will be more convenient for them and their employees and witnesses, and only slightly more inconvenient for the one named plaintiff who resides here. While this factor arguably may tip slightly in defendants' favor, given current technology and transportation options, the burdens of litigating in one California district as opposed to another generally are negligible, and defendants have not shown why this case would be an exception.

*3. Convenience of witnesses*

While it may be that most of the witnesses, other than plaintiffs themselves, likely are associated with defendants and reside in the Central District, again the convenience issues as between California districts are virtually non-existent prior to trial (because witnesses generally will be deposed close to where they reside, and travel for counsel is not onerous). The burdens on witnesses are not so extreme as to be dispositive even if the matter goes to trial. Finally, there has been no showing that the location of any third-party witnesses significantly alters the analysis.

*4. Ease of access to evidence*

While the bulk of the documentary and other evidence may very well be in defendants' possession in the Central District, technology renders this point of little import.

*5. Familiarity of each forum with the applicable law*

Defendants acknowledge this factor is neutral.

*6.  Feasibility of consolidation with other claims*

Defendants concede this factor is neutral, as there are no potential consolidation issues.

*7. Local interest in the controversy*

Defendants insist their corporate presence in Brea, California gives the Central District a greater local interest in this action. Because this is a consumer class action, there is no reason to conclude the public interest in the case would not be state-wide.

*8. Relative court congestion*

Although defendants point to statistics they contend show this district's docket is more over-burdened than that in the Central District, there is no plain difference that would justify transfer.

Accordingly, even to the extent that some of the factors may marginally tip in defendants' favor, the clear balance does not support a transfer to the Central District. The motion to transfer will be denied.

B.  Motion to dismiss

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Courts, however, need not accept

legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Here, defendants seek dismissal on grounds that the complaint has not "plausibly" alleged consumers were deceived. Defendants contend the "central flaw" in the complaint is that plaintiffs were not mislead by TP-Link's *advertising* of its wireless networking devices, but rather that they misunderstand the technical standards on which all wireless devices are based.

TP-Link insists it accurately and honestly describes the speed of its wireless networking products in terms of the IEEE 802.11 technical standards that govern those devices—and points out that the complaint fails to offer factual allegations sufficient to support any conclusion to the contrary.[1] In the challenged marketing, TP-Link lists the "signal rate," of the devices, which represents what apparently is known as the "physical layer" of the device. These are the speeds defined in the 802.11 standard. Plaintiffs allege they thought the described speeds referred to what is known as the "application layer" of the devices.

TP-Link offers a technical explanation that while both the physical layer speed and the application layer speed are "network speeds," they reflect different aspects of the network. TP-Link provides the analogy of a car engine, which at "any given moment . . . might be experiencing more revolutions per minute than its wheels." According to TP-Link, the speed defined in the governing wireless networking standard is that of the physical layer, which specifically is the speed advertised in the marketing of the routers in issue. As TP-Link points out, plaintiffs acknowledge and allege that consumers interpret TP-Link's advertising to mean its routers' data speeds are consistent with the wireless-

---

[1] Paragraph 3 of the complaint does assert the Purported 802.11 Routers do not conform to the IEEE standards. In context, however, it appears plaintiffs are challenging what a reasonable consumer should understand compliance with those standards means, rather that alleging that the routers do not meet the technical standards.

networking standards and the data rates defined in those standards. Because there are no factual allegations to support a conclusion that the routers are *not* consistent with those standards, TP-Link contends the complaint fails to state a claim.

In opposition, plaintiffs insist that despite a great deal of technical detail pleaded in the complaint, they are representing ordinary consumers who would not understand the distinctions between "layers" and who would reasonably understand defendants to be making claims about the speed consumers will actually experience when using the routers. While plaintiffs offer nothing to dispute that the routers actually comply with the 802.11 IEEE standards, they also suggest the issue is factual, and should not be decided at the pleading stage, given that the complaint does allege to the contrary, albeit in a conclusory fashion.

Although plaintiffs have stopped short of conceding there is no factual basis to claim the routers do not comply with the 802.11 IEEE standards, their opposition to dismissal turns on a theory not presently pleaded in the complaint—i.e., that the marketing is misleading to an ordinary consumer even assuming the routers comply with the technical standards. Accordingly, the motion to dismiss must be granted, with leave to amend.[2]

C.  Motion to compel

Plaintiff has filed a motion to compel discovery, calendared for June 6, 2019. It appears a primary point of contention between the parties was whether discovery should go forward while this motion to dismiss was pending. Accordingly, the motion to compel is hereby denied without prejudice, and the hearing set for June 6, 2019 is vacated. The

---

[2] In light of this disposition, defendants' additional challenges to the pleading need not be decided. In any amended complaint, however, plaintiffs should ensure that any claims sounding in fraud are pleaded with adequate specificity and that the allegations demonstrate injury-in-fact.

parties are directed to renew meet and confer negotiations in light of this order. In the event the parties fail to reach a resolution, they may prepare a joint letter of not more than 5 pages explaining the discovery dispute. Up to 12 pages of attachments may be added. The joint letter must be electronically filed under the Civil Events category of "Motions and Related Filings > Motions--General > Discovery Letter Brief." The disputes will be then be referred to a Magistrate Judge. The Magistrate Judge to whom the matter is assigned will advise the parties of how that Judge intends to proceed. The Magistrate Judge may issue a ruling, order more formal briefing, or set a telephone conference or a hearing. After a Magistrate Judge has been assigned, all further discovery matters shall be filed pursuant to that Judge's procedures.

## IV.  CONCLUSION

The motion to transfer venue is denied. The motion to compel discovery is denied without prejudice. The motion to dismiss is granted, with leave to amend. Any amended complaint shall be filed within 20 days of the date of this order. The Case Management Conference is continued to June 27, 2019, with a joint statement due one week in advance.

**IT IS SO ORDERED**.

Dated:  May 9, 2019

_____
RICHARD SEEBORG
United States District Judge