**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
100 Pine St., Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

STEPHEN M. RAAB (appearing pro hac vice)
stephen@gutridesafier.com
113 Cherry Street, #55150
Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GONZALES, MATTHEW WALKER, JON HERNANDEZ, JULIANNE CHUANROONG, and DARREN TODD, on behalf of themselves, the general public, and those similarly situated<br><br>  Plaintiffs,<br><br>        v.<br><br>TP-LINK USA CORPORATION,<br><br>        Defendant. | CASE NO. 3:18-cv-05824-RS<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs Richard Gonzales, Matthew Walker, Jon Hernandez, Julianne Chuanroong, and Darren Todd, by and through their counsel, bring this First Amended Class Action Complaint against Defendant TP-Link USA Corporation ("Defendant" or "TP-Link"), on behalf of themselves, the general public, and those similarly situated, for fraud, deceit, and/or misrepresentation; violation of the Consumer Legal Remedies Act ("CLRA"); false advertising; negligent misrepresentation; unjust enrichment; and unfair, unlawful, and/or deceptive trade practices. The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

## INTRODUCTION

1.    Consumers shopping for wireless routers care a lot about the rates at which routers are able to transfer data wirelessly during consumers' actual usage of the routers. Knowing this, manufacturers prominently advertise the bandwidth capabilities of their routers on their websites and product packaging.

2.    TP-Link markets, advertises and represents to consumers that its wireless routers offer wireless connections at particular speeds (also referred to as bandwidth, data transfer rates, or data throughput rates). For example, TP-Link specifically represents that the Archer C7 wireless router (the router model Mr. Gonzales, Mr. Hernandez, and Ms. Chuanroong purchased) offers consumers a wireless connection of 1,300 megabits per second (Mbps) over the 5 GHz band, as well as a wireless connection of 450 Mbps over the 2.4 GHz band, for a total bandwidth of 1,750 Mbps. TP-Link represents that the N600 TL-WDR3600 router Mr. Walker purchased offers simultaneous wireless connections of 300 Mbps over the 5 GHz band and 300 Mbps over the 2.4 GHz band, for a total bandwidth of 600 Mbps. TP-Link represents that the Archer C50 router Ms. Todd purchased offers simultaneous wireless connections of 900 Mbps over the 5 GHz band and 300 Mbps over the 2.4 GHz band, for a total bandwidth of 1,200 Mbps.

3.    Reasonable consumers believe that the advertised speed representations refer to the speed of data transfer that consumers are capable of experiencing when using the routers for wireless data transfers.

4.     But, as used by consumers, TP-Link's wireless routers are incapable of providing bandwidth or speed at anywhere near the advertised rates. For example, under testing conditions highly favorable to the router, the router model purchased by Mr. Gonzales, Mr. Hernandez, and Ms. Chuanroong transferred data at an actual rate that was less than 30% of the advertised rate, and some tests showed even slower rates. Under similarly favorable conditions, Mr. Walker's router model actually transferred data at just 41% of the advertised rate, while other tests showed much lower rates. A reviewer of the router model purchased by Ms. Todd found that the router transferred data wirelessly at rates below 10% of the advertised speeds.

5.     TP-Link has acknowledged in this lawsuit that (a) the advertised speeds are "theoretical maximum" speeds at the "physical layer" of the routers; (b) consumers interact with the "application layer" when using a router; and (c) the speeds at that application layer are necessarily significantly lower than the advertised speeds. In short, TP-Link knows that its routers, as actually used by consumers, will not provide anything close to the advertised speeds.

6.     TP-Link fails to disclose to consumers that, as the routers are actually used by consumers, they transfer data at speeds *far* below the advertised rates. Thus, TP-Link's misrepresentations and omissions regarding the speeds of its wireless routers are false and misleading to reasonable consumers.

7.     As a result of its deceptive, misleading, and unfair practices, TP-Link is able to wrongfully charge and collect a price premium for its routers, to the detriment of consumers and to TP-Link's benefit.

8.     This action seeks: (i) to recover the price premiums paid for the routers (*i.e.*, the difference between the price consumers paid for the products and the price that they would have paid but for TP-Link's deceptive, misleading, unfair, and unlawful conduct, in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis) and any other benefits TP-Link has obtained from sales of the routers (subject to the disclaimer of monetary damages under the CLRA as stated in ¶ 137 below); (ii) an injunction prohibiting the sale of the routers within a reasonable time after entry of judgment, unless the routers' packaging and marketing are modified to eliminate the deceptive,

3

misleading, unfair, and unlawful practices; (iii) an injunction prohibiting TP-Link from using similarly deceptive, misleading, confusing, unfair, or unlawful marketing and labeling regarding the routers' speeds; (iv) statutory, enhanced, and/or punitive damages (subject to the disclaimer of monetary damages under the CLRA as stated in ¶ 137 below); and (v) costs and fees associated with this action.

## PARTIES

9.      Richard Gonzales is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Mr. Gonzales currently resides in San Francisco, California.

10.      Matthew Walker is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Mr. Walker currently resides in Montebello, California.

11.      Jon Hernandez is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Mr. Hernandez currently resides in Long Beach, California.

12.      Julianne Chuanroong is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Ms. Chuanroong currently resides in San Francisco, California.

13.      Darren Todd is, and at all times alleged in this Class Action Complaint was, an individual and a resident of California. Ms. Todd currently resides in Fortuna, California.

14.      Defendant TP-Link USA Corporation is a corporation incorporated under the laws of the state of California, having its principal place of business in Brea, California.

## JURISDICTION AND VENUE

15.      This action is brought by Plaintiffs pursuant, *inter alia*, to the California Business and Professions Code, section 17200, et seq. Plaintiffs and Defendant are "persons" within the meaning of the California Business and Professions Code, section 17201.

16.    The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by TP-Link within, affecting, and emanating from, the State of California.

17.    TP-Link has engaged, and continues to engage, in substantial and continuous business practices in the State of California, including in counties within the Northern District of California.

18.    In accordance with California Civil Code Section 1780(d), Mr. Gonzales files herewith a declaration establishing that he resides in San Francisco, California, and that, while he was in San Francisco, California, he purchased the TP-Link product at issue using Amazon.com.

19.    Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### A.    TP-Link's Misconduct

20.    TP-Link has marketed and sold dozens of wireless routers. Recent and current models include, without limitation, the Archer C5400, Archer C4000, Archer C3150 V2, Archer C2300, Archer AC1900, Archer A7, Archer C8, Archer C7, Archer C9, Archer C1200, Archer C69, Touch P5, Archer C20, Archer C50, TGR1900, Archer C900, TL-WR902AC, TL-WR1043N, TL-WR940N, TL-WR802N, TL-WR841N, Archer C5200, Archer C3000, Archer A2300, TL-WDR3500, TL-WDR3600, TL-WDR4300, and TL-WDR4900. Each of these wireless routers, and any others sold by TP-Link within the last four years, are referred to collectively herein as, the "TP-Link Routers" or the "Routers."

21.    For each of the TP-Link Routers, TP-Link provides specifications on the product packaging representing the wireless data rates or speed (in Mbps) that the router supposedly offers.

22.    For example, the product package for the Archer C7 TP-Link Router states the alleged speeds of the router on the front of the package, such as: "1300 + 450Mbps Wireless Speed" or "450Mbps + 1300Mbps" or "2.4GHz 450Mbps and 5GHz 1300Mbps." Examples of relevant portions of such packaging are below:

5





FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

1

2

3

4

5

6

7

8

9

10



11   23.    An image of the front of the product packaging for the Archer C7 was included

12   on the Amazon.com product page for the Archer C7.

13   24.    The front of the packaging for the N600 TL-WDR3600 contains the following,

14   substantially similar, statement, which appears in large, prominently displayed letters, with its

15   placement on the package depicted in the second image below:

16

17

18   

19

20

21

22

23

24

25

26

27

28

7



25.     An image of the front of the product packaging for the TL-WDR3600 was included on the Amazon.com product page for the TL-WDR3600.

26.     The front of the packaging for the Archer C50 contains the following, substantially similar, representation, in prominently displayed letters, toward the bottom of the front face of the package:



27.     TP-Link sells the TP-Link Routers through various retailers, including both brick-and-mortar retailers and online retailers.

28.    To promote the sale of the TP-Link Routers, TP-Link represents to all its retailers that the TP-Link Routers provide the wireless data transfer rates set forth in TP-Link's marketing, labels, and specifications. TP-Link provides substantially similar if not identical information to all such retailers, and TP-Link intends for the retailers to pass on the information to consumers.  The representations made to retailers demonstrates that TP-Link intends for consumers to understand the wireless data transfer rates that are listed on the packaging as the actual transfer rates that consumers will experience.  Some examples of the speed representations TP-Link makes to the public are set forth below.

29.    TP-Link's Amazon.com product page for the Archer C7, recorded on or about January 14, 2016, included the following representations, as depicted in the images below:

- 2.4GHz 450Mbps + 5GHz 1300Mbps

- 1.75Gbps total available bandwidth, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz

- delivering up to 1750Mbps of Wi-Fi speed over dual 5GHz (1300Mbps) and 2.4GHz (450Mbps) bands

- 5GHz 1300Mbps + 2.4GHz 450Mbps

- Lag-Free Gaming and HD Streaming



9

1

2    **TP-LINK Archer C7 AC1750 Dual Band Wireless AC Gigabit Router,**

3    **2.4GHz 450Mbps+5Ghz 1300Mbps, 2 USB Port, IPv6, Guest Network**
by TP-LINK

4    ★★★★☆ ▾    2,841 customer reviews  |  533 answered questions
**#1 Best Seller**  in Computer Routers

5

6    List Price: $139.99
        Price: $88.54 & **FREE Shipping.** Details
You Save: $51.45 (37%)

7

8    In Stock.
Ships from and sold by Amazon.com. Gift-wrap available.

9    Model: **Router Only**

| Router Only $89.54 | Router w/ IP Camera bundle $109.99 | Router w/ Modem Bundle $147.53 |

10

11    ☐ Include installation and get up to a $20 Amazon Gift Card | Estimate $28.99 |
        ZIP  90210 ⌄  Learn more

12

13    - 1.75Gbps total available bandwidth, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz
    - Supports 802.11ac - The next generation of Wi-Fi, and be connected to extra devices

14    - Dual USB Ports to share files & media, and printer locally with networked devices or remotely via FTP server
    - Privacy with Guest Network Access provides secure Wi-Fi access for guests sharing your home or office network

15    - IP-based Bandwidth Control makes it easier for you to manage the bandwidth of individual devices connected to
      the router
    - Easy one-touch WPA wireless security encryption with the WPS button

16    - Industry-leading 2-year warranty and unlimited technical support. Technical Support: +1 866 225 8139; Hotline en
      Français: +1 855 987 5465.

17    - 1.75Gbps total available bandwidth, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz
    - Supports 802.11ac - The next generation of Wi-Fi, and be connected to extra devices

18    - Dual USB Ports to share files & media, and printer locally with networked devices or remotely via FTP server
    - Privacy with Guest Network Access provides secure Wi-Fi access for guests sharing your home or office network

19    - IP-based Bandwidth Control makes it easier for you to manage the bandwidth of individual devices connected to
      the router

20    - Easy one-touch WPA wireless security encryption with the WPS button
    - Easy Setup Assistant with multi-language support provides a quick & hassle free installation process

21    - TP-LINK Live 24/7 Technical Support
    ⌃ Show less

22

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS



**Lag-Free Gaming and HD Streaming**

- Experience smoother HD streaming and online gaming with high-performance AC1750 Wi-Fi, delivering up to 1750Mbps of Wi-Fi speed over dual 5GHz (1300Mbps) and 2.4GHz (450Mbps) bands.

- Fully expanded Wi-Fi coverage with three external detachable antennas and three internal antennas.

- 2.4 GHz
  3 optimized internal antenna
- 5GHz 5dBi
  3 external antennas make full use of clean 5GHz wireless band

**View larger**

**Connect More Devices**

- Give every device the bandwidth it needs, setting limits and controlling traffic with IP-Based QoS.

- Set limits on when and how devices can connect to internet and keep children safe with parental controls.

- Guest Network provides visitors with Wi-Fi access separate from your main network.

- Easily set-up your Wi-Fi devices with a secure connection using the WPS button.

- Advanced security encryption protects your data.



FTP Server
Media Server
Storage Sharing

| | Archer C3200 | Archer C2600 | Archer C9 | Archer C7 | Archer C5 |
|---|---|---|---|---|---|
| Wireless Combined Speed | 3200Mbps | 2600Mbps | 1900Mbps | 1750Mbps | 1200Mbps |
| Wi-Fi Speed | 5GHz 1300Mbps + 5GHz 1300Mbps + 2.4GHz 600Mbps | 5GHz 1733Mbps + 2.4GHz 800Mbps | 5GHz 1300Mbps + 2.4 GHz 450Mbps | 5GHz 1300Mbps + 2.4 GHz 450Mbps | 5GHz 867Mbps + 2.4GHz 300Mbps |
| Wireless Range | Ultimate | Ultimate | Best | Best | Better |

(https://web.archive.org/web/20160114185801/http://www.amazon.com/TP-LINK-Archer-C7-Wireless-1300Mbps/dp/B00BUSDVBQ)

30.    TP-Link's Amazon.com product page for the Archer C7, recorded on or about September 18, 2017, included the same image of the product packaging depicted above and the representations set forth and depicted below:

- 1.75Gbps total available bandwidth, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz

- Dual Band 2.4GHz (up to 450Mbps) + 5GHz (up to 1300Mbps)

11

- Dual 2.4GHz and 5GHz bands deliver up to 1750Mbps of ultra-fast Wi-Fi speed

- With the Archer C7's abundance of bandwidth, you can game online, stream in HD and share large files across your home without ever buffering or lagging.

- "The Best Router for Most People" - The New York Times
- 1.75Gbps total available bandwith, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz
- Supports 802.11ac - The next generation of Wi-Fi, and be connected to extra devices
- Dual USB Ports to share files & media, and printer locally with networked devices or remotely via FTP server
- Privacy with Guest Network Access provides secure Wi-Fi access for guests sharing your home or office network
- IP-based Bandwidth Control makes it easier for you to manage the bandwidth of individual devices connected to the router
- Easy one-touch WPA wireless security encryption with the WPS button
- Easy Setup Assistant with multi-language support provides a quick & hassle free installation process
- Industry-leading 2-year warranty and unlimited technical support. Technical Support: +1 866 225 8139; Hotline en Français: +1 855 987 5465.
- 1.75Gbps total available bandwith, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz
- Supports 802.11ac - The next generation of Wi-Fi, and be connected to extra devices
- Dual USB Ports to share files & media, and printer locally with networked devices or remotely via FTP server
- Privacy with Guest Network Access provides secure Wi-Fi access for guests sharing your home or office network
- IP-based Bandwidth Control makes it easier for you to manage the bandwidth of individual devices connected to the router
- Easy one-touch WPA wireless security encryption with the WPS button
- Easy Setup Assistant with multi-language support provides a quick & hassle free installation process
- TP-LINK Live 24/7 Technical Support

 Show less

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS



### Blazing Wi-Fi. Ultimate Coverage

Press play and forget about buffering with the Archer C7. Get into the action instantly with a router hailed by The New York Times as perfect for just about everyone. The Archer C7 uses six powerful antennas and advanced Wireless AC technology to create high-speed Wi-Fi that reaches every room.

You can assign devices to either the router's 2.4 GHz or 5 GHz bands, letting you run all your devices at maximum speed. For fast wired connections, you can connect devices such as your Xbox, PlayStation, PC or Mac directly to the Archer C7 through its four Gigabit Ethernet ports. Plus, it's easy to share printers and external hard drives across your Wi-Fi network using the router's dual USB ports.

View larger



View larger

**Product Specifications**

- Dual Band 2.4GHz (up to 450Mbps) + 5GHz (up to 1300Mbps).
- 3x External Antennas + 3x Internal Antennas.
- 4x Gigabit Ethernet ports + 1x Gigabit WAN port.
- 2x USB 2.0.



View larger



View larger

### Six Antennas for Incredible Coverage

Three external and three internal antennas send a powerful Wi-Fi signal across your home. It's easy to reposition the external antennas so you can focus Wi-Fi towards rooms that need it most.

### Powerful CPU for High-Speed Processing

At the heart of the Archer C7 is a formidable processor that balances the demand of your devices to keep all your Wi-Fi connections running at blazing speeds.

Game online, stream movies, download files and share media while the powerful processor seamlessly runs each Wi-Fi band, every connection and all of the router's hardware and software.

### More Bandwidth for More Streaming

Dual 2.4 GHz and 5 GHz bands deliver up to 1750 Mbps of ultra-fast Wi-Fi speed, allowing all your devices to connect to your home network at once.

With the Archer C7's abundance of bandwidth, you can game online, stream in HD and share large files across your home without ever buffering or lagging.

| | Archer C7 | Archer C9 - Amazon's Choice for Essential Wi-Fi Router | Archer C2300 | Archer C3150 V2 | Archer C5400 | Talon AD7200 |
|---|---|---|---|---|---|---|
| Wireless Spec | AC1750 | AC1900 | AC2300 | AC3150 | AC5400 | AD7200 |
| Wi-Fi Speed | Up to 1750Mbps | Up to 1900Mbps | Up to 2225Mbps | Up to 5334Mbps | Up to 5334Mbps | Up to 7133Mbps |
| Wireless Range | Better | Better | Better | Best | Best | Best |

(https://web.archive.org/web/20170918083526/https://www.amazon.com/TP-LINK-Archer-C7-Wireless-Gigabit/dp/B00BUSDVBQ)

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

1       31.   TP-Link's Amazon.com product page for the Archer C50, recorded on or about

2   May 31, 2016, included the following representations, as depicted below:

3   - 5GHz 867Mbps + 2.4GHz 300Mbps

4   - Smooth HD streaming and online gaming with high-performance AC1200 Wi-Fi
    over 5GHz (867Mbps) and 2.4GHz (300Mbps) bands

5   - delivering up to 1200Mbps of Wi-Fi speed over dual 5GHz (867Mbps) and
6     2.4GHz (300Mbps) bands

7   - Give every device the bandwidth it needs

## TP-LINK AC1200 Wireless Dual-Band Wi-Fi Router, 5GHz 867Mbps + 2.4GHz 300Mbps (Archer C50)

by TP-LINK

★★★★☆ ▼ | 125 customer reviews | 55 answered questions

Was: ~~$57.97~~
Price: **$54.99** & **FREE Shipping**. Details
You Save: $2.98 (5%)

**In Stock.**
Ships from and sold by Amazon.com. Gift-wrap available.

Style: **Router Only**

| Router Only | Router w/ Cable Modem bundle |
|-------------|------------------------------|
| $54.99 | $109.98 |

- Upgrades networks to powerful 802.11ac Wi-Fi technology
- Smooth HD streaming and online gaming with high-performance AC1200 Wi-Fi over 5GHz (867Mbps) and 2.4GHz (300Mbps) bands
- Superior, far-reaching Wi-Fi coverage with two high-quality dual band antennas
- Fast wired connections using four Ethernet Ports
- Share files, photos, music, and video across your network using the USB port
- Adjust Wi-Fi settings from your mobile device (Android, iOS) with the TP-LINK Tether App
- Supports 802.11ac and is backwards compatible with 802.11 a/b/g/n
- Industry-leading 2-year warranty and 24/7 technical support

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

| | Archer C3200 | Archer C2600 | Archer C9 | Archer C7 | Archer C5 | Archer C50 |
|---|---|---|---|---|---|---|
| Combined Wi-Fi Speed | 3200Mbps | 2600Mbps | 1900Mbps | 1750Mbps | 1200Mbps | 1200Mbps |
| Wi-Fi Speed | 5GHz 1300Mbps + 5GHz 1300Mbps 2.4GHz 600Mbps | 5GHz 1733Mbps + 2.4GHz 800Mbps | 5GHz 1300Mbps + 2.4GHz 600Mbps | 5GHz 1300Mbps + 2.4GHz 450Mbps | 5GHz 867Mbps + 2.4GHz 300Mbps | 5GHz 867Mbps + 2.4GHz 300Mbps |
| Wireless Range | Best | Best | Better | Better | Good | Good |

21

22

23

(https://web.archive.org/web/20160531210501/http://www.amazon.com/TP-LINK-Wireless-Dual-Band-Archer-C50/dp/B0168G0KZY.)

24

25        32.    TP-Link's Amazon.com product page for the Archer C50, recorded on or about

26   November 28, 2018, included the following representations, as depicted below:

27        •    with speeds up to 1200 Mbps (N300 + AC900)

28        •    Stream in 4K on multiple devices while reducing buffering

15

- Experience smoother HD action sequences over dual 5GHz (867Mbps) and 2.4GHz (300Mbps) bands, whether for gaming or streaming

- Dual Band 2.4GHz (up to 300Mbps) + 5GHz (up to 867Mbps)

- Wi-Fi Speed: up to 1167Mbps

## TP-Link AC1200 Dual Band Router - Wireless AC Router for Home(Archer C50)

by TP-Link

★★★★☆ ⌄   3,284 customer reviews  |  1000+ answered questions

List Price: $59.99
   Price: $39.98 & FREE Shipping. Details
You Save: $20.01 (33%)

**Note:** Available at a lower price from other sellers that may not offer free Prime shipping.

Style: **AC1200**

| AC1200 | AC1900 | AC3150 | AC5400 |
|---|---|---|---|
| **$39.98** | $111.98 | $177.11 | $189.99 |

- Upgrade to AC WiFi with speeds up to 1200 Mbps (N300+AC900)
- Fast Ethernet ports, ideal for homes with up to 100 Mbps internet plans
- Stream in 4K on multiple devices while reducing buffering
- Supports Amazon Alexa (router cannot be voice-controlled by Alexa) and works with all WiFi devices, AC and older
- TP-Link Tether app - Easily set up and manage your home network
- 2-year warranty and FREE 24/7 technical support
- J.D. Power Ranked TP-Link "Highest in Customer Satisfaction for Wireless Routers" in 2017

16





| | Archer C50 | Archer C1200 | Archer C7 | Archer C9 – Amazon's Choice for Essential Wi-Fi Router | Archer C2300 | Archer C3150 V2 |
|---|---|---|---|---|---|---|
| Wireless Spec | AC1200 | AC1200 | AC1750 | AC1900 | AC2300 | AC3150 |
| Wi-Fi Speed | Up to 1167Mbps | Up to 1167Mbps | Up to 1750Mbps | Up to 1900Mbps | Up to 2225Mbps | Up to 3167Mbps |
| Wireless Range | Good | Better | Better | Better | Better | Best |

(https://web.archive.org/web/20181128032955/https://www.amazon.com/TP-Link-AC1200-Dual-Band-Router/dp/B0168G0KZY.)

33.    TP-Link's Amazon.com product page for the N600 TL-WDR3600, recorded on or about April 11, 2015, included the following representations, as depicted below:

- 2.4GHz 300Mbps + 5GHz 300Mbps
- Simultaneous 2.4GHz 300Mbps and 5GHz 300Mbps connections for 600Mbps of total available bandwidth
- up to 300Mbps on each band
- its WAN to LAN throughput can achieve up to 800Mbps

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

## TP-LINK TL-WDR3600 Wireless N600 Dual Band Router, Gigabit, 2.4GHz 300Mbps+5Ghz 300Mbps, 2 USB port, Wireless On/Off Switch

by TP-LINK

⭐⭐⭐⭐☆ ▾ | 607 customer reviews | 88 answered questions

List Price: ~~$84.99~~
Price: **$55.99** & **FREE Shipping**. Details
You Save: $29.00 (34%)

**In Stock.**
Ships from and sold by Amazon.com. Gift-wrap available.

 **Need Some Help?**
Book a top-rated computer technician on Amazon. Backed by our Happiness Guarantee.
19 offers from $65.00

- Simultaneous 2.4GHz 300Mbps and 5GHz 300Mbps connections for 600Mbps of total available bandwidth
- 2*USB Ports - Easily share printers, files or media with your friends and family locally or over the internet
- Full gigabit ports ensure ultimate transfer speeds, IPv6 Ready
- Achieves blazing WAN to LAN throughput of over 800Mbps with hardware NAT
- Built-in media server allows users to share music, video and photos with Windows Media Player, PS3 or X-BOX 360



**N600 Concurrent Dual Band Wireless**
The N600 Dual Band Gigabit Wireless Router TL-WDR3600 broadcasts and receives both 2.4GHz and 5GHz signals simultaneously at up to 300Mbps on each band. Like two wireless routers in one, the TL-WDR3600 allows you to run simple tasks such as e-mail and web browsing over the 2.4GHz band, while using bandwidth-intensive or latency-sensitive applications, such as streaming HD video or playing online games, over the less crowded 5GHz band, simultaneously.



300Mbps on each band. Like two wireless routers in one, the TL-WDR36 the 2.4GHz band, while using bandwidth-intensive or latency-sensitive the less crowded 5GHz band, simultaneously.

**Gigabit Fast Data Transfer Speed**
With a built-in Gigabit Ethernet Switch, the TL-WDR3600 provides you with a robust and extremely fast wired network. Moreover, its WAN to LAN throughput can achieve up to 800Mbps, allowing you to unleash the full potential of your network. You can use the Ethernet ports for printer, NAS, TV, and other network devices so that users can all share those devices through the wireless or wired connection.

(https://web.archive.org/web/20150411025638/https://www.amazon.com/TP-LINK-TL-WDR3600-Wireless-Gigabit-300Mbps/dp/B008RV51EE.)

34.    TP-Link included similar representations on its own website. For example, the primary webpage for the Archer C7 stated and continues to state that it has "Simultaneous

2.4GHz 450Mbps and 5GHz 1300Mbps connections for 1.75Gbps of total available bandwidth," prominently toward the top of the webpage, and the webpage previously stated that the Archer C7 has "1300Mbps wireless speeds over the crystal clear 5GHz band and 450Mbps over the 2.4GHz band." (*See* https://web.archive.org/web/20160421101638/http://www.tp-link.us/products/details/cat-9_Archer-C7.html and https://www.tp-link.com/us/home-networking/wifi-router/archer-c7/?utm_medium=select-local.)

35.    TP-Link's primary webpage for the N600 TL-WDR3600 similarly represents, prominently toward the top of the webpage, that the router has "[s]imultaneous 2.4GHz 300Mbps and 5GHz 300Mbps connections for 600Mbps of total available bandwidth." The webpage also represented and continues to represent that "[u]sers can run day-to-day applications, such as e-mail and web browsing over the 2.4GHz band at 300Mbps while using bandwidth intensive or latency sensitive applications, such as streaming HD video or playing online games, over the clearer 5GHz band at 300Mbps, at the same time." The webpage also contains a comparison chart stating that the "[s]peed" of the TL-WDR3600 is "2.4GHz 300Mbps + 5GHz 300 Mbps." (*See* https://web.archive.org/web/20160422032652/http://www.tp-link.us/products/details/cat-5506_TL-WDR3600.html and https://www.tp-link.com/us/home-networking/wifi-router/tl-wdr3600.)

36.    As indicated above, while the packaging for the TP-Link Routers and the product pages for TP-Link Routers on TP-Link's website, Amazon.com, and other online retailers may exhibit some variations, all of the product pages contain substantially similar representations that the TP-Link Routers provide certain speeds (identified in Mbps). As set forth below, all of those representations are understood in the same way by consumers and all of those representations are false and misleading in the same way.

37.    In deciding whether to purchase a router, reasonable consumers, including Plaintiffs, care about the wireless data speeds they are capable of experiencing and will actually experience for wireless data transfers.

38.    But the speed representations that TP-Link makes regarding the TP-Link Routers do not actually refer to speeds the consumer is capable of experiencing when using the product.

19

Instead, as TP-Link told this Court after this case was filed, its speed representations only describe the "theoretical maximum" speeds or bandwidth "in terms of the IEEE 802.11 technical standard that governs those devices" at the "physical layer and MAC sublayer—*not* realized speeds for file transfer, which are necessarily lower." (*See* Dkt. #16 at 1, 10.) TP-Link further told this Court after this case was filed that "[t]he application layer is the one closest to the end user and the one in which users interact with directly" and that "the data rate measured at the application layer is always lower than the physical layer data rate." (*See* Dkt. #16 at 10.) In short, TP-Link has acknowledged to this Court after this case was filed that it prominently advertised speeds that consumers could not possibly experience.

39.    Despite its admissions to this Court, TP-Link does not qualify the representations it makes *to consumers* regarding the TP-Link Routers' data transfer speeds. For example, it does not state on the packaging or on product pages that the speeds actually achievable for data transfer will be far lower. Nor does it tell consumers on the packaging that the speeds relate only to the internal "physical" layer rather than to the "application" layer (nor explain what these terms mean). Although TP-Link states on product packaging and on product pages that its routers are compliant with various standards, such as the IEEE 802.11 technical standard, it does not say that its speed representations such as "up to 1750Mbps of Wi-Fi speed over dual 5GHz (1300Mbps) and 2.4GHz (450Mbps) bands" or "5GHz 1300Mbps + 2.4GHz 450Mbps" are to be interpreted only as those terms are used in the 802.11 standard, *i.e.,* only with respect to the "physical layer" rather than being speeds actually achievable by consumers who are transferring data. Indeed, TP-Link made multiple representations regarding the speed (or bandwidth or data transfer rates) of its Routers *separately from and independently of* representations regarding the Routers' compliance with the IEEE standards. TP-Link knew that typical consumers would not be familiar with the technical details of the IEEE standards. And even if they were familiar with such details, because TP-Link was claiming that the Routers complied with the standards *and separately* was claiming that the routers provided the represented data transfer rates, consumers would have even less reason to believe that the data

1   transfer rates had to be interpreted as applying only to the "physical layer" described in the

2   standards, rather than to the overall speed achievable at the application layer.

3        40.    Reasonable consumers understand (and Plaintiffs understood) TP-Link's

4   representations to mean that, in the absence of limitations on the data transfer rate from factors

5   external to the TP-Link Routers, the TP-Link Routers provide, and ordinary users are capable

6   of experiencing, the advertised speeds for wireless data transfers.

7        41.    Both testing and TP-Link's own admissions reveal that TP-Link's speed

8   representations are false, misleading, and unfair to reasonable consumers. In December 2015,

9   Tom's Guide published a review of the Archer C7. As part of the review, the author tested

10  router's wireless data rate over the 5 GHz band, using a sophisticated network software

11  package. Despite the fact that the router was placed at a distance of only five feet from the

12  source, the router's peak speed at 5 GHz was only 360.6 Mbps (less than 30% of the advertised

13  1300 Mbps). (*See* https://www.tomsguide.com/us/tp-link-archer-c7-router,review-3289.html.)

14  In testing by TechGearLab, the results were even worse: the Archer C7 averaged between 166

15  and 211 Mbps on the 5GHz band (short and medium distance tests) and between 35 and 42

16  Mbps on the 2.4GHz band (short and medium distance tests). (*See*

17  https://www.techgearlab.com/reviews/small-and-home-office/wireless-router/tp-link-archer-c7-

18  ac1750.)

19       42.    Plaintiffs' investigator also tested the Archer C7. That testing established that the

20  Archer C7 is incapable of achieving the wireless data rates advertised by TP-Link. In particular,

21  the top speed at 5 GHz was even less than the speed observed by Tom's Guide. The

22  investigator further observed that the router offered only about 70 Mbps over the 2.4 GHz band.

23  This testing was performed on the TP-Link router under circumstances that were most

24  favorable to the router. Accordingly, the investigator's tests show how the router operates in the

25  best-case scenario. Consumers using the router under real-world conditions would generally

26  have significantly worse performance.

27       43.    In June 2018, Plaintiffs' investigator obtained the TP-Link N600 Wireless Dual

28  Band Gigabit Router, model number TL-WDR3600, for the purposes of testing the router's

wireless data rate. The testing confirmed that the router is incapable of achieving the wireless data rates advertised by TP-Link. In particular, the testing confirmed that the 5 GHz band (which, according to TP-Link's own statement on the router's packaging, is "clearer" than the 2.4 GHz band, and is more appropriate for "bandwidth intensive or latency sensitive applications, such as streaming HD video or playing online games"), can transfer data at only 123 Mbps—only 41% as fast as the 300 Mbps speed advertised by TP-Link for the router. The testing was performed on the TP-Link router under circumstances that were most favorable to the router. Accordingly, the investigator's tests show how the router operates in the best-case scenario. Consumers using the router under real-world conditions would generally have significantly worse performance.

44.    Testing of the TL-WDR3600 by Hexus.net, at a close distance of five feet between a laptop and the router, showed that the average wireless speed on the 2.4GHz band was about 69 Mbps and the average wireless speed on the 5GHz band was about 85.5 Mbps. (*See* https://hexus.net/tech/reviews/network/50617-tp-link-tl-wdr3600-router/?page=2.)

45.    Testing of the Archer C50 by Lifewire showed that it too could not reach speeds anywhere close to its advertised speeds. Wireless speeds ranged between 47 Mbps and 65 Mbps, a wired connection provided only 85 Mbps, and the testers concluded "No matter what we did, we weren't able to get even half of our advertised internet speeds, even with just one device connected." (*See* https://www.lifewire.com/tp-link-archer-c50-review-4589446.)

46.    Before TP-Link released its TP-Link Routers, it tested each of their wireless data transfer rates, and was aware of the rates of which they were capable of transferring data under various conditions. TP-Link—one of the world's largest manufacturers of wireless routers— would not release a product without first testing its wireless data transfer rates. Accordingly, TP-Link knew that consumers would never be able to experience the advertised speeds of the TP-Link Routers.  TP-Link also knew that typical consumers would have no understanding that its representations related only to the "physical layer" or that the speeds that would actually be experienced by the user were far below those that might exist at the "physical layer."

47.     TP-Link failed to adequately inform consumers that the TP-Link Routers would transfer data at speeds far below the advertised rates when actually used by consumers, even when tested under conditions most favorable to the TP-Link Routers.

48.     TP-Link failed to adequately inform consumers that the TP-Link Routers could cause or contribute to, and were likely to cause or contribute to, slow data transfer rates experienced by consumers (rates below what the consumers expected and below what the consumers would have been able to obtain if the Routers performed as advertised).

49.     As a result of TP-Link's misrepresentations, omissions, and misleading and unfair practices, TP-Link is able to charge, and consumers are willing to pay, a higher price for the Routers than what TP-Link would charge if the Routers were labeled and marketed in a truthful, non-deceptive, and fair manner. Accordingly, consumers have sustained out-of-pocket losses consisting of, at a minimum, the difference in price between (a) what they paid for the TP-Link Routers and (b) the prices that they would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate disclosures. That price premium can be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

50.     In the absence of injunctive relief, reasonable consumers are likely to continue to be harmed by false, misleading, and unfair representations with respect to the data rates of the TP-Link Routers because consumers will be unable to determine whether such representations are false, misleading, or unfair, without purchasing and testing such TP-Link Routers.

**B.      Plaintiffs' Particular Experiences**

**1.      Mr. Gonzales' Experience**

51.     In the spring of 2016, Mr. Gonzales was shopping for a new wireless router. He was specifically looking for a router that could transfer data at a high rate of speed. Mr. Gonzales researched his options using a variety of resources available on the Internet, including TP-Link's website.

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

52.    One of the routers advertised on TP-Link's website was the Archer C7 AC1750 Wireless Dual Band Gigabit Router. Mr. Gonzales saw the representation on TP-Link's website that the router offered "[s]imultaneous 2.4GHz 450Mbps and 5GHz 1300Mbps connections for 1.75Gbps of total available bandwidth." He also saw the representation on the website that "[w]ith 1300Mbps wireless speeds over the crystal clear 5GHz band and 450Mbps over the 2.4GHz band, the Archer C7 is the superior choice for seamless HD streaming, online gaming and other bandwidth-intensive tasks." (*See* https://web.archive.org/web/20160421101638/ http://www.tp-link.us/products/details/cat-9_Archer-C7.html.)

53.    Before purchasing the product on Amazon.com, Mr. Gonzales also reviewed and relied on the data transfer speed representations on the Amazon.com product page for the Archer C7, as identified in paragraph 29 above, which originated from TP-Link.

54.    Mr. Gonzales understood TP-Link's speed representations to identify the wireless data rates actually available to and capable of being experienced by him and other consumers when using the Router for wireless data transfer. Based on TP-Link's speed representations, Mr. Gonzales believed the Archer C7 would transfer data wirelessly at 450 Mbps on the 2.4 GHz band and 1,300 Mbps on the 5 GHz band.

55.    The advertised wireless speeds of the router were material to Mr. Gonzales's purchasing decision because (a) he wanted to own and use a router capable of actually providing 1750Mbps of wireless bandwidth to him, in the event he ever wanted to and was able to place such demand on the router, and (b) he wanted to have the ability to take advantage of future increases in speeds and/or bandwidths provided or required by device manufacturers, internet service providers, and/or content providers. Mr. Gonzales understood that the capabilities and requirements of technology and technological services increase over time, and can do so quickly and dramatically, and he did not want to have to purchase a new router to take advantage of such advancements.

56.    In reliance on Defendants' representations, Mr. Gonzales purchased the router, in April 2016, on Amazon.com.

57.    After purchasing and using the router, Mr. Gonzales discovered that the router is incapable of achieving the advertised speeds, regardless of whether he uses the 2.4 GHz band or the 5.0 GHz band, and TP-Link admits that the user cannot experience the advertised speeds (*see* ¶¶ 38, 41-42, above).

58.    Had Mr. Gonzales known that the wireless data rates actually available to and capable of being experienced by him when using the Router for wireless data transfer were far below the advertised speeds, he would not have paid as much for the router, or would have purchased a different wireless router.

59.    As a result of TP-Link's misrepresentations, Mr. Gonzales has sustained an out-of-pocket loss consisting of, at a minimum, the difference in price between (a) what he paid for the router and (b) the price that would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate disclosures, which could be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

60.    Mr. Gonzales intends to purchase high-speed routers in the future and intends to include TP-Link Routers in his consideration of routers.  When faced with TP-Link's advertising and labeling in the future, Mr. Gonzales will be unable to determine the true speed of the router that he will be capable of experiencing for data transfer, unless he first purchases and tests the product. Indeed, Mr. Gonzales will not know whether TP-Link's speed representations must be interpreted as applying only to the "physical" layer, nor the relationship between speeds at that layer and speeds that he will actually achieve for data transfer. Thus, in the absence of injunctive relief, Mr. Gonzales is likely to be harmed again by false, misleading, and unfair representations with respect to the data rates of the TP-Link Routers because Mr. Gonzales will be unable to determine whether such representations are false, misleading, or unfair, without purchasing and testing such TP-Link Routers.

### 2.    Mr. Walker's Experience

61.    In the spring of 2015, Mr. Walker was shopping for a new wireless router. He was specifically looking for a router that could transfer data at a high rate of speed. Mr. Walker

25

researched his options using a variety of resources available on the Internet, including TP-Link's website.

62.    One of the routers advertised on TP-Link's website was the N600 Wireless Dual Band Gigabit Router, model number TL-WDR3600. Mr. Walker saw the representation on TP-Link's website that the router offered "[s]imultaneous 2.4GHz 300Mbps and 5GHz 300 Mbps connections for 600Mbps of total available bandwidth." He also saw the representation that "[u]sers can run day-to-day applications, such as e-mail and web browsing over the 2.4GHz band at 300Mbps while using bandwidth intensive or latency sensitive applications, such as streaming HD video or playing online games, over the clearer 5GHz band at 300Mbps, at the same time." He further saw the comparison chart stating that the "[s]peed" of the router was 300Mbps at 2.4GHz, and 300 Mbps at 5GHz.

63.    Before purchasing the product on Amazon.com, Mr. Walker also reviewed and relied on the data transfer speed representations on the Amazon.com product page for the TL-WDR3600, as identified in paragraph 33 above, which originated from TP-Link regarding the wireless data speed of the router.

64.    Mr. Walker further saw the product packaging, which was depicted on Amazon.com.

65.    Mr. Walker understood TP-Link's speed representations to identify the wireless data rates actually available to and capable of being experienced by him and other consumers when using the Router for wireless data transfer. Based on TP-Link's speed representations, Mr. Walker believed the N600 Wireless Dual Band Gigabit Router would transfer data wirelessly at 300 Mbps on the 2.4 GHz band and 300 Mbps on the 5 GHz band.

66.    The advertised wireless speeds of the router were material to Mr. Walker's purchasing decision because (a) he intended to transfer large amounts of data using the router, (b) he intended the router to handle simultaneous connections with multiple devices, (c) he wanted to own and use a router capable of actually providing 600Mbps of wireless bandwidth to him, in the event he ever wanted to and was able to place such demand on the router, and (d) he wanted to have the ability to take advantage of future increases in speeds and/or

26

bandwidths provided or required by device manufacturers, internet service providers, and/or content providers. Mr. Walker understood that the capabilities and requirements of technology and technological services increase over time, and can do so quickly and dramatically, and he did not want to have to purchase a new router to take advantage of such advancements.

67.    In reliance on Defendants' representations, Mr. Walker purchased the router, in April 2015, on Amazon.com.

68.    Mr. Walker later discovered that the router is incapable of achieving the advertised speeds, regardless of which band is used, and TP-Link admits that the user cannot experience the advertised speeds (*see* ¶¶ 38, 43-44, above).

69.    Had Mr. Walker known that the wireless data rates actually available to and capable of being experienced by him when using the Router for wireless data transfer were far below the advertised speeds, he would not have paid as much for the router, or would have purchased a different wireless router.

70.    As a result of TP-Link's misrepresentations, Mr. Walker has sustained an out-of-pocket loss consisting of, at a minimum, the difference in price between (a) what he paid for the router and (b) the price that would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate disclosures, which could be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

71.    Mr. Walker intends to purchase high-speed routers in the future and intends to include TP-Link routers in his consideration of routers. When faced with TP-Link's advertising and labeling in the future, Mr. Walker will be unable to determine the true speed of the router that he will be capable of experiencing for data transfer, unless he first purchases and tests the product. Indeed, Mr. Walker will not know whether TP-Link's speed representations must be interpreted as applying only to the "physical" layer, nor the relationship between speeds at that layer and speeds that he will actually achieve for data transfer.  Thus, in the absence of injunctive relief, Mr. Walker is likely to be harmed again by false, misleading, and unfair representations with respect to the data rates of the TP-Link Routers because Mr. Walker will

27

1   be unable to determine whether such representations are false, misleading, or unfair, without

2   purchasing and testing such TP-Link Routers.

3           **3.   Mr. Hernandez's Experience**

4           72.   In January 2016, Mr. Hernandez shopped for a new wireless router on

5   Amazon.com. He was specifically looking for a router that could transfer data at a high rate of

6   speed.

7           73.   Prior to his purchase of an Archer C7 AC 1750, Mr. Hernandez reviewed and

8   relied on the data transfer speed representations on the Amazon.com product page for the

9   Archer C7, as identified in paragraph 29 above, which originated from TP-Link regarding the

10  wireless data speed of the router.

11          74.   Mr. Hernandez understood TP-Link's speed representations to identify the

12  wireless data rates actually available to and capable of being experienced by him and other

13  consumers when using the Router for wireless data transfer. Based on TP-Link's speed

14  representations, Mr. Hernandez believed the Archer C7 would transfer data wirelessly at 450

15  Mbps on the 2.4 GHz band and at 1,300 Mbps on the 5 GHz band.

16          75.   The advertised wireless speeds of the router were material to Mr. Hernandez's

17  purchasing decision because (a) he intended to transfer large amounts of data using the router

18  (including for demanding services such as video streaming), (b) he intended the router to

19  handle simultaneous connections with multiple devices, (c) he wanted to own and use a router

20  capable of actually providing 1750Mbps of wireless bandwidth to him, in the event he ever

21  wanted to and was able to place such demand on the router, and (d) he wanted to have the

22  ability to take advantage of future increases in speeds and/or bandwidths provided or required

23  by device manufacturers, internet service providers, and/or content providers. Mr. Hernandez

24  understood that the capabilities and requirements of technology and technological services

25  increase over time, and can do so quickly and dramatically, and he did not want to have to

26  purchase a new router to take advantage of such advancements.

27          76.   In reliance on Defendants' representations, Mr. Hernandez purchased the router,

28  in January 2016, on Amazon.com.

77.    The Archer C7 AC 1750 does not actually offer the advertised speeds, or even anything close to those speeds, and TP-Link admits that the user cannot experience the advertised speeds (*see* ¶¶ 38, 41-42, above).

78.    Had Mr. Hernandez known that the wireless data rates actually available to and capable of being experienced by him when using the Router for wireless data transfer were far below the advertised speeds, he would not have paid as much for the router, or would have purchased a different wireless router.

79.    As a result of TP-Link's misrepresentations, Mr. Hernandez has sustained an out-of-pocket loss consisting of, at a minimum, the difference in price between (a) what he paid for the router and (b) the price that would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate disclosures, which could be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

80.    Mr. Hernandez intends to purchase high-speed routers in the future and intends to include TP-Link routers in his consideration of routers. When faced with TP-Link's advertising and labeling in the future, Mr. Hernandez will be unable to determine the true speed of the router that he will be capable of experiencing for data transfer, unless he first purchases and tests the product. Indeed, Mr. Hernandez will not know whether TP-Link's speed representations must be interpreted as applying only to the "physical" layer, nor the relationship between speeds at that layer and speeds that he will actually achieve for data transfer. Thus, in the absence of injunctive relief, Mr. Hernandez is likely to be harmed again by false, misleading, and unfair representations with respect to the data rates of the TP-Link Routers because Mr. Hernandez will be unable to determine whether such representations are false, misleading, or unfair, without purchasing and testing such TP-Link Routers.

### 4.    Ms. Chuanroong's Experience

81.    In October 2017, Ms. Chuanroong shopped for a new wireless router on Amazon.com. She was specifically looking for a router that could transfer data at a high rate of speed.

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

82.    Prior to her purchase of two Archer C7 AC1750 routers, Ms. Chuanroong reviewed and relied on the data transfer speed representations on the Amazon.com product page for the Archer C7, as identified in paragraph 30 above, which originated from TP-Link regarding the wireless data speed of the Archer C7.

83.    Ms. Chuanroong understood TP-Link's speed representations to identify the wireless data rates actually available to and capable of being experienced by her and other consumers when using the Router for wireless data transfer. Based on TP-Link's speed representations, Ms. Chuanroong believed the Archer C7 would transfer data wirelessly at 450 Mbps on the 2.4 GHz band and at 1,300 Mbps on the 5 GHz band

84.    The advertised wireless speeds of the Router were material to Ms. Chuanroong's purchasing decision because (a) she intended to transfer large amounts of data using the router (including for demanding services such as video streaming), (b) she wanted to own and use a router capable of actually providing 1750Mbps of wireless bandwidth to her, in the event she ever wanted to and was able to place such demand on the router, and (c) she wanted to have the ability to take advantage of future increases in speeds and/or bandwidths provided or required by device manufacturers, internet service providers, and/or content providers. Ms. Chuanroong understood that the capabilities and requirements of technology and technological services increase over time, and can do so quickly and dramatically, and she did not want to have to purchase a new router to take advantage of such advancements.

85.    In reliance on Defendants' representations, omissions, and unfair practices, Ms. Chuanroong purchased two Archer C7 routers in October 2017, on Amazon.com.

86.    Ms. Chuanroong believed the first Archer C7 router she received was defective, so she purchased a second Archer C7 router to replace it.

87.    The Archer C7 AC 1750 does not actually offer the advertised speeds, or even anything close to those speeds, and TP-Link admits that the user cannot experience the advertised speeds (*see* ¶¶ 38, 41-42, above).

88.    Had Ms. Chuanroong known that the wireless data rates actually available to and capable of being experienced by her when using the Router for wireless data transfer were far

below the advertised speeds, she would not have paid as much for the router, or would have purchased a different wireless router.

89.    As a result of TP-Link's misrepresentations, Ms. Chuanroong has sustained an out-of-pocket loss consisting of, at a minimum, the difference in price between (a) what she paid for the router and (b) the price that would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate disclosures, which could be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

90.    Ms. Chuanroong intends to purchase high-speed routers in the future and intends to include TP-Link routers in her consideration of routers.  When faced with TP-Link's advertising and labeling in the future, Ms. Chuanroong will be unable to determine the true speed of the router that she will be capable of experiencing for data transfer, unless she first purchases and tests the product. Indeed, Ms. Chuanroong will not know whether TP-Link's speed representations must be interpreted as applying only to the "physical" layer, nor the relationship between speeds at that layer and speeds that she will actually achieve for data transfer. Thus, in the absence of injunctive relief, Ms. Chuanroong is likely to be harmed again by false, misleading, and unfair representations with respect to the data rates of the TP-Link Routers because Ms. Chuanroong will be unable to determine whether such representations are false, misleading, or unfair, without purchasing and testing such TP-Link Routers.

### 5.    Ms. Todd's Experience

91.    In November 2017, Ms. Todd shopped for a new wireless router on Amazon.com. She was specifically looking for a router that could transfer data at a high rate of speed.

92.    Prior to her purchase of an Archer C50 AC 1200, Ms. Todd reviewed and relied on the data transfer speed representations on the Amazon.com product page for the Archer C50, as identified in paragraph 31 or 32 above, which originated from TP-Link regarding the wireless data speed of the Archer C50.

93.    Ms. Todd understood TP-Link's speed representations to identify the wireless data rates actually available to and capable of being experienced by her and other consumers when using the Router for wireless data transfer. Based on TP-Link's speed representations, Ms. Todd believed the Archer C50 would provide 300 Mbps on the 2.4GHz band, and 867-900 Mbps on the 5GHz band.

94.    The advertised wireless speeds of the router were material to Ms. Todd's purchasing decision because (a) she intended the router to handle simultaneous connections with multiple devices, (b) she wanted to own and use a router capable of actually providing 1200Mbps of wireless bandwidth to her, in the event she ever wanted to and was able to place such demand on the router, and (c) she wanted to have the ability to take advantage of future increases in speeds and/or bandwidths provided or required by device manufacturers, internet service providers, and/or content providers. Ms. Todd understood that the capabilities and requirements of technology and technological services increase over time, and can do so quickly and dramatically, and she did not want to have to purchase a new router to take advantage of such advancements.

95.    In reliance on Defendants' representations, omissions, and unfair practices, Ms. Todd purchased the router, in November 2017, on Amazon.com.

96.    The Archer C50 does not actually offer the advertised speeds, or even anything close to those speeds, and TP-Link admits that the user cannot experience the advertised speeds. (*See* ¶ 45, above.)

97.    Had Ms. Todd known that the wireless data rates actually available to and capable of being experienced by her when using the Router for wireless data transfer were far below the advertised speeds, she would not have paid as much for the router, or would have purchased a different wireless router

98.    As a result of TP-Link's misrepresentations, Ms. Todd has sustained an out-of-pocket loss consisting of, at a minimum, the difference in price between (a) what she paid for the router and (b) the price that would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate

disclosures, which could be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

99.    Ms. Todd intends to purchase high-speed routers in the future and intends to include TP-Link routers in her consideration of routers.  When faced with TP-Link's advertising and labeling in the future, Ms. Todd will be unable to determine the true speed of the router that she will be capable of experiencing for data transfer, unless she first purchases and tests the product. Indeed, Ms. Todd will not know whether TP-Link's speed representations must be interpreted as applying only to the "physical" layer, nor the relationship between speeds at that layer and speeds that she will actually achieve for data transfer. Thus, in the absence of injunctive relief, Ms. Todd is likely to be harmed again by false, misleading, and unfair representations with respect to the data rates of the TP-Link Routers because Ms. Todd will be unable to determine whether such representations are false, misleading, or unfair, without purchasing and testing such TP-Link Routers.

## CLASS ALLEGATIONS

100.    In addition to their individual claims, Plaintiffs bring this action on behalf of a proposed class consisting of: All persons who purchased a TP-Link Router in California since August 15, 2014 (the "Class").

101.    Excluded from the proposed Class are TP-Link, its affiliates, successors and assigns, officers and directors, and members of their immediate families.

102.    The proposed Class is so numerous that joinder of all members is impracticable. The precise number of members in the proposed Class is not yet known to Plaintiffs, but they estimate that it is well in excess of 1,000 people.

103.    There are questions of law and fact that are common to the Class, including, but not limited to, the following:

- what representations TP-Link made to consumers, and what information TP-Link failed to disclose, regarding the wireless data transfer rates of the TP-Link Routers;
- whether the TP-Link Routers are capable of achieving the wireless data rates advertised by TP-Link, and what the rates actually are under certain conditions;

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

- how reasonable consumers understand the representations made by TP-Link and whether a significant portion of reasonable consumers are likely to be misled by the representations;

- whether the TP-Link Routers have a tendency (and in what frequency and degree) to cause or contribute to data transfer rates below the data transfer rates advertised for the TP-Link Routers;

- whether TP-Link misled class members by representing that the TP-Link Routers are capable of achieving the advertised wireless data rates;

- whether TP-Link breached its obligations to the class;

- whether TP-Link engaged in the alleged conduct knowingly, recklessly, or negligently;

- what tests TP-Link performed on the routers with respect to the rate of data transfer, under what conditions those tests were performed, what the results of those tests were, and what other observations TP-Link may have made regarding the data transfer rates of the TP-Link Routers;

- the amount of revenues and profits TP-Link received and/or the amount of monies or other obligations lost by class members as a result of such wrongdoing;

- whether class members are entitled to injunctive relief and other equitable relief and, if so, what is the nature of such relief; and

- whether class members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest, and if so, what is the nature of such relief.

104.    Plaintiffs' claims against TP-Link are typical of the claims of the Class because Plaintiffs and all other members of the class purchased a TP-Link Router based on the same or substantially similar advertising and representations and omissions. With respect to the class allegations, Plaintiffs were subject to the exact same business practices and written representations.

105.    Plaintiffs will fairly and adequately protect the interests of the Class.

106.    Plaintiffs have demonstrated their commitment to the case, have diligently educated themselves as to the issues involved, and to the best of their knowledge do not have any interests adverse to the Class.

107.    The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

108.   A class action is superior to other available methods for a fair and efficient adjudication of this controversy as many members of the proposed Class have damages arising from TP-Link's wrongful course of conduct which would not be susceptible to individualized litigation of this kind, including, but not limited to, the costs of experts and resources that may be required to examine the business practices in question.

109.   Given the relative size of damages sustained by the individual members of the Class, the diffuse impact of the damages, and homogeneity of the issues, the interests of members of the Class individually controlling the prosecution of separate actions is minimal.

110.   There is no other litigation already commenced, nor is there anticipated to be subsequent litigation commenced by other members of the Class concerning TP-Link's alleged conduct. Consequently, concerns with respect to the maintenance of a class action regarding the extent and nature of any litigation already commenced by members of the Class are non-existent.

111.   Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this Class Action Complaint that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### Plaintiffs' First Cause of Action

**(Fraud, Deceit, and/or Misrepresentation)**
**On Behalf of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the Class**

112.   Plaintiffs reallege and incorporate by reference all preceding paragraphs of this complaint as if fully set forth herein.

113.   TP-Link represented to Plaintiffs and those similarly situated that the TP-Link Routers provide specific wireless data transfer rates. For each of the TP-Link Routers, TP-Link makes representations to consumers specifying the wireless data rates or speeds that the router supposedly provides to consumers. TP-Link identifies the number of Mbps each band of a Router provides and characterizes those numbers as the "speed" and the "available bandwidth"

of the Routers. TP-Link consistently makes those representations on the product packaging, on the websites of online retailers, and on TP-Link's own website.

114.   To promote the sale of the TP-Link Routers, TP-Link represents to all its retailers that the TP-Link Routers provide the wireless data transfer rates set forth in TP-Link's marketing, labels, and specifications. TP-Link provides substantially similar if not identical information to all such retailers, and TP-Link intends for the retailers to pass on the information to consumers. TP-Link made these representations to retailers with the knowledge and intent that the retailers would represent to Plaintiffs, and others similarly situated, that the TP-Link Routers are capable of achieving the advertised wireless data transfer rates.

115.   All of TP-Link's representations regarding the speed of the Routers (as providing a certain amount of Mbps for each band and in total) are understood in the same way by consumers and all of those representations are false and misleading in the same way. TP-Link knew that its speed representations were false and misleading when it made them.

116.   In deciding whether to purchase a Router, reasonable consumers, including Plaintiffs, care about the speeds that consumers are reasonably capable of experiencing when using a Router, including speeds that may become available or more desirable in the future. Reasonable consumers, including Plaintiffs and those similarly situated, understood TP-Link's speed representations to identify the wireless data transfer rates actually available to and capable of being experienced by them when using the Routers for wireless data transfer.

117.   TP-Link knew that consumers interpret TP-Link's speed representations as set forth above but that consumers would never be able to experience the advertised speeds of the TP-Link Routers. TP-Link also knew that typical consumers have no understanding that TP-Link's speed representations related only to the "physical layer" or that the speeds that would actually be experienced by the user were far below those that might exist at the "physical layer."

118.   Despite knowledge of the deceptive, misleading, and unfair effects of their speed representations, TP-Link did not inform consumers (including Plaintiffs and those similarly situated) or retailers that the advertised data rates must be read in conjunction with certain

36

technical standards and should be interpreted merely as statements of compliance with those standards. TP-Link made multiple representations regarding the speeds of its Routers separately from and independently of representations regarding the Routers' compliance with such standards. In doing so, TP-Link did not inform consumers (including Plaintiffs and those similarly situated) or retailers that the advertised data rates were limited to speeds only at the "physical" layer of the Routers and/or that the TP-Link Routers would not provide, and were incapable of providing, the advertised data transfer rates in the manner understood by consumers.

119.    TP-Link knowingly failed to adequately inform consumers (including Plaintiffs and those similarly situated) that the TP-Link Routers would wirelessly transfer data at speeds far below the advertised rates when actually used by consumers, even when tested under conditions most favorable to the TP-Link Routers. TP-Link knowingly failed to adequately inform consumers (including Plaintiffs and those similarly situated) that the TP-Link Routers could cause or contribute to, and were likely to cause or contribute to, slow data transfer rates experienced by consumers (rates below what the consumers expected and below what the consumers would have been able to obtain if the Routers performed as advertised).

120.    TP-Link's misrepresentations and omissions were material at the time they were made and TP-Link knew that they were material to consumers' purchasing decisions. Plaintiffs and those similarly situated (a) intended to use the Routers for wireless data transfers at high speeds; (b) intended and desired that the Routers be able to transfer large amounts of data to multiple devices connected to and using the Routers simultaneously, (c) wanted to own and use routers capable of actually providing the advertised speeds, and/or (d) wanted to have the ability to take advantage of future increases in speeds and/or bandwidths provided or required by device manufacturers, internet service providers, and/or content providers. Plaintiffs and those similarly situated understood that the capabilities and requirements of technology and technological services increase over time, and can do so quickly and dramatically, and that high router speeds may become more desirable and useful over time, and they did not want to have to purchase a new router to take advantage of such advancements.

121.   As intended by TP-Link, Plaintiffs and those similarly situated reasonably relied to their detriment on TP-Link's speed representations—both those that TP-Link made directly to them, and those that TP-Link made indirectly to them through retailers—and on TP-Link's omissions regarding those representations. Plaintiffs and those similarly situated purchased TP-Link Routers believing that the TP-Link Routers were reasonably capable of achieving the advertised data transfer rates.

122.   Reasonable consumers, including Plaintiffs, could not have discovered the truth about TP-Link's misrepresentations and omissions through reasonable inquiry or inspection at the time of purchase. Plaintiffs and those similarly situated reasonably and justifiably relied on the marketing at issue and on the absence of adequate disclosures to the contrary, because Plaintiffs and those similarly situated could not test, prior to purchasing the Routers, whether the Routers were capable of achieving the advertised wireless data transfer rates, or what wireless data transfer rates the Routers could reasonably provide and/or would actually provide to consumers.

123.   Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by TP-Link's speed representations, they would have acted differently by, without limitation, paying less for or not purchasing the TP-Link Routers.

124.   As a result of TP-Link's knowing and intentional misrepresentations and omissions, TP-Link is able to charge, and consumers are willing to pay, a higher price for the Routers than what TP-Link would charge if the Routers were labeled and marketed in a truthful, non-deceptive, and fair manner. Accordingly, Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated have sustained out-of-pocket losses consisting of, at a minimum, the difference in price between (a) what they paid for the TP-Link Routers and (b) the prices that they would have been charged if TP-Link had accurately advertised the actual data transfer rates available to consumers and/or if TP-Link had included appropriate disclosures. That price premium can be established using regression techniques such as hedonic regression to analyze market prices of routers and/or survey techniques such as conjoint analysis.

125.   TP-Link intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, TP-Link fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the TP-Link Routers at the prices at which they were purchased.

126.   TP-Link's conduct as described herein was willful and malicious and was designed to maximize TP-Link's profits even though TP-Link knew that it would cause loss and harm to Plaintiff and those similarly situated.

127.   In the absence of injunctive relief, reasonable consumers are likely to continue to be harmed by false, misleading, and unfair representations with respect to the data transfer rates of the TP-Link Routers because consumers will be unable to determine the truth of such representations without purchasing and testing such TP-Link Routers.

## Plaintiffs' Second Cause of Action

### (Violation of the CLRA, California Civil Code § 1750, et seq.)
### On Behalf of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the Class

128.   Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

129.   This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, et seq. ("CLRA").

130.   TP-Link's actions, representations, omissions, practices, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

131.   Plaintiffs and other members of the class are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

132.   The products that Plaintiffs and similarly situated members of the class purchased from TP-Link are "goods" within the meaning of California Civil Code § 1761.

133.   By engaging in the actions, representations, omissions, practices, and conduct set forth in this Class Action Complaint, TP-Link has violated, and continue to violate, §§ 1770(a)(2), 1770(a)(4), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA. In violation of

39

California Civil Code §1770(a)(2), TP-Link misrepresented the approval or certification of goods. In violation of California Civil Code §1770(a)(4), TP-Link used deceptive representations in connection with goods. In violation of California Civil Code §1770(a)(5), TP-Link represented that goods have approval, characteristics, uses, benefits, and qualities that they do not have. In violation of California Civil Code §1770(a)(7), TP-Link's acts and practices constitute improper representations that the goods and/or services it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(9), TP-Link advertised goods with intent not to sell them as advertised.

134.   Specifically, TP-Link's acts and practices mislead reasonable consumers, including Plaintiffs, to believe that the TP-Link Routers provide the advertised data transfer rates for wireless data transfers, in a manner that ordinary consumers are capable of experiencing, and that the TP-Link Routers do not inherently perform at much lower capacities.

135.    To the contrary, the TP-Link Routers are incapable of achieving the advertised data transfer rates when actually used for wireless data transfers and the Routers transfer data at speeds far below the advertised rates when actually used by consumers, even when tested under conditions most favorable to the TP-Link Routers.

136.   Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd request that this Court enjoin TP-Link from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If TP-Link is not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the class, as well as the general public, will continue to suffer harm.

137.   CLRA § 1782 NOTICE. Irrespective of any representations to the contrary in this First Amended Class Action Complaint, Plaintiffs specifically disclaim, at this time, any request for damages under any provision of the CLRA. Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd, however, hereby provide TP-Link with notice and demand that within thirty (30) days from the effective date of notice, TP-Link correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. TP-Link's failure to do so will result in Plaintiffs amending this First Amended Class Action Complaint to

seek, pursuant to California Civil Code § 1780(a)(3), on behalf of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd, and those similarly situated members of the Class, compensatory damages, punitive damages and restitution of any ill-gotten gains due to TP-Link's acts and practices.

138.    Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(e).

### **Plaintiffs' Third Cause of Action**

**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the Class**

139.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

140.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the original Class Action Complaint in this litigation, TP-Link has made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the TP-Link Routers.

141.    TP-Link represented to Plaintiffs and those similarly situated that the TP-Link Routers provide specific wireless data transfer rates, as set forth above.

142.    All of TP-Link's representations regarding the speed of the Routers (as providing a certain amount of Mbps for each band and in total) are understood in the same way by consumers and all of those representations are false and misleading in the same way. TP-Link knew that its speed representations were false and misleading when it made them.

143.    Reasonable consumers, including Plaintiffs and those similarly situated, understood TP-Link's speed representations to identify the wireless data transfer rates actually available to and capable of being experienced by them when using the Routers for wireless data transfer.

144.    TP-Link knew that consumers interpret TP-Link's speed representations as set forth above but that consumers would never be able to experience the advertised speeds of the

41

TP-Link Routers. TP-Link also knew that typical consumers have no understanding that TP-Link's speed representations related only to the "physical layer" or that the speeds that would actually be experienced by the user were far below those that might exist at the "physical layer."

145.    Despite knowledge of the deceptive, misleading, and unfair effects of their speed representations, TP-Link did not inform consumers (including Plaintiffs and those similarly situated) or retailers that the advertised data rates must be read in conjunction with certain technical standards and should be interpreted merely as statements of compliance with those standards. TP-Link made multiple representations regarding the speeds of its Routers separately from and independently of representations regarding the Routers' compliance with such standards. In doing so, TP-Link did not inform consumers (including Plaintiffs and those similarly situated) or retailers that the advertised data rates were limited to speeds only at the "physical" layer of the Routers and/or that the TP-Link Routers would not provide, and were incapable of providing, the advertised data transfer rates in the manner understood by consumers.

146.    TP-Link failed to adequately inform consumers (including Plaintiffs and those similarly situated) that the TP-Link Routers would wirelessly transfer data at speeds far below the advertised rates when actually used by consumers, even when tested under conditions most favorable to the TP-Link Routers. TP-Link failed to adequately inform consumers (including Plaintiffs and those similarly situated) that the TP-Link Routers could cause or contribute to, and were likely to cause or contribute to, slow data transfer rates experienced by consumers (rates below what the consumers expected and below what the consumers would have been able to obtain if the Routers performed as advertised).

147.    TP-Link's misrepresentations and omissions were material at the time they were made and TP-Link knew that they were material to consumers' purchasing decisions. Plaintiffs and those similarly situated (a) intended to use the Routers for wireless data transfers at high speeds; (b) intended and desired that the Routers be able to transfer large amounts of data to multiple devices connected to and using the Routers simultaneously, (c) wanted to own and use

42

1    routers capable of actually providing the advertised speeds, and/or (d) wanted to have the

2    ability to take advantage of future increases in speeds and/or bandwidths provided or required

3    by device manufacturers, internet service providers, and/or content providers. Plaintiffs and

4    those similarly situated understood that the capabilities and requirements of technology and

5    technological services increase over time, and can do so quickly and dramatically, and that high

6    router speeds may become more desirable and useful over time, and they did not want to have

7    to purchase a new router to take advantage of such advancements.

8         148.   As intended by TP-Link, Plaintiffs and those similarly situated relied to their

9    detriment on TP-Link's false, misleading and deceptive advertising and marketing practices.

10   Had Plaintiffs and those similarly situated been adequately informed and not intentionally

11   deceived by TP-Link, they would have acted differently by, without limitation, paying less for

12   the TP-Link Routers or purchasing different routers. Reasonable consumers, including

13   Plaintiffs, could not have discovered the truth about TP-Link's misrepresentations and

14   omissions through reasonable inquiry or inspection at the time of purchase.

15        149.   TP-Link engaged in these false, misleading and deceptive advertising and

16   marketing practices to increase its profits. Accordingly, TP-Link has engaged in false

17   advertising, as defined and prohibited by section 17500, et seq. of the California Business and

18   Professions Code.

19        150.   The aforementioned practices, which TP-Link has used, and continues to use, to

20   its significant financial gain, also constitute unlawful competition and provide an unlawful

21   advantage over TP-Link's competitors as well as injury to the general public. TP-Link's acts

22   and omissions have deceived and are likely to deceive the general public.

23        151.   Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd seek, on behalf of

24   themselves and those similarly situated, full restitution of monies, as necessary and according

25   to proof, to restore any and all monies acquired by TP-Link from Plaintiffs, the general public,

26   or those similarly situated by means of the false, misleading and deceptive advertising and

27   marketing practices complained of herein, plus interest thereon.

28

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

152.   Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd seek, on behalf of themselves, the general public, and those similarly situated, an injunction to prohibit TP-Link from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. The acts complained of herein occurred, at least in part, within three (3) years preceding the filing of the original Class Action Complaint in this litigation.

153.   Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated are further entitled to and do seek both a declaration that the above-described practices constitute false, misleading and deceptive advertising, and injunctive relief restraining TP-Link from engaging in any such advertising and marketing practices in the future. Such misconduct by TP-Link, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that TP-Link will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to TP-Link to which TP-Link is not entitled. Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd, those similarly situated, and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

154.   As a direct and proximate result of such actions, Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the other members of the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

### **Plaintiffs' Fourth Cause of Action**

**(Negligent Misrepresentation)**
**On Behalf of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the Class**

155.   Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

156.   As set forth above, in selling its TP-Link Routers to consumers, TP-Link negligently made false and misleading statements that the TP-Link Routers provide specific data transfer rates to consumers when the Routers are used for their intended purpose (wireless data transfer).

157.   TP-Link negligently failed to inform consumers (including Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated) or retailers that the advertised data rates must be read in conjunction with certain technical standards and should be interpreted merely as statements of compliance with those standards, that the advertised data rates were limited to speeds only at the "physical" layer of the Routers, and/or that the TP-Link Routers would not provide, and were incapable of providing, the advertised data transfer rates in the manner understood by consumers.

158.   TP-Link negligently failed to adequately inform consumers (including Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated) that the TP-Link Routers would wirelessly transfer data at speeds far below the advertised rates when actually used by consumers, even when tested under conditions most favorable to the TP-Link Routers. TP-Link negligently failed to adequately inform consumers (including Plaintiffs and those similarly situated) that the TP-Link Routers could cause or contribute to, and were likely to cause or contribute to, slow data transfer rates experienced by consumers (rates below what the consumers expected and below what the consumers would have been able to obtain if the Routers performed as advertised).

159.   These representations and omissions were material at the time they were made. They concerned material facts that were essential to the decision of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated regarding how much to pay for the TP-Link Routers.

160.   TP-Link made identical or substantially similar misrepresentations and omissions to Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and to members of the Class regarding the TP-Link Routers.

FIRST AMENDED CLASS ACTION COMPLAINT, Case No. 3:18-cv-05824-RS

161.   TP-Link should have known its representations and omissions to be false, deceptive, and misleading, and had no reasonable grounds for believing them to be true and accurate when they were made.

162.   By and through such negligent misrepresentations and omissions, TP-Link intended to induce Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated to alter their position to their detriment. Specifically, TP-Link negligently induced Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated, without limitation, to purchase the TP-Link Routers at the prices they paid.

163.   Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated relied to their detriment on TP-Link's negligent misrepresentations and omissions. Had Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated been adequately informed and not deceived by TP-Link, they would have acted differently by, without limitation, paying less for the TP-Link Routers or purchasing different routers. Reasonable consumers, including Plaintiffs, could not have discovered the truth about TP-Link's misrepresentations and omissions through reasonable inquiry or inspection at the time of purchase.

164.   Because they reasonably relied on TP-Link's false representations and omissions, Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and those similarly situated were harmed in the amount of the price premium they paid (i.e., the difference between the price consumers paid for the TP-Link Routers and the price they would have paid but for TP-Link's negligent misrepresentations and omissions), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

## Plaintiffs' Fifth Cause of Action

### (Unjust Enrichment)
### On Behalf of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the Class

165.   Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

166.   By means of TP-Link's wrongful conduct alleged herein, TP-Link knowingly sold TP-Link Routers to Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class in a manner that was unfair, unconscionable, and oppressive.

167.   TP-Link knowingly received and retained wrongful benefits and funds from Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class. In so doing, TP-Link acted with conscious disregard for the rights of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class.

168.   As a result of TP-Link's wrongful conduct as alleged herein, TP-Link has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class.

169.   TP-Link's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

170.   Under the common law doctrine of unjust enrichment, it is inequitable for TP-Link to be permitted to retain the benefits it received, without justification, from selling TP-Link Routers to Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class in an unfair, unconscionable, and oppressive manner. TP-Link's retention of such funds under such circumstances making it inequitable to do so constitutes unjust enrichment.

171.   The financial benefits derived by TP-Link rightfully belong to Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class. TP-Link should be compelled to return in a common fund for the benefit of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class all wrongful or inequitable proceeds received by them.

172.   Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and members of the Class have no adequate remedy at law.

**<u>Plaintiffs' Sixth Cause of Action</u>**

**(Unfair, Unlawful and/or Deceptive Trade Practices,
Business and Professions Code § 17200, et seq.)
On Behalf of Plaintiffs and the Class**

47

173. Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

174. Within four (4) years preceding the filing of the original Class Action Complaint in this litigation, and at all times mentioned herein, TP-Link has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by carrying out the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, TP-Link has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

    a.  falsely, deceptively, misleadingly, and unfairly representing to Plaintiffs and those similarly situated that the advertised data transfer rates are actually available to and capable of being experienced by them when using the Routers for wireless data transfer;

    b.  failing to adequately inform Plaintiffs and those similarly situated that the TP-Link Routers would wirelessly transfer data at speeds far below the advertised rates when actually used by consumers, even when tested under conditions most favorable to the TP-Link Routers, and that the TP-Link Routers could cause or contribute to, and were likely to cause or contribute to, slow data transfer rates experienced by consumers;

    c.  failing to inform consumers (including Plaintiffs and those similarly situated) or retailers that the advertised data rates must be read in conjunction with certain technical standards and should be interpreted merely as statements of compliance with those standards, that the advertised data rates were limited to speeds only at the "physical" layer of the Routers, and/or that the TP-Link Routers would not provide, and were incapable of providing, the advertised data transfer rates in the manner understood by consumers;

    d.  engaging in other false, misleading, unfair, or unlawful representations and conduct as described herein;

    e.  violating the CLRA as described herein; and

48

f.   violating the FAL as described herein.

175.   Plaintiffs and those similarly situated relied to their detriment on TP-Link's unfair, deceptive and unlawful business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived or unfairly manipulated by TP-Link, they would have acted differently by, without limitation, paying less for the TP-Link Routers.

176.   TP-Link's acts and omissions are likely to deceive the general public.

177.   TP-Link engaged in these unfair, unlawful and deceptive practices to increase its profits. Accordingly, TP-Link has engaged in unfair, unlawful and deceptive trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

178.   The aforementioned practices, which TP-Link has used to its significant financial gain, also constitute unfair and unlawful competition and provide an unfair and unlawful advantage over TP-Link's competitors, as well as cause injury to the general public.

179.   As a direct and proximate result of such actions and omissions, Plaintiffs and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the class lost the amount of the price premium they paid (i.e., the difference between the price consumers paid for the TP-Link Routers and the price they would have paid but for TP-Link's deceptive, unfair and/or unlawful acts, omissions, and/or practices), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis.

180.   Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are deceptive, unfair and/or unlawful.

181.   Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit TP-Link from offering the TP-Link Routers within a reasonable time after entry of judgment, unless the TP-Link modifies its website and other marketing materials to remove the misrepresentations, to disclose the omitted facts, and to cease the deceptive, unfair and/or

unlawful practices. Such misconduct by TP-Link, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that TP-Link will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to TP-Link to which TP-Link was not entitled. Plaintiffs, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.  On Cause of Action Number 1 against TP-Link and in favor of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the other members of the Class:

    1.  an award of compensatory damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the TP-Link Routers Routers and the price they would have paid but for TP-Link's misrepresentations and omissions), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis; and

    2.  an award of punitive damages, the amount of which is to be determined at trial.

B.  On Cause of Action Number 2 against TP-Link and in favor of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the other members of the Class:

    1.  injunctive relief pursuant to California Civil Code section 1780:

        a.  requiring TP-Link to disclose the average wireless data transfer rates actually available to purchasers of the Routers under reasonable testing

conditions and/or to disclose that the advertised data rates are limited to speeds only at the "physical" layer of the Routers in compliance with certain technical standards and that consumers will experience wireless data transfer speeds substantially below the advertised rates when the Routers are actually used by consumers;

    b.   prohibiting TP-Link from otherwise engaging in the statutory violations and deceptive, unfair, and/or unlawful acts established by Plaintiffs or any similarly deceptive, unfair, or unlawful conduct regarding the Routers' speeds; and

    c.   prohibiting TP-Link from offering the TP-Link Routers for sale within a reasonable time after entry of judgment, unless TP-Link modifies its website, packaging, and other marketing materials to remove the misrepresentations, to disclose the omitted facts, and to cease the deceptive, unfair and/or unlawful practices regarding the Routers' speeds;

2.   court costs and attorney fees pursuant to Cal. Civ. Code § 1780(e);

3.   [Reserved]; and

4.   [Reserved].

C.   On Cause of Action Number 3 against TP-Link and in favor of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the other members of the Class:

1.   restitution of, or an award of damages in the amount of, the price premium paid (i.e., the difference between the price consumers paid for the TP-Link Routers and the price they would have paid but for TP-Link's misrepresentations and omissions), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis, pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.; and

2.   declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.:

   a.  requiring TP-Link to disclose the average wireless data transfer rates actually available to purchasers of the Routers under reasonable testing conditions and/or to disclose that the advertised data rates are limited to speeds only at the "physical" layer of the Routers in compliance with certain technical standards and that consumers will experience wireless data transfer speeds substantially below the advertised rates when the Routers are actually used by consumers;

   b.  prohibiting TP-Link from otherwise engaging in the statutory violations and deceptive, unfair, and/or unlawful acts established by Plaintiffs or any similarly deceptive, unfair, or unlawful conduct regarding the Routers' speeds; and

   c.  prohibiting TP-Link from offering the TP-Link Routers for sale within a reasonable time after entry of judgment, unless TP-Link modifies its website, packaging, and other marketing materials to remove the misrepresentations, to disclose the omitted facts, and to cease the deceptive, unfair and/or unlawful practices regarding the Routers' speeds.

D.   On Cause of Action Number 4 against TP-Link and in favor of Plaintiffs Gonzales, Hernandez, Chuanroong, and Todd and the other members of the Class:

1.   the greater of actual or compensatory damages according to proof (including restitution of or damages in the amount of the price premium paid (i.e., the difference between the price consumers paid for the TP-Link Routers and the price they would have paid but for TP-Link's negligent misrepresentations and omissions), in an amount to be proven at trial using econometric or statistical techniques such as hedonic regression or conjoint analysis); and

E.    On Cause of Action Number 5 against TP-Link and in favor of Plaintiffs Gonzales,

Hernandez, Chuanroong, and Todd and the other members of the Class:

1.    disgorgement or restitution of the benefits TP-Link have obtained from sales

of the TP-Link Routers, including but not limited to the price premium paid,

(i.e., the difference between the price consumers paid for the TP-Link Routers

and the price they would have paid but for TP-Link's inequitable conduct), in

an amount to be proven at trial using econometric or statistical techniques

such as hedonic regression or conjoint analysis;

F.    On Cause of Action Number 6 against TP-Link and in favor of Plaintiffs and the

other members of the Class:

1.    restitution of the price premium paid (i.e., the difference between the price

consumers paid for the TP-Link Routers and the price they would have paid

but for TP-Link's statutory violations), in an amount to be proven at trial

using econometric or statistical techniques such as hedonic regression or

conjoint analysis, pursuant to, without limitation, the California Business &

Professions Code §§ 17200, et seq.; and

2.    declaratory and injunctive relief pursuant to, without limitation, the California

Business & Professions Code §§ 17200, et seq.:

a.    requiring TP-Link to disclose the average wireless data transfer rates

actually available to purchasers of the Routers under reasonable testing

conditions and/or to disclose that the advertised data rates are limited to

speeds only at the "physical" layer of the Routers in compliance with

certain technical standards and that consumers will experience wireless

data transfer speeds substantially below the advertised rates when the

Routers are actually used by consumers;

b.    prohibiting TP-Link from otherwise engaging in the statutory violations

and deceptive, unfair, and/or unlawful acts established by Plaintiffs or any

53

1                           similarly deceptive, unfair, or unlawful conduct regarding the Routers'

2                           speeds; and

3              c.    prohibiting TP-Link from offering the TP-Link Routers for sale within a

4                           reasonable time after entry of judgment, unless TP-Link modifies its

5                           website, packaging, and other marketing materials to remove the

6                           misrepresentations, to disclose the omitted facts, and to cease the

7                           deceptive, unfair and/or unlawful practices regarding the Routers' speeds.

8

9                                 **Jury Trial Demanded**

10        Plaintiffs demand a trial by jury.

11

12  Dated:  June 12, 2019

13                              /s/*Stephen M. Raab*      /
                                     **GUTRIDE SAFIER LLP**

14                                     Adam J. Gutride (State Bar No. 181446)
                                    Seth A. Safier (State Bar No. 197427)

15                                     Marie A. McCrary (State Bar No. 262670)
                                    100 Pine St., Suite 1250

16                                     San Francisco, California 94111
                                    Telephone: (415) 271-6469

17                                     Facsimile: (415) 449-6469

18

19                                     Stephen M. Raab (appearing *pro hac vice*)
                                    113 Cherry Street, #55150

20                                     Seattle, WA 98140-2205
                                    Telephone: (415) 639-9090 x109

21

22                                     *Attorneys for Plaintiffs*

23

24

25

26

27

28

DocuSign Envelope ID: 28567E38-7955-4BBF-9506-8801A6C300B1

## <u>EXHIBIT A</u>

I, Richard Gonzales, declare:

1.    I am the Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.    I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.    On April 20, 2016, I purchased a TP-LINK Archer C7 AC1750 router on Amazon.com while I was located in San Francisco, California.

4.    I later learned that the TP-LINK Archer C7 AC1750 router is incapable of achieving the speeds claimed by TP-LINK.

5.    I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed in San Francisco, California on 7/31/2018 5:01:36 PM PDT



DocuSigned by:

*Richard Gonzales*

5D64F7292CF8497...

Richard Gonzales