1  LTL Attorneys LLP
   Heather F. Auyang (SBN 191776)
2    heather.auyang@ltlattorneys.com
   Paul Moskowitz (SBN 219158)
3    paul.moskowitz@ltlattorneys.com
4  601 Gateway Boulevard, Suite 1010
   South San Francisco, CA 94080
5  Tel: 650-422-2130 / Fax: 650-241-2142

6  LTL Attorneys LLP
7  Prashanth Chennakesavan (SBN 284022)
     prashanth.chennakesavan@ltlattorneys.com
8  David A. Crane (SBN 305999)
     david.crane@ltlattorneys.com
9  300 South Grand Avenue, 14th Floor
   Los Angeles, CA 90017
10 Tel: 213-612-8900 / Fax: 213-612-3773

11
   Attorneys for Defendant
12 TP-Link USA Corporation

13              **UNITED STATES DISTRICT COURT**

14             **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 15 RICHARD GONZALES, MATTHEW WALKER, JON HERNANDEZ, JULIANNE CHUANROONG, and DARREN TODD, on behalf of themselves, the general public, and those similarly situated, | Case No. 3:18-cv-05824-RS |
| 16 | |
| 17 | **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, TO STRIKE CLASS ALLEGATIONS** |
| 18 | |
| 19 Plaintiffs, | |
| 20 v. | Fed. R. Civ. P. 12(b)(1); 12(b)(6); 12(f) |
| 21 TP-LINK USA CORPORATION, | [Filed Concurrently with Memorandum of Points and Authorities; Request for Judicial Notice; and [Proposed] Order] |
| 22 Defendant. | |
| 23 | |
| 24 | Date:         August 22, 2019 |
| | Time:         1:30 p.m. |
| 25 | Dept:         Courtroom 3, 17th Floor |
| 26 | Removal Filed:       September 21, 2018 |
| 27 | Pretrial Conference:   Not Set |
| | Trial Date:        Not Set |
| 28 | |

**NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

Please take notice that at 1:30 p.m. on August 22, 2019, or as soon thereafter as the parties may be heard, Defendant TP-Link USA Corporation[1] ("Defendant" or "TP-Link") will, and hereby does, move this Court, at the U.S. Courthouse located at 450 Golden Gate Avenue, Courtroom 3 – 17th Floor, San Francisco, California, 94102 before the Honorable Richard Seeborg, to dismiss Plaintiffs' First Amended Class Action Complaint (ECF No. 50) in its entirety with prejudice, or alternatively, to strike class allegations. TP-Link's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f).

TP-Link seeks an order:

(1)     dismissing the First Amended Class Action Complaint in its entirety because Plaintiffs lack standing to bring any claims against TP-Link based on their inconsistent pleadings and lack of actual reliance on the alleged false advertising;

(2)     dismissing the second (CLRA), third (FAL), sixth (UCL), as well as fifth (unjust enrichment) causes of action because as a matter of law no reasonable consumer would interpret TP-Link's advertising as Plaintiffs' allege;

(3)     dismissing all claims with respect to the numerous identified and unidentified non-purchased products because Plaintiffs lack standing regarding those products and fail to sufficiently allege how the non-purchased products are substantially similar to the purchased products;

(4)     dismissing all causes of action for failure to meet the heightened pleading standard for fraud under Rule 9(b);

(5)     dismissing the first (fraud and fraudulent omission), second (CLRA) and sixth (UCL) causes of action because Plaintiffs have not adequately pleaded TP-Link's knowledge of the allegations forming the bases for the First Amended Class Action Complaint;

(6)     dismissing the fourth (negligent misrepresentation) cause of action because it is barred by the "economic loss doctrine;"

---

[1] Plaintiffs' First Amended Class Action Complaint removed TP-Link North America, Inc. as a defendant.

1    (7)    dismissing injunctive and declaratory relief claims because Plaintiffs have not

2  sufficiently alleged an intent and plan to purchase the at-issue routers in the future;

3    (8)    dismissing the fifth (unjust enrichment) cause of action as it cannot proceed as a sole

4  cause of action; and

5    (9)    striking the class allegations for failure to meet the typicality and commonality

6  requirements of Fed. R. Civ. P. 23.

7    This Motion is based on: this Notice of Motion and Motion; the attached Memorandum of Points

8  and Authorities; the concurrently filed Request for Judicial Notice and Exhibits 1–21 thereto; all other

9  papers, documents, or exhibits on file or to be filed in this action; and the argument to be made at the

10  hearing on the Motion.

11

12  Dated:  July 10, 2019                                  Respectfully submitted,

13                                                         LTL ATTORNEYS LLP

14

15                                              By:  */s/ Heather F. Auyang*
                                                     Heather F. Auyang
16                                                   Paul Moskowitz
                                                     Prashanth Chennakesavan
17                                                   David A. Crane
                                                     *Attorneys for Defendant*
18                                                   *TP-Link USA Corporation*

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY ....................................2

    A. TP-Link markets and sells the at-issue 802.11 standard routers...........................................2

    B. The IEEE 802.11 standards for networking products like routers provides
    specifications for the physical layer speed. ...........................................................................3

    C. Gonzales and Walker purchased the 802.11 standard routers with the understanding
    that the advertised speeds were at the physical layer. .........................................................4

    D. Newly added plaintiffs claim to not understand 802.11 standards. ......................................5

    E. Plaintiffs were disappointed by real-world router speeds....................................................5

    F. Gonzales and Walker's new theory. ....................................................................................6

III. LEGAL STANDARDS ..........................................................................................................6

IV. ARGUMENT ..........................................................................................................................7

    A. Gonzales and Walker Lack Standing Based on Inconsistent Pleadings ...............................7

        1. Amended pleadings must be construed in the context of the original pleading. ...........7

        2. Gonzales and Walker cannot change their story and plausibly plead a different
        understanding of the 802.11 standards. .......................................................................8

        3. Gonzales and Walker lack "actual reliance" required to assert claims under the
        CLRA, UCL and FAL, or maintain claims for fraud and negligent
        misrepresentation. .........................................................................................................9

        4. Gonzales and Walker cannot add new plaintiffs to avoid dismissal. ...........................9

    B. New Plaintiffs Hernandez, Chuanroong and Todd Lack Standing Because They
    Allege a Similarly Implausible Understanding of TP-Link's Advertising .........................10

    C. A Reasonable Consumer Would Not Be Misled by TP-Link's Advertising When
    They Viewed Them In Context ...........................................................................................11

    D. Plaintiffs Cannot Assert Claims Against Non-Purchased Products....................................14

    E. The FAC Sounds in Fraud, But Fails to Plead Fraud with Adequate Specificity ...............16

    F. Plaintiffs Still Have Not Adequately Alleged Knowledge of Falsity .................................19

    G. Negligent Misrepresentation Claims are Barred by the Economic Loss Doctrine .............19

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

H.   Claims for Injunctive and Declaratory Relief Must be Dismissed ......................................20

I.   Unjust Enrichment Is Not A Stand-Alone Claim................................................................22

J.   Dismissal Should Be With Prejudice ..............................................................................22

K.   In The Alternative, Plaintiffs' Class Allegations Should Be Stricken................................22

V.   CONCLUSION..............................................................................................................25

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arroyo v. TP-Link USA Corp.*
No. 5:14-CV-04999-EJD, 2015 WL 5698752 (N.D. Cal. Sept. 29, 2015)............................. 14

4

5

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ............................................................................................................ 6

6

*Azoulai v. BMW of N. Am. LLC*
No. 16-CV-00589-BLF, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ................................ 12

7

8

*Bautista v. Valero Mktg. & Supply Co.*
No. 15-CV-05557-RS, 2016 WL 3924117 (N.D. Cal. July 21, 2016) ................................... 16

9

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ............................................................................................................ 6

10

11

*Boysen v. Walgreen Co.*
No. C 11–06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ...................................... 18

12

13

*Bruton v. Gerber Prod. Co.*
No. 12-CV-02412-LHK, 2018 WL 1009257 (N.D. Cal. Feb. 13, 2018)................................ 22

14

*Carrea v. Dreyer's Grand Ice Cream, Inc.*
475 F. App'x 113 (9th Cir. 2012) ........................................................................................ 12

15

16

*Chacanaca v. Quaker Oats Co.*
752 F. Supp. 2d 1111 (N.D. Cal. 2010) ............................................................................... 11

17

18

*Chaset v. Fleer/Skybox Int'l, LP*
300 F.3d 1083 (9th Cir. 2002) ............................................................................................ 10

19

*Clapper v. Amnesty Int'l USA*
568 U.S. 398 (2013) ............................................................................................................ 18

20

21

*Conservation Force v. Salazar*
646 F.3d 1240 (9th Cir. 2011) .............................................................................................. 7

22

23

*Cullen v. Netflix, Inc.*
No. 5:11-CV-01199-EJD, 2013 WL 140103 (N.D. Cal. Jan. 10, 2013) ................................. 9

24

*Daniels v. Select Portfolio Servicing, Inc.*
246 Cal. App. 4th 1150 (2016) ........................................................................................... 16

25

26

*Davidson v. Kimberly-Clark Corp.*
889 F.3d 956 (9th Cir. 2018) .............................................................................................. 20

27

28

*Ehrlich v. BMW of N. Am., LLC*
801 F. Supp. 2d 908 (C.D. Cal. 2010) .................................................................................. 9

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

*Ellis v. Experian Info. Sols., Inc.*
   No. 17-CV-07092-LHK, 2018 WL 3036682 (N.D. Cal. June 19, 2018) ............................... 10

*Freeman v. Time, Inc.*
   68 F.3d 285 (9th Cir. 1995) ................................................................................................ 11

*Frenzel v. AliphCom*
   76 F. Supp. 3d 999 (N.D. Cal. 2014) .................................................................................. 21

*Gitson v. Trader Joe's Co.*
   No. 13-CV-01333-WHO, 2014 WL 1048640 (N.D. Cal. Mar. 14, 2014)................................. 9

*Granfield v. NVIDIA Corp.*
   No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ...................................... 14

*Hairston v. South Beach Bev. Co.*
   No. CV 12-1429-JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May 18, 2012)...................... 11

*Henderson v. Gruma Corp.*
   No. CV 10-04173 AHM AJWX, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .................. 14

*Hensley-Maclean v. Safeway, Inc.*
   No. 11-CV-01230-RS, 2015 WL 3956099 (N.D. Cal. June 29, 2015) ................................... 10

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*
   No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010)............................ 17, 18, 19

*Hodgers-Durgin v. de la Vina*
   199 F.3d 1037 (9th Cir. 1999) ............................................................................................ 20

*In re Facebook Privacy Litig.*
   192 F. Supp. 3d 1053 (N.D. Cal. 2016) .............................................................................. 17

*In re iPhone 4S Consumer Litig.*
   No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ....................................... 22

*Ivie v. Kraft Foods Glob., Inc.*
   961 F. Supp. 2d 1033 (N.D. Cal. 2013) .............................................................................. 14

*J. Edwards Jewelry Distrib., LLC. v. Wells Fargo & Co.*
   No. 18-CV-03886-YGR, 2019 WL 2329248 (N.D. Cal. May 31, 2019)................................. 7

*J'Aire Corp. v. Gregory*
   24 Cal. 3d 799 (1979)......................................................................................................... 19

*Jones v. Nutiva, Inc.*
   No. 16-CV-00711-HSG, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016).............................. 14

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*
   315 F. App'x 603 (9th Cir. 2008) ....................................................................................... 19

*Kane v. Chobani, Inc.*
    No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................... 15

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 16

*Kwikset Corp. v. Super. Ct.*
    51 Cal. 4th 310 (2011) ...................................................................................... 9

*Ladore v. Sony Computer Entm't Am., LLC*
    75 F. Supp. 3d 1065 (N.D. Cal. 2014) .......................................................... 19

*Lanovaz v. Twinings N. Am., Inc.*
    726 F. App'x 590 (9th Cir. 2018) .................................................................. 20

*Lanovaz v. Twinings N. Am., Inc.*
    No. 12-CV-02646-RMW, 2016 WL 4585819 (N.D. Cal. Sept. 2, 2016)............... 20

*Larsen v. Trader Joe's Co.*
    No. C 11-05188 SI, 2012 WL 5458396 (N.D. Cal. June 14, 2012) ....................... 14

*Lavie v. Procter & Gamble Co.*
    105 Cal. App. 4th 496 (2003) ........................................................................ 12

*Leadsinger, Inc. v. BMG Music Publ'g*
    429 F. Supp. 2d 1190 (C.D. Cal. 2005) ........................................................ 22

*Lee v. Hertz Corp.*
    330 F.R.D. 557 (N.D. Cal. 2019)................................................................... 23

*Leonhart v. Nature's Path Foods, Inc.*
    No. 5:13-CV-0492-EJD, 2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) ......................... 15, 18

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
    350 F.3d 1018 (9th Cir. 2003) ...................................................................... 10

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ........................................................................................ 20

*Mayfield v. United States*
    599 F.3d 964 (9th Cir. 2010) ........................................................................ 18

*Morgan v. Apple Inc.*
    No. 17-cv-05277-RS, 2018 WL 2234537 (N.D. Cal. May 16, 2018) ..................... 14

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ........................................................................ 20

*Payne v. Office of the Comm'r of Baseball*
    No. 15-CV-03229-YGR, 2016 WL 6778673 (N.D. Cal. Nov. 16, 2016) ............................... 18

*Pirozzi v. Apple, Inc.*
  966 F. Supp. 2d 909 (N.D. Cal. 2013) ...................................................................... 9

*Powell v. Wells Fargo Home Mortg.*
  No. 14-CV-04248-MEJ, 2017 WL 840346 (N.D. Cal. Mar. 3, 2017) ................................... 16

*Puri v. Khalsa*
  674 F. App'x 679 (9th Cir. 2017) ......................................................................... 16

*Rahman v. Mott's LLP*
  No. 13-CV-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) .................................. 21

*Robinson Helicopter Co. v. Dana Corp.*
  34 Cal. 4th 979 (2004) .................................................................................. 19

*Rodriguez v. Sony Comput. Entm't Am., LLC*
  801 F.3d 1045 (9th Cir. 2015) ............................................................................ 7

*Romero v. HP, Inc.*
  No. 16-CV-05415-LHK, 2017 WL 386237 (N.D. Cal. Jan. 27, 2017) ................................... 15

*Royal Primo Corp. v. Whitewater W. Indus., Ltd*
  No. 15-CV-04391-JCS, 2016 WL 1718196 (N.D. Cal. Apr. 29, 2016) ............................. 7, 11

*Rugg v. Johnson & Johnson*
  No. 17-CV-05010-BLF, 2018 WL 3023493 (N.D. Cal. June 18, 2018) ................................ 12

*Sanders v. Apple Inc.*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 7, 23

*Schneidereit v. Tr. of the Scott & Brian, Inc.*
  No. CV1106919JVSRNBX, 2012 WL 12884908 (C.D. Cal. Apr. 27, 2012) ......................... 7

*Simon v. E. Ky. Welfare Rights Org.*
  426 U.S. 26 (1976) ........................................................................................ 17

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001) .............................................................................. 7

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.*
  782 F. Supp. 2d 1059 (E.D. Cal. 2011) ................................................................... 8

*Steckman v. Hart Brewing, Inc.*
  143 F.3d 1293 (9th Cir. 1998) ............................................................................ 22

*Stephenson v. Neutrogena Corp.*
  No. C 12-0426 PJH, 2012 WL 8527784 (N.D. Cal. July 27, 2012) .................................... 15

*Stowers v. Wells Fargo Bank, N.A.*
  No. 3:13-CV-05426-RS, 2014 WL 1245070 (N.D. Cal. Mar. 25, 2014) .............................. 22

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

*Stuart v. Cadbury Adams USA, LLC*
   458 F. App'x 689 (9th Cir. 2011) ....................................................................................... 12

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*
   No. C-13-1803 EMC, 2013 WL 4530470 (N.D. Cal. Aug. 26, 2013) ................................... 19

*Thome v. U.S. Food & Drug Admin.*
   No. C 11-00676 PSG, 2011 WL 3206910 (N.D. Cal. July 27, 2011) ..................................... 9

*Tyler Barnett PR, LLC v. Facebook Inc*
   No. 16-CV-06232-JSW, 2017 WL 6449821 (N.D. Cal. Dec. 18, 2017) ................................ 22

*United States v. Corinthian Colleges*
   655 F.3d 984 (9th Cir. 2011) ............................................................................................... 7

*Vess v. Ciba-Geigy Corp. USA*
   317 F.3d 1097 (9th Cir. 2003) ............................................................................................. 16

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ............................................................................................................. 24

*Warzon v. Drew*
   60 F.3d 1234 (7th Cir. 1995) ................................................................................................. 7

*Weisbuch v. Cty. of Los Angeles*
   119 F.3d 778 (9th Cir. 1997) ................................................................................................. 7

*Werbel ex rel. v. Pepsico, Inc.*
   No. C 09-04456 SBA, 2010 WL 2673860 (N.D. Cal. July 2, 2010) ..................................... 14

*Whittlestone, Inc. v. Handi-Craft Co.*
   618 F.3d 970 (9th Cir. 2010) ............................................................................................... 22

*Williams v. Gerber Prod. Co.*
   552 F.3d 934 (9th Cir. 2008) ............................................................................................... 11

*Wilson v. Frito-Lay N. Am., Inc.*
   961 F. Supp. 2d 1134 (N.D. Cal. 2013) ............................................................................... 15

*Wilson v. Hewlett-Packard Co.*
   668 F.3d 1136 (9th Cir. 2012) ............................................................................................. 19

**Statutes**

Fed. R. Civ. P. 12 ..................................................................................................................... 6, 7

Fed. R. Civ. P. 23 ............................................................................................................... 7, 23, 24

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1

## STATEMENT OF ISSUES TO BE DECIDED

2    This Motion raises the following issues:

3    1.    **Standing to Bring Claims Against TP-Link**: Whether Plaintiffs lack standing to bring

4    claims against TP-Link (Counts 1–6) based on inconsistent pleadings and lack of actual reliance on TP-

5    Link's allegedly false advertising.

6    2.    **Implausibility**: Whether Plaintiffs adequately pleaded that a reasonable consumer

7    would interpret TP-Link's advertising in the same manner as Plaintiffs allege, as required for Plaintiffs'

8    consumer protection law claims (Counts 2, 3, 6) and their unjust enrichment claim (Count 5).

9    3.    **Standing for Products Not Purchased**: Whether Plaintiffs lack standing to bring

10    claims against numerous identified and unidentified non-purchased products, including for failure to

11    show how the non-purchased products are substantially similar to the three purchased products.

12    4.    **Fraud**: Whether Plaintiffs' claims (Counts 1–6), which all sound in fraud, have been

13    pleaded with sufficient particularity under Rule 9(b).

14    5.    **TP-Link's Knowledge**: Whether Plaintiffs' fraud and fraudulent omission (Count 1),

15    CLRA (Count 2), and UCL (Count 6) claims adequately pleaded TP-Link's knowledge of Plaintiffs'

16    allegations.

17    6.    **Tort Claim Barred**: Whether the "economic loss doctrine" bars Plaintiffs' negligent

18    misrepresentation claim (Count 4).

19    7.    **Injunctive Relief**: Whether Plaintiffs lack Article III standing to seek injunctive and

20    declaratory relief.

21    8.    **Unjust Enrichment**: Whether Plaintiffs' claim for unjust enrichment (Count 6) can

22    proceed as a stand-alone claim.

23    9.    **Class Allegations**: Whether Plaintiffs' class allegations should be stricken for failure to

24    meet the typicality and commonality requirements of Fed. R. Civ. P. 23.

25

26

27

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION**

3      Instead of trying to plead a plausible claim, Plaintiffs have used their opportunity to amend to

4  disavow their previously alleged interpretation of at-issue advertising. Gonzales and Walker insisted in

5  the original Complaint that they knew exactly what TP-Link was advertising—that purchased routers

6  conform with relevant 802.11 standards. That, they claimed, was false because the routers fail to so

7  conform. Gonzales and Walker doubled down in opposing TP-Link's motion to dismiss and explained

8  that a reasonable consumer would interpret advertising the same way. Putative class counsel reinforced

9  that position at oral argument. The Court agreed, but nevertheless dismissed the Complaint because it

10  failed to allege that the routers are noncompliant with 802.11 standards.

11      Gonzales and Walker have now decided to interpret the very same advertising—which they

12  viewed years ago and explained in great detail in the Complaint—differently. Their new, made-for-

13  litigation claim is that TP-Link actually conveys that routers are capable of achieving advertised speeds

14  at the application layer, as opposed to the networking layer the 802.11 standards regulate. The passage

15  of time, or perhaps the Court's order, has apparently changed their view on not only what they think the

16  advertisings mean, but how reasonable consumers would interpret them.

17      Unfortunately for Plaintiffs, the law does not permit litigants to change course when their

18  allegations turn out to be inconvenient; amended pleadings must be read in the context of prior

19  pleadings. The Court has already found, at Plaintiffs' insistence, that reasonable consumers would

20  interpret at-issue advertising to mean what they say—that routers achieve standard-compliant speeds at

21  standard-relevant networking layers. The FAC does not allege that routers fail to comply with relevant

22  standards, and thus remains implausible. The recruitment of additional plaintiffs who supposedly share

23  Gonzales and Walker's new-found interpretation does not change the analysis. Plaintiffs cannot cure

24  their lack of standing by simply adding other purchasers. Moreover, the fact that named plaintiffs have

25  offered dramatically different interpretations of the same advertising demonstrates that this dispute is

26  manufactured. *Reasonable consumers* would understand that speed claims refer to applicable standards.

27      The FAC should be dismissed with prejudice. In the alternative, the Court should strike class

28  allegations because it is clear that Plaintiffs will never be able to demonstrate typicality and

commonality; their claims depend on unique factors that are not shared by the putative class.

## II.     SUMMARY OF ALLEGATIONS AND PROCEDURAL HISTORY

### A.     TP-Link markets and sells the at-issue 802.11 standard routers.

TP-Link markets and sells routers as conforming with the 802.11 wireless standards established by the Institute of Electrical and Electronics Engineers ("IEEE"). *See* First Amended Class Action Complaint ("FAC") ¶ 39, ECF No. 50; Original Compl. ("Compl.") ¶¶ 15–23, ECF No. 1-3. As explained in extensive detail in Plaintiffs' Complaint (yet omitted from the language of the FAC), TP-Link's advertising for 802.11-conforming routers, including those purchased by Plaintiffs, when read in context repeatedly identifies the relevant standard version (here 802.11ac or 802.11n) *in conjunction with* an associated "signal rate" (or "routers' speed"), applicable frequency band (2.4GHz or 5GHz), and maximum (or "Up to") speeds in megabits per second ("Mbps"). *See, e.g.,* Compl. ¶¶ 22–24, 31, 33, 44, 47; FAC ¶ 39. For example, when examining TP-Link's website from a URL link cited in the FAC, the Archer C7 AC1750 Wireless Dual Band Gigabit Router ("Archer C7") (purchased by Gonzales, Hernandez, and Chuanroong) prominently advertises: "Supports *802.11ac standard* - the next generation of Wi-Fi" followed by "Simultaneous *2.4GHz 450Mbps and 5GHz 1300Mbps* connections for 1.75Gbps of total available bandwidth." FAC ¶ 34, Request for Judicial Notice ("RJN"), Ex. 15, at 98 (emphasis added). Plaintiffs' Complaint highlights "[a] typical example of such a representation" (including on the router's packaging), in which the applicable 802.11 standards are shown in the same table as the router speed. Compl. ¶¶ 22, 33. This portion of the packaging is conspicuously absent from the FAC. Likewise, Amazon.com advertises the Archer C7 directly under the price as: "Supports *802.11ac* – The next generation of Wi-Fi" immediately adjacent to "1.75Gbps total available bandwidth, which includes *450Mbps at 2.4GHz and 1300Mbps at 5GHz*." FAC ¶ 29 (emphasis added); *see also* RJN Ex. 9, at 45 (Amazon.com page for Archer C7); FAC ¶ 30 (same).

For the N600 Wireless Dual Band Gigabit Router, Model No. TL-WDR3600 ("TL-WDR3600") (purchased by Walker), as detailed in the Complaint (again, omitted in the FAC)—typical examples of TP-Link's advertising (including on the router's packaging), include the applicable 802.11 standards in the same table as the router speed. Compl. ¶¶ 23, 46–47. For the Archer C50 AC1200 (purchased by Todd), Amazon advertises directly under the price and again in the product description: "Upgrades

1  networks to powerful *802.11ac Wi-Fi technology*" followed by "Smooth HD streaming and online

2  gaming with high-performance *AC1200 Wi-Fi over 5GHz (867 Mbps) and 2.4Hz (300Mpbs) bands*."

3  FAC ¶ 31; *see also* RJN Ex. 11, at 65 (emphasis added) (Amazon.com product page for Archer C50);

4  FAC ¶ 32 (same).

5      **B.    The IEEE 802.11 standards for networking products like routers provides**

6          **specifications for the physical layer speed.**

7          As discussed at length in TP-Link's first motion to dismiss (ECF No. 16 at 2:18–5:16), the at-

8  issue standards (802.11n and 802.11 ac) refer to the IEEE 802.11 standards for wireless local area

9  networks ("WLAN"), which utilize the Open Systems Interconnection Reference Model ("OSI-RM").

10  RJN Exs. 1–3. As relevant here, Plaintiffs do not dispute that the 802.11 standards govern anything

11  other than speeds at the physical layer of the networking system—one of "*a seven-layer hierarchical*

12  *structure*" in which "*[e]ach higher layer requests and depends on services from the lower layer*

13  *adjacent to it*." RJN Ex. 4, at 27 (Steven M. Kaplan, *Wiley Electrical and Electronics Engineering*

14  *Dictionary* 540 (IEEE Press-Wiley & Sons 2004) (definition, "OSI Reference Model")). Each layer of

15  the protocol adds cumulative data transmission overhead. *Id.* In contrast to the *physical layer*, which

16  "deals with the hardware aspects of sending and receiving data in the network," RJN Ex. 5, at 31 (Steven

17  M. Kaplan, *Wiley Electrical and Electronics Engineering Dictionary* 576 (IEEE Press-Wiley & Sons

18  2004) (definition, "physical layer")), the final (and highest) layer is the *application layer*, which "takes

19  care of the exchange of information between applications, including tasks such as file transfers, email,

20  and access to a remote computer," RJN Ex. 8, at 43 (Steven M. Kaplan, *Wiley Electrical and Electronics*

21  *Engineering Dictionary* 33 (IEEE Press-Wiley & Sons 2004) (definition, "application layer")).

22          As the Court has noted, Walker and Gonzales's understanding of the applicable 802.11

23  standards includes "a great deal of technical detail." ECF No. 47 at 7:4. Although omitted from the

24  FAC, they acknowledge that the data rates in the 802.11 standards are the total available bandwidth at

25  the *physical layer*. *See* Compl. ¶¶ 15–19; *see also id.* ¶ 17 ("The 802.11n standard was designed to

26  mitigate multipath interference by using Multiple In, Multiple Out (MIMO) technology."). They explain

27  that the "MCS parameters for optional 40 MHz" refers to "routers using two spatial streams at 40 MHz

28  [that] can be configured to offer a data rate of up to 300 megabits per second" and "[i]n order to do so,

the router must utilize, among other things, 64-QAM modulation, a coding rate of 5/6, and a short guard interval (i.e., with a 400ns interval)." *Id.* ¶ 18. "MCS" stands for modulation and coding scheme, which the standard defines as "[a] specification of the high-throughput (HT) ***physical layer (PHY) parameters*** . . . ." RJN Ex. 2, at 18. Plaintiffs further explain that the 802.11ac standard "builds on the technology of the 802.11n standard. Unlike the 802.11n standard, which supports a maximum of four antennas, the 802.11ac standard supports an increased number of spatial streams, greater channel width, and more efficient modulation, resulting in an increase in bandwidth." Compl. ¶ 19.

C.   **Gonzales and Walker purchased the 802.11 standard routers with the understanding that the advertised speeds were at the physical layer.**

Gonzales and Walker wanted to purchase a wireless "router that could transfer data at a high rate of speed." FAC ¶¶ 51, 61. In April 2016, Gonzales purchased the Archer C7. *Id.* ¶¶ 52, 56. In April 2015, Walker purchased the TL-WDR3600. *Id.* ¶¶ 62, 67.

As detailed in the Complaint (but omitted in the FAC), Gonzales understood TP-Link's advertising to mean that the Archer C7 router: (1) "conformed to the 802.11ac standard;" and (2) "offered '[s]imultaneous 2.4GHz 450Mbps and 5GHz 1300Mbps connections for 1.75Gbps of total available bandwidth.'" *Compare* Compl. ¶¶ 22, 25, 30–33 *with* FAC ¶¶ 51–60. Gonzales relied on the router's packaging, which lists in the <u>same</u> table both the 802.11 wireless standards <u>and</u> speeds at the different frequencies. Compl. ¶ 32–33; *see* FAC ¶¶ 29, 53. Similarly, although omitted from the FAC, Walker understood TP-Link's advertising to mean that the TL-WDR3600 router: (1) "conformed to the 802.11n standard;" and (2) "offered '[s]imultaneous 2.4GHz 300Mbps and 5GHz 300Mbps connections for 600Mbps of total available bandwidth.'" *Compare* Compl. ¶¶ 23, 25, 43–47 *with* FAC ¶¶ 61–71. Walker relied on the router's packaging, which lists in the <u>same</u> table both the 802.11 wireless standards <u>and</u> speeds at different frequencies. Compl. ¶¶ 46–47; *see* FAC ¶ 64.

Contrary to their Complaint, Gonzales and Walker now allege (by omitting reference to the 802.11 standards) to have understood the advertised speeds were at the application layer (rather than the physical layer): "[Gonzales and Walker] understood TP-Link's speed representations to identify the wireless data rates actually available to and capable of being experienced by [them] and other consumers when using the Router for wireless data transfer." FAC ¶¶ 54, 65.

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

**D.    Newly added plaintiffs claim to not understand 802.11 standards.**

The FAC adds three plaintiffs—Hernandez, Chuanroong, and Todd—all of whom purchased TP-Link routers under similar circumstances as Gonzales and Walker. FAC ¶¶ 72–73, 81–82, 91–92. Each wanted to purchase a router that could "transfer data at a high rate of speed." *Id.* ¶¶ 72, 81, 91. Each purchased the Archer C7 (Hernandez and Chuanroong) or Archer C50 AC1200 ("Archer C50") between 2016 and 2017. *Id.* ¶¶ 73, 76, 82, 85, 92, 95. They claim to have understood TP-Link's advertising to "identify the wireless data rates actually available to and capable of being experienced by [each] and other consumers when using the Router for wireless data transfer." *Id.* ¶¶ 74, 83, 93.

**E.    Plaintiffs were disappointed by real-world router speeds.**

All Plaintiffs claim similar experiences; each claims to have later discovered—based on a hired "investigator" and Internet publications—that their respective routers are incapable of achieving the speeds advertised for the physical layer at the application layer. *See* FAC ¶¶ 41–45, 57, 68, 77, 87, 96.

As in the Complaint, Plaintiffs continue to rely on a December 2015 Tom's Guide article titled, "TP-Link Archer C7 Review: Decent Performance for a Low Price." RJN Ex. 19, at 122; *see* FAC ¶ 41. The article rates the Archer C7 "Very Good," with the "VERDICT: TP-Link's Archer C7 delivers a lot of router for the money, with reasonable performance and the ability to connect peripherals." RJN Ex. 19, at 122. The article praises the Archer C7 as "Good 5-GHz performance for the price" and ranks the performance above two other competitor's routers for 5GHz band speed. *Id.* at 122, 125. The "C7 delivered enough data to support three devices that separately played a TV show, an Internet radio station and ran a movie, all while two systems were moving data back and forth. The router delivered video and audio smoothly, with no stutters or frozen frames during [] tests." *Id.* at 125. The article concludes, "Get the TP-Link Archer C7 if you want solid performance at a low price." *Id.* at 127.

The FAC also cites testing detailed in a February 8, 2018 TechGearLab article, which states the Archer C7 provides "fantastic value, offering solid performance at a relatively affordable price" and concludes: "Earning the Best Buy Award, the Archer [C7] is our top recommendation when searching for a router on a tight budget." RJN Ex. 18, at 120; *see* FAC ¶ 41. For the TL-WDR3600 router, the FAC cites a January 17, 2013 Hexus.net article giving the router four out of five stars, where the authors "were left suitably impressed with its versatility and value" and concluded: "All in all, a solid router at

1  an attractive price point and a worthy upgrade over the generic hubs that ship with most cable contracts."

2  RJN Ex. 20, at 132, 138–39; *see* FAC ¶ 44.

3        **F.**    **Gonzales and Walker's new theory.**

4        The Court dismissed Gonzales and Walker's first attempt to plead plausible claims because they

5  "offer[ed] nothing to dispute that the routers actually comply with the 802.11 IEEE standards" and

6  "acknowledge[d] and allege[d] that consumers interpret TP-Link's advertising to mean its routers' data

7  speeds are consistent with the wireless-networking standards and the data rates defined in those

8  standards." ECF No. 47 at 6–7. The Court found Plaintiffs failed to plead "that the marketing is

9  misleading to an ordinary consumer even assuming the routers comply with the technical standards"

10  and granted leave to amend. *Id.* at 7.

11        Plaintiffs' FAC asserts the same causes of action as the Complaint and adds three new class

12  representatives. Notwithstanding the Court's unequivocal finding that TP-Link's speed claims are

13  interpreted as being "consistent with the [relevant] wireless networking standards," the FAC

14  conspicuously omits references to standards. *Compare* Compl. *with* FAC. Plaintiffs assert claims

15  against three purchased, as well as numerous non-purchased wireless routers (the "Routers").[2] FAC

16  ¶ 20. As in the Complaint, the FAC fails to include any advertisements, representations, or physical

17  characteristics relating to the non-purchased Routers, or that Plaintiffs viewed any of the advertising for

18  the non-purchased products. The FAC cites TP-Link advertising that includes speed disclaimers for the

19  three purchased products. *Id.* ¶¶ 32, 34–35; *see, e.g.,* RJN Ex 14, at 95. The putative class is defined as

20  "[a]ll persons who purchased a TP-Link Router in California since August 15, 2014." FAC ¶ 100.

21  **III.**    **LEGAL STANDARDS**

22        A complaint should be dismissed if a plaintiff fails to plead sufficient facts "to state a claim to

23  relief that is plausible on its face" and must set forth sufficient facts which, when taken as true, raise

24  more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R.

25  Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal "is proper if there is a

26

27     [2] Plaintiffs now refer to the at-issue routers as the "TP-Link Routers" or just the "Routers" instead of the "Purported 802.11 Routers." *Compare* FAC ¶ 20 *with* Compl. ¶ 1. This motion refers to the at-issue

28  routers collectively as the "Routers" for the sake of consistency.

1   lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

2   theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quotations and citations

3   omitted). "[A] plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he

4   cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)

5   (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)). The court need not assume the validity

6   of "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v.*

7   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

8          In addition, "[w]here the complaint demonstrates that a class action cannot be maintained on

9   the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple*

10  *Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009); Fed. R. Civ. P. 12(f). Indeed, class certification issues

11  are to be considered "at an early practicable time after a person sues or is sued as a class representative."

12  Fed. R. Civ. P. 23(c)(1)(A).

13  **IV.   ARGUMENT**

14         **A.   Gonzales and Walker Lack Standing Based on Inconsistent Pleadings**

15              1.   <u>Amended pleadings must be construed in the context of the original pleading.</u>

16         "The principle that a court may look to prior pleadings in determining the plausibility of an

17  amended complaint is well established." *Royal Primo Corp. v. Whitewater W. Indus., Ltd*, No. 15-CV-

18  04391-JCS, 2016 WL 1718196, at *3 (N.D. Cal. Apr. 29, 2016); *see, e.g.*, *Rodriguez v. Sony Comput.*

19  *Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (finding later filed pleading impermissibly

20  contradicted earlier pleading.). Generally, an amended complaint should contain "additional allegations

21  that are consistent with the challenged pleading and that do not contradict the allegations in the original

22  complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (quotations and

23  citations omitted). Inconsistent amendments warrant dismissal. *See, e.g.*, *J. Edwards Jewelry Distrib.,*

24  *LLC. v. Wells Fargo & Co.*, No. 18-CV-03886-YGR, 2019 WL 2329248, at *4 (N.D. Cal. May 31,

25  2019) (plaintiff cannot simply delete earlier factual allegations); *Schneidereit v. Tr. of the Scott & Brian,*

26  *Inc.*, No. CV1106919JVSRNBX, 2012 WL 12884908, at *1 n.5 (C.D. Cal. Apr. 27, 2012), *aff'd sub*

27  *nom. Schneidereit v. Tr. of Scott & Brian, Inc.*, 693 F. App'x 733 (9th Cir. 2017) (finding amended

28  pleadings implausible in light of repeated admissions to the contrary in prior pleadings); *Stanislaus*

1    *Food Prod. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1076–77 (E.D. Cal. 2011) (same).

2             2.    <u>Gonzales and Walker cannot change their story and plausibly plead a different</u>

3                     <u>understanding of the 802.11 standards.</u>

4        Gonzales and Walker's allegations in the FAC are diametrically opposed to their prior

5 allegations and admissions. The original Complaint is clear—Gonzales and Walker understood the

6 802.11 standards to regulate the physical layer speed, and not the application layer speed. The

7 Complaint details that Gonzales and Walker understood the applicable 802.11 wireless standards,

8 including explaining the standards and how to reach specific ***physical layer speeds***. Compl. ¶¶ 15–19

9 (explaining a consumer's understanding of the IEEE 802.11 standards). Both interpreted TP-Link's

10 advertising to mean the routers conformed with the 802.11 wireless-networking standards and the data

11 rates required by those standards. *Id.* ¶¶ 22, 23, 25, 31–33, 35, 39, 44–47, 49, 53. Gonzales "researched

12 his options using a variety of resources available on the Internet," Compl. ¶ 30; FAC ¶ 51, and viewed

13 the back of the at-issue router's packaging that listed the 802.11ac standard <u>along with</u> the router's

14 speed. Compl. ¶ 33; *see also id.* ¶ 21 ("For each of these models, TP-Link provides specifications on its

15 website claiming that the router conforms to the IEEE 802.11n and/or IEEE 802.11ac standard. The

16 specifications further set forth the wireless data rate that the router supposedly offers"); *id.* ¶¶ 22–24

17 (showing "typical" examples of TP-Link's advertising stating the applicable 802.11 wireless standards

18 and data rates described by those standards). Gonzales understood TP-Link's representations meant its

19 routers conform to the 802.11ac standard and support "wireless data rates ***in accordance with those***

20 ***standards***." *Id.* ¶¶ 70, 72–73; *see also id.* ¶ 3 ("the Purported 802.11ac Router that Mr. Gonzales

21 purchased should be capable of offering a data rate of 1,300 megabits per second over the 5 GHz channel

22 ***if it conformed to the standard***") (emphasis added); *id.* ¶ 27 ("TP-Link represents to all its retailers that

23 the Purported 802.11 Routers conform to the IEEE 802.1n and/or IEEE 802.11ac standards, and that

24 they support wireless data rates in ***accordance with those standards***") (emphasis added); *id.* ¶ 70

25 (same). Gonzales then purchased the router "[i]n reliance on Defendants' representations." *Id*. ¶¶ 25,

26 35. In responding to TP-Link's motion to dismiss, both "acknowledge[d] that consumers interpret TP-

27 Link's advertising to mean the Routers' data speeds are consistent with the wireless networking

28 standards and the data rates defined in those standards." ECF No. 47 at 6–7.

1  Gonzales and Walker now change their story and claim that they understood TP-Link's

2  advertising relates to the application layer speeds untethered to the advertising showing the speed in

3  conjunction with 802.11 standards. *See* FAC ¶¶ 54, 65. Deleting allegations from a complaint does not

4  change the advertising consumers view in commerce or how reasonable consumers interpret

5  advertising. Such claims are clearly implausible and should be dismissed.

6         3.   <u>Gonzales and Walker lack "actual reliance" required to assert claims under the</u>

7         <u>CLRA, UCL and FAL, or maintain claims for fraud and negligent misrepresentation.</u>

8  A plaintiff must have *actually relied* on a defendant's representations to establish standing to

9  bring claims under the CLRA, UCL, and FAL, or maintain claims for fraud and negligent

10  misrepresentation. *See Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at *7–

11  9 (N.D. Cal. Mar. 14, 2014) (UCL plaintiff must plead actual reliance); *Kwikset Corp. v. Super. Ct.*, 51

12  Cal. 4th 310, 326–27 (2011) (affirming that UCL and FAL claims must be pleaded with injury and

13  reliance); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) ("For fraud-based

14  claims under the CLRA and UCL, Plaintiff must also plead actual reliance."); *Cullen v. Netflix, Inc.*,

15  No. 5:11-CV-01199-EJD, 2013 WL 140103, at *4 (N.D. Cal. Jan. 10, 2013), *aff'd*, 600 F. App'x 508

16  (9th Cir. 2015) ("Because Plaintiff's claims 'sound in fraud' he must plead with particularity 'actual

17  reliance' on the allegedly deceptive, fraudulent, or misleading statements."); *Pirozzi v. Apple, Inc.*, 966

18  F. Supp. 2d 909, 919 (N.D. Cal. 2013) (concluding actual reliance is required to establish standing for

19  negligent misrepresentation claim).

20  As discussed above, Gonzales and Walker understood TP-Link's advertising to mean speeds

21  that conform with the applicable 802.11 standard. They cannot—and have not—alleged any failure to

22  conform with those standards. Gonzales and Walker thus lack standing.

23         4.   <u>Gonzales and Walker cannot add new plaintiffs to avoid dismissal.</u>

24  "A party lacking Article III standing at the outset of the lawsuit has no power to prosecute the

25  action. As such, a plaintiff may not amend the complaint to substitute a new plaintiff in order to cure a

26  lack of jurisdiction, because a plaintiff may not create jurisdiction by amendment when none exists."

27  *Thome v. U.S. Food & Drug Admin.*, No. C 11-00676 PSG, 2011 WL 3206910, at *2 (N.D. Cal. July

28  27, 2011) (quotations and citation omitted). Courts have consistently found amendment improper where

1  plaintiffs could not satisfy the standing requirement. *See, e.g., Chaset v. Fleer/Skybox Int'l, LP*, 300

2  F.3d 1083, 1087–88 (9th Cir. 2002) (holding district court did not abuse its discretion denying plaintiffs

3  leave to amend where plaintiffs could not cure the basic lack of standing flaw in their pleading).

4        Indeed, this Court has held that "where the original named plaintiff lacks standing, a new

5  plaintiff with standing cannot step in to save the lawsuit from dismissal." *Hensley-Maclean v. Safeway,*

6  *Inc.*, No. 11-CV-01230-RS, 2015 WL 3956099, at *4 (N.D. Cal. June 29, 2015) (Seeborg, J.). "Several

7  courts, including the Ninth Circuit, have applied this principle to dismiss class actions when the sole

8  named plaintiff lacks standing in lieu of allowing class counsel to replace the named plaintiff with

9  another class member who actually has standing." *Ellis v. Experian Info. Sols., Inc.*, No. 17-CV-07092-

10  LHK, 2018 WL 3036682, at *5 (N.D. Cal. June 19, 2018); *see, e.g., Lierboe v. State Farm Mut. Auto.*

11  *Ins. Co.*, 350 F.3d 1018, 1023–24 (9th Cir. 2003) (holding where named plaintiff lacked standing,

12  dismissal is appropriate without further opportunity to substitute a new plaintiff, because without

13  standing, there was no case into which a new plaintiff could be substituted).

14        As discussed above, Gonzales and Walker could not have plausibly relied on TP-Link's

15  advertising in the manner alleged in the FAC, and as such do not have standing to asserts claims on

16  behalf of themselves and the putative class. *See* FAC ¶ 100. Nor can Gonzales and Walker add plaintiffs

17  to remedy this fatal defect warranting dismissal of this case in its entirety.[3]

18        **B.    New Plaintiffs Hernandez, Chuanroong and Todd Lack Standing Because They**

19             **Allege a Similarly Implausible Understanding of TP-Link's Advertising**

20        Hernandez, Chuanroong, and Todd (collectively, "New Plaintiffs") viewed the *same advertising*

21  for the *same products* in the *same marketing channels* as Walker and Gonzales. Yet, despite the fact

22  that Walker and Gonzales previously understood that advertising to indicate purchased routers were

23  standard-compliant (*see supra* at II.A–C), New Plaintiffs have adopted Gonzales and Walker's new-

24  found interpretation that the advertising claims concern speeds at an entirely different aspect of

25  networking. FAC ¶¶ 74, 83, 93. Their disingenuous attempt to write the 802.11 standards out of the

26  advertising (and complaint) fails. Courts "look to prior pleadings in determining the plausibility of an

27

28  _____

[3] TP-Link disputes whether the Court's Order granting Plaintiffs leave to amend permitted Plaintiffs to add parties to this lawsuit.

1   amended complaint." *Royal Primo Corp.*, 2016 WL 1718196, at *3. The original Complaint by the

2   same group of plaintiffs forecloses the allegations in the FAC.

3        Even setting aside the effort to interpret anew advertising that was viewed years ago, New

4   Plaintiffs' claims nevertheless fail because at-issue advertising claims must be evaluated "in context."

5   *Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995). Statements that a plaintiff claims are

6   misleading need not be treated as such if the deception is "dispelled by the [defendant's representations]

7   as a whole." *Id.* "[A] [p]laintiff's selective interpretation of individual words or phrases from a product's

8   labeling cannot support a CLRA, FAL, or UCL claim." *Hairston v. South Beach Bev. Co.*, No. CV 12-

9   1429-JFW (DTBx), 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012).

10        As with Gonzales and Walker, New Plaintiffs claim to have understood the technical aspects of

11   TP-Link's marketing, including the difference between the 2.4 GHz and 5 GHz bands and the separate

12   speed representations (in Mbps) relating to each band. *See* FAC ¶¶ 74, 83, 93. Furthermore, Plaintiffs

13   understand that "the capabilities and requirements of technology and technological services increase

14   over time[] and can do so quickly and dramatically . . . ." *Id.* ¶¶ 55, 66, 75, 84, 94. Yet Plaintiffs offer

15   no explanation for their apparent claim that, while a reasonable consumer would understand what these

16   technical terms mean in the context of router speeds, they would not also understand that these terms

17   are used in the context of 802.11 standards. That "selective interpretation" is simply not plausible.

18        **C.   A Reasonable Consumer Would Not Be Misled by TP-Link's Advertising When**

19             **They Viewed Them In Context**

20        CLRA, UCL, and FAL claims are governed by the "reasonable consumer" test, under which

21   "the false or misleading advertising and unfair business practices claim must be evaluated from the

22   vantage of a reasonable consumer," and the plaintiffs must show that "members of the public are likely

23   to be deceived." *Freeman*, 68 F.3d at 289; *see Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th

24   Cir. 2008); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124–25 (N.D. Cal. 2010) (analyzing

25   UCL, FAL, and CLRA claims under the reasonable consumer test). The phrase "likely to be deceived"

26   "implies more than a mere possibility that the advertisement might conceivably be misunderstood by

27   some few consumers viewing it in an unreasonable manner;" instead it means "it is probable that a

28   significant portion of the general consuming public or of targeted consumers, acting reasonably in the

1  circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003).

2  The Ninth Circuit has directed courts to apply a "common sense" standard at the pleading stage

3  for false advertising claims. *See Stuart v. Cadbury Adams USA, LLC*, 458 F. App'x 689, 690 (9th Cir.

4  2011) (affirming dismissal of UCL claim that "def[ied] common sense"); *see also Carrea v. Dreyer's*

5  *Grand Ice Cream, Inc.*, 475 F. App'x 113, 115 (9th Cir. 2012) (affirming dismissal with prejudice of

6  CLRA, FAL, and UCL claims and rejecting the plaintiff's attempt to interpret words on a product's

7  label out of context). "Because the 'reasonable consumer' inquiry is an objective standard," a court may

8  conclude as a matter of law that the plaintiff's interpretation of a label is unreasonable. *Azoulai v. BMW*

9  *of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *7 (N.D. Cal. Apr. 13, 2017).

10  As an initial matter, the inconsistency between Gonzales and Walker's allegations in the

11  Complaint and Plaintiffs' allegations in the FAC makes it impossible to determine the "vantage of a

12  reasonable consumer." Gonzales and Walker previously confirmed—and the Court found—that a

13  reasonable consumer would view TP-Link's advertising as representing that its routers conform with

14  the 802.11 standards and the physical layer speeds regulated by those standards. Plaintiffs have made

15  no allegation to support a plausible finding that a reasonable consumer would now interpret the

16  advertising differently. "[C]ommon sense," *Stuart*, 458 F. App'x at 690, dictates that the same

17  advertising cannot support multiple objective "reasonable consumer" interpretations. Dismissal is

18  warranted on that basis alone.[4]

19  Moreover, no reasonable consumer would be misled because TP-Link's advertising repeatedly

20  identifies the relevant standard version (here 802.11ac or 802.11n) *in conjunction with* an associated

21  "signal rate" (or "routers' speed"), applicable frequency band (2.4GHz or 5GHz), and maximum (or

22  "Up to") speeds in megabits per second (Mbps). For example, the advertising for the Archer C7 on

23  Amazon states in the product description that "TP-Link's Archer C7 comes with the next generation

24  Wi-Fi standard – 802.11ac, 3 times faster than the wireless N speeds and delivering a combined wireless

26  _____

[4] *See Rugg v. Johnson & Johnson*, No. 17-CV-05010-BLF, 2018 WL 3023493, at *3 (N.D. Cal. June
27  18, 2018) ("Because the 'reasonable consumer' inquiry is an objective standard, claims may be
dismissed as a matter of law where an alleged statement . . . is such that no reasonable consumer could
28  be misled in the manner claimed by the plaintiff.") (citations omitted).

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

data transfer rate of up to 1.75 Gbps, with 1.3 Gbps over 5GHz band and 450Mbps over the 2.4GHz band." RJN Ex. 10, at 60; *see also* FAC ¶ 29, RJN Ex. 9, at 49 (Amazon.com listing for Archer C7: "high-performance AC1750 Wi-Fi, delivering up to 1750 Mbps of Wi-Fi speed"); FAC ¶ 30, RJN Ex. 10, at 55–56 (Amazon.com listing for Archer C7 stating "[s]upports 802.11ac" adjacent to speed representations); FAC ¶ 31, RJN Ex. 11, at 65, 66 (Amazon.com listing for Archer C50 stating "[u]pgrades networks to powerful 802.11ac Wi-Fi technology"); FAC ¶ 32, RJN Ex. 12, at 76 (Amazon.com listing for Archer C50 stating "[u]p to 1200 Mbps AC Wi-Fi speed"); FAC ¶ 33, RJN Ex. 13, at 82–83 (Amazon.com listing for TL-WDR3600 reciting 802.11 standards alongside "600 megabits per second").

TP-Link's advertising on its own website also identifies the 802.11 standards throughout. *See* RJN Ex. 15, at 98 (stating the Archer C7 "[s]upports 802.11ac" adjacent to speed representations and includes charts comparing standards); *id.* Ex. 16, at 106 (TP-Link product page for the TL-WDR3600 identifying conformity with 802.11n). Each product name also references the applicable 802.11 standard in conjunction with the speed. *See* FAC ¶ 22 (product packaging for the Archer C7 referring to "AC1750 Wireless Dual Band Gigabit Router" in reference to the 802.11**ac** standard at 1750 Mbps); *id.* ¶ 24 (packaging for the TL-WDR3600 displaying "N600 Wireless Dual Band Gigabit Router" referring to the 802.11n standard at 600 Mbps), *id.* ¶ 31 (Archer C50 listing identifying the product as "TP-LINK AC1200 Wireless Dual-Band Wi-Fi Router"); *see also id.* ¶¶ 29, 30, 31, 32, 52, 73, 77, 82, 87, 92 (Routers' names all refer to the "AC" standard along with the speed); *id.* ¶¶ 24, 33, 35, 43, 62, 65 (all containing references to the "N" standard in the Routers' names). The FAC confirms the nomenclature is industry standard. As just one example, the TechGearLab article cited by Plaintiffs compares the Archer C7 **AC1750** with the Netgear **AC1750**, Nighthawk **AC1750**, and other 802.11ac standard routers. RJN Ex. 18, at 119. Similarly, the Amazon.com listing for the Archer C7 AC1750 provides a list of "similar items," including the Netgear **AC1750**. RJN Ex. 9, at 47.[5]

---

[5] The articles referenced in the FAC further belie the argument that a reasonable consumer would understand the advertised speeds relate to the application layer. All praise the TP-Link routers—including overall performance—and make no suggestion file transfer throughput renders the router incompatible with the physical layer speed defined by the relevant standards. *See, e.g.,* FAC ¶¶ 41, 44.

1    "[D]ismissal is appropriate" because a reasonable consumer would interpret TP-Link's

2    advertising in context. *Werbel ex rel. v. Pepsico, Inc.*, No. C 09-04456 SBA, 2010 WL 2673860, at *3

3    (N.D. Cal. July 2, 2010); *see also Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011

4    WL 1362188, at *12 (C.D. Cal. Apr. 11, 2011) (holding no actionable misrepresentation where the

5    statement "is accurate in the context of the label as a whole").

6    **D.    Plaintiffs Cannot Assert Claims Against Non-Purchased Products**

7    Plaintiffs only purchased three TP-Link products—the Archer C7, TL-WDR3600, and Archer

8    C50. FAC ¶ 2. Nevertheless, Plaintiffs bring claims against *all* other routers "sold by TP-Link within

9    the last four years." *Id.* ¶ 20. Whether a plaintiff has standing to assert claims against non-purchased

10   products is a jurisdictional issue appropriate to address at the motion to dismiss stage. *See Morgan v.*

11   *Apple Inc.*, No. 17-cv-05277-RS, 2018 WL 2234537, at *9 (N.D. Cal. May 16, 2018) (Seeborg, J.).

12   "Courts in the Northern District of California generally consider non-purchased products unable to

13   satisfy the standing requirements for claims under California statutes." *Arroyo v. TP-Link USA Corp.*,

14   No. 5:14-CV-04999-EJD, 2015 WL 5698752, at *4 (N.D. Cal. Sept. 29, 2015) (dismissing all claims,

15   including CLRA, UCL, and FAL, against non-purchased products).[6] The Court should dismiss all

16   claims to the extent they are based on alleged advertising of such non-purchased products.

17   Some courts have recognized an exception to this general rule if a class plaintiff includes

18   detailed allegations demonstrating that the purchased and non-purchased products are substantially

19   similar with respect to both alleged misrepresentations and physicality. *See Jones v. Nutiva, Inc.*, No.

20   16-CV-00711-HSG, 2016 WL 5210935, at *5 (N.D. Cal. Sept. 22, 2016) (dismissing UCL, FAL, and

21   CLRA claims based on non-purchased products because their labels were different from the labels on

22   the purchased products); *Arroyo*, 2015 WL 5698752, at *4 (holding the plaintiff lacked standing where

23   the complaint listed non-purchased products and simply stated that those models "contain similar

24   misrepresentations and physicality" to the one purchased by the plaintiff without "delving into the

25   _____

26   [6] *See also Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (no standing with respect to non-purchased products); *Ivie v. Kraft Foods Glob., Inc.*, 961 F.

27   Supp. 2d 1033, 1046 (N.D. Cal. 2013) ("there can be no requisite pecuniary injury where plaintiff did not herself purchase the product at issue"); *Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL

28   5458396, at *5 (N.D. Cal. June 14, 2012) (no injury for products plaintiffs did not purchase).

1   substantial similarity of each model"); *Stephenson v. Neutrogena Corp.*, No. C 12-0426 PJH, 2012 WL

2   8527784, at \*1 (N.D. Cal. July 27, 2012) (dismissing claims based on non-purchased products because

3   the purchased products were not "similar enough" to the non-purchased products in their physicality or

4   advertising).

5        Even if the exception to standing requirements applies (something the Ninth Circuit has never

6   endorsed), Plaintiffs fail to allege sufficient facts to meet their burden of demonstrating substantial

7   similarity in marketing and physicality. Instead, Plaintiffs continue to rely on boilerplate allegations

8   about TP-Link's alleged marketing, along with a list of some router models. *See* FAC ¶ 20.

9        Judge Koh's analysis in *Romero v. HP, Inc.* is illustrative. There, as here, the plaintiff alleged

10   HP engaged in the same false misrepresentations and practices with respect to "30 or so" non-purchased

11   printer models like the printer plaintiff purchased. No. 16-CV-05415-LHK, 2017 WL 386237, at \*8

12   (N.D. Cal. Jan. 27, 2017). The court rejected this bare allegation for failure to "delve into each product

13   or even mention the marketing materials for any of those products." *Id.* The court dismissed all claims

14   related to non-purchased products, holding that the plaintiff "failed to plead sufficient facts to establish

15   that all of the printer models are 'substantially similar' to the printer [p]laintiff purchased." *Id.*; *see also*

16   *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013) (dismissing claims

17   brought against non-purchased products because the plaintiff did not explain how each of the products

18   were actionably mislabeled, finding that such pleadings "amount to unacceptably bare legal

19   conclusions."); *Leonhart v. Nature's Path Foods, Inc.*, No. 5:13-CV-0492-EJD, 2014 WL 1338161, at

20   \*3–4 (N.D. Cal. Mar. 31, 2014) (dismissing CLRA, UCL, and FAL claims for non-purchased products

21   because plaintiff lacked standing to assert claims regarding statements she never saw and products she

22   did not buy and only alleged "substantial similarity" based on the same labeling statements); *Kane v.*

23   *Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 WL 5289253, at \*1–3, 11 (N.D. Cal. Sept. 19, 2013)

24   (though the plaintiffs generally claimed that the defendant's products had evaporated cane juice, no

25   added sugar, and were "all natural," they failed to allege how each of the purchased yogurts were

26   physically similar to the purchased products).

27        Plaintiffs' allegations fall well short of the required specificity courts in this District have

28   rejected as insufficient. Absent from the FAC is the language of *any* relevant marketing materials, *any*

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1  comparison between the advertising Plaintiffs viewed and those for other routers,[7] testing results for the

2  routers, physical characteristics, or *any* factual allegation that suggests they are substantially similar.

3  *See generally* FAC. All claims against non-purchased products should be dismissed.

     **E.   The FAC Sounds in Fraud, But Fails to Plead Fraud with Adequate Specificity**

5         Where a plaintiff alleges "fraudulent conduct" as the basis for their claims, the claims "sound

6  in fraud," and the pleading "as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns*

7  *v. Ford Motor Co.*, 567 F.3d 1120, 1125–27 (9th Cir. 2009).[8] This Court directed that "plaintiffs should

8  ensure that any claims sounding in fraud are pleaded with adequate specificity and that the allegations

9  demonstrate injury-in-fact." Order Granting Motion to Dismiss, ECF No. 47, at 7 n.2. Plaintiffs have

10  failed to meet the directive.

11         Here, the crux of Plaintiffs' claims is TP-Link's allegedly fraudulent course of conduct—the

12  false and deceptive representations, as well as omissions, about the speed of its routers, and thus

13  Plaintiffs' entire FAC clearly "sound[s] in fraud."[9] To satisfy the heightened pleading standard of Rule

14  9(b), Plaintiffs must identify the "who, what, when, where, and how" of the misconduct. *Kearns*, 567

15  F.3d at 1126. Importantly, Plaintiffs must allege injury-in-fact with particularity. *Powell v. Wells Fargo*

16  *Home Mortg.*, No. 14-CV-04248-MEJ, 2017 WL 840346, at *14 (N.D. Cal. Mar. 3, 2017) (holding

17  plaintiff's fraud claim lacked the requisite specificity about how plaintiff was injured). "[E]ven named

18  plaintiffs who represent a class must allege and show that they personally have been injured, not that

19  injury has been suffered by other, unidentified members of the class to which they belong and which

20

---

21  [7] Additionally, TP-Link's marketing for its routers includes a disclaimer regarding the advertised speed
22  such that advertising viewed by Plaintiffs is different than putative class members. *See, e.g.*, RJN Ex. 14, at 95.

23  [8] A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the
24  functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

25  [9] *See, e.g.*, *Bautista v. Valero Mktg. & Supply Co.*, No. 15-CV-05557-RS, 2016 WL 3924117, at *2
26  (N.D. Cal. July 21, 2016) (Seeborg, J.) ("[C]ourts in this circuit have applied Rule 9(b)'s heightened pleading standard to claims arising under the UCL, FAL, and CLRA when the plaintiff's claims sound in fraud."); *Daniels v. Select Portfolio Servicing, Inc.*, 246 Cal. App. 4th 1150, 1166 (2016) (noting that
27  a claim for negligent misrepresentation sounds in fraud and must meet the pleadings standard under Rule 9(b)); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (applying Rule 9(b) to unjust
28  enrichment claim based on fraud).

they purport to represent." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (quotations omitted).

Here, Plaintiffs do not allege how they personally suffered injury-in-fact as a result of the alleged fraudulent misconduct. As examples, Plaintiffs do not plead: (i) how the slower-than-expected speeds affected their ability to use the routers, including whether they were unable to connect to other wireless devices; (ii) how much they paid for the routers; (iii) competitors' products they considered; (iv) "bandwidth" throughput of competing routers; or (v) how much they would have paid had they been aware of real-world throughput speeds. Absent allegations that Plaintiffs were actually injured—and how—the Complaint fails to meet the heightened pleading requirements of Rule 9(b) and must be dismissed. *Herrington v. Johnson & Johnson Consumer Cos., Inc.*, No. C 09-1597 CW, 2010 WL 3448531, at *14 (N.D. Cal. Sept. 1, 2010) (dismissing UCL, FAL, and CLRA claims because plaintiffs did not plead with particularity).

Instead, the FAC contains boilerplate statements that Plaintiffs "discovered" the routers do not function at the advertised speeds. *See* FAC ¶¶ 57, 68. Notably absent from the FAC is any allegation that Plaintiffs even noticed slower speeds during use. Instead, Plaintiffs rely on *third-party testing*—Tom's Guide, TechGearLap, Hexus.net, and Lifewire (*id.* ¶¶ 41, 44, 45)—and the vague results from Plaintiffs' alleged "investigators" to claim slower-than-expected speeds (*id.* ¶¶ 42, 43). However, third-party testing fails to demonstrate how *Plaintiffs* were personally injured as a result of the allegedly slow router speeds.

Similarly, Plaintiffs added vague and conclusory allegations of speculative future harm. Plaintiffs allege that they "wanted to own and use a router capable of actually providing [600-1750] Mbps of wireless bandwidth to [them], in the event [they] ever wanted to and was able to place such demand on the router" without specifying what that demand would be, and that they "wanted to have the ability to take advantage of future increases in speeds and/or bandwidths provided or required by device manufacturers, internet service providers, and/or content providers." *Id.* ¶¶ 55, 66, 75, 84, 94. However, "[a]llegations of 'possible future injury' are not sufficient to establish injury in fact; the 'threatened injury must be certainly impending,'" which is not the case here. *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1058 (N.D. Cal. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S.

398, 409 (2013)).[10]

Furthermore, in order to assert claims under California consumer protection laws, a plaintiff must satisfy Article III standing requirements, *as well as* specifically allege that he or she suffered an economic injury. *Leonhart*, 2014 WL 1338161, at \*3–4 ("The UCL and FAL incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury."); *see also Herrington*, 2010 WL 3448531, at \*4–8 (dismissing UCL (fraudulent prong), FAL, and CLRA claims for failure to plead with particularity both an injury-in-fact and economic injury because the plaintiffs did not plead a credible threat of harm to themselves from a defective product and did not plead the products failed to perform sufficient to make an economic injury cognizable).

To allege economic injury, Plaintiffs claim that if they had "known that the wireless data rates actually available to and capable of being experienced by [them] when using the Router for wireless data transfer were far below the advertised speeds, [they] would not have paid as much for the router, or would have purchased a different wireless router." FAC ¶¶ 58, 69, 78, 88, 97. This is insufficient. *First*, Plaintiffs do not *even allege the existence of an alternative router* that can achieve standard-specific speeds at the application layer (or "actual use by a consumer"), let alone identify such a router. *Cf. Boysen v. Walgreen Co*., No. C 11–06262 SI, 2012 WL 2953069, at \*7 n.9 (N.D. Cal. July 19, 2012) (rejecting plausibility of an "alternative" purchase because similar products all contain the same alleged toxins). In fact, the third-party reviews on which Plaintiffs rely confirm TP-Link's routers are often faster than the competition. *See generally* RJN Exs. 18–21. As for the allegation that they "would have not paid as much," Plaintiffs do not disclose how much they paid for their routers,[11] prices of alternative routers, or the appropriate price for the mythical router that achieves physical layer speeds at the application layer. Rule 9(b) requires more.

---

[10] See also *Payne v. Office of the Comm'r of Baseball*, No. 15-CV-03229-YGR, 2016 WL 6778673, at \*4 (N.D. Cal. Nov. 16, 2016), *aff'd*, 705 F. App'x 654 (9th Cir. 2017) ("[S]peculation or subjective apprehension about future harm do[es] not support standing.") (quoting *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (quotations omitted)).

[11] Tom's Guide found the Archer C7 router is a good value given the price. RJN Ex. 19, at 127. *See also* RJN Ex. 18, at 120 ("Earning the Best Buy Award, the Archer [C7] is our top recommendation when searching for a router on a tight budget."); RJN Ex. 21, at 152 ("You can pick [the Archer C50] up for $59.99 . . . [t]hat's an extraordinarily low price for a wireless router.").

DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

1    In short, Plaintiffs have not sufficiently alleged injury—economic or otherwise. Absent

2  allegations that Plaintiffs were *actually* injured—and how—the FAC fails to meet the heightened

3  pleading requirements of Rule 9(b) and must be dismissed. *Herrington*, 2010 WL 3448531, at *14

4  (dismissing UCL, FAL, and CLRA claims because plaintiffs did not plead injury with particularity).

5      **F.    Plaintiffs Still Have Not Adequately Alleged Knowledge of Falsity**

6    A plaintiff is required to sufficiently plead a defendant's knowledge of falsity to state fraud,

7  CLRA, and UCL claims. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012). As

8  discussed *supra* at III.A–B, the reasonable consumer test does not permit selective readings of

9  advertising. TP-Link could not reasonably assume that its customers would understand some technical

10  statements regarding its Routers (e.g., "Mbps" and "GHz") while not understanding other disclosures

11  (i.e., the applicable standard). Furthermore, TP-Link clearly does not and cannot have knowledge of

12  "falsity" where the representations it makes are literally true. Again, Plaintiffs have not and cannot

13  allege that the Routers do not conform with the advertised 802.11 standard at the physical layer.

14  Plaintiffs' fraud (Count 1), CLRA (Count 2), and UCL (Count 6) claims should therefore be dismissed.

15      **G.    Negligent Misrepresentation Claims are Barred by the Economic Loss Doctrine**

16    Plaintiffs' claim for negligent misrepresentation (Count 4) is barred by the economic loss

17  doctrine under which a plaintiff may not recover in tort for "purely economic loss due to disappointed

18  expectations." *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014)

19  (dismissing negligent misrepresentation claim seeking only economic damages from purchasing

20  defective product); *see also, e.g.*, *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803

21  EMC, 2013 WL 4530470, at *9 (N.D. Cal. Aug. 26, 2013) ("Where a purchaser's expectations in a sale

22  are frustrated because the product he bought is not working properly, his remedy is said to be in contract

23  alone . . ." (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004))). This well-

24  established rule bars tort claims "[i]n the absence of (1) personal injury, (2) physical damage to property,

25  (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the

26  rule . . . ." *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008)

27  (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)).

28    None of these factors exist here. Despite being given the opportunity, Plaintiffs still do not allege

1    personal injury or property damage arising from the allegedly misleading advertising. *See generally*

2    FAC. Rather, Plaintiffs' alleged harm in the FAC remains substantively identical to that alleged in the

3    original Complaint—a purely economic loss due to disappointed expectations of the routers' speed.

4    FAC ¶ 164. This claim must therefore be dismissed.

5             **H.    Claims for Injunctive and Declaratory Relief Must be Dismissed**

6             Plaintiffs lack standing to seek injunctive and declaratory relief because they do not plausibly

7    allege that they are at imminent risk of injury by TP-Link's advertising. In a class action, "[u]nless the

8    named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking

9    that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Though "a previously

10   deceived plaintiff" suing under the UCL, FAL, and CLRA "may have standing to seek injunctive relief,"

11   the plaintiff still must show "that she faces an imminent or actual threat of future harm caused by [the

12   defendant's] allegedly false advertising." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 970 (9th

13   Cir. 2018). "[T]he majority view [is] that a plaintiff must intend to purchase a product in the future in

14   order to have standing to seek injunctive relief." *Lanovaz v. Twinings N. Am., Inc.*, No. 12-CV-02646-

15   RMW, 2016 WL 4585819, at *4 (N.D. Cal. Sept. 2, 2016). However, mere professions of "'some day'

16   intentions—without any description of concrete plans or indeed any specification of when the some day

17   will be—do not support a finding of the 'actual or imminent' injury that [the Court] requires." *Lujan v.*

18   *Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

19            Plaintiffs claim they "intend[] to purchase high-speed routers in the future and intend[] to

20   include TP-Link routers in [their] consideration of routers. When faced with TP-Link's advertising and

21   labeling in the future, [they] will be unable to determine the true speed of the router that [they] will be

22   capable of experiencing for data transfer, unless [they] first purchase[] and test[] the product." FAC ¶¶

23   60, 71, 80, 90, 99. However, when applying *Lujan*, the Ninth Circuit has rejected the sufficiency of that

24   exact allegation. *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018). Moreover,

25   allegations that "Plaintiffs and the other members of the Class have suffered and continue to suffer

26   injury in fact" (FAC ¶ 179), are not entitled to a presumption of truth on a motion to dismiss, as they

27   "do nothing more than state a legal conclusion . . . cast in the form of a factual allegation." *Moss v. U.S.*

28   *Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

1    Even if Plaintiffs had "concrete plan[s]" or could specify "when the some day" intention to

2    purchase TP-Link routers will materialize—and they certainly do not plead any such plans in the FAC—

3    there is no future risk that Plaintiffs will be misled by TP-Link's advertised router speeds. First,

4    Gonzales and Walker understood TP-Link's advertising as related to the physical layer speed. Second,

5    New Plaintiffs cannot have plausibly understood the labeling in the manner alleged in the FAC, i.e., the

6    speed at the application layer. Third, having read third-party reviews and hired investigators—each

7    testing the routers' speed under different conditions (*see* FAC ¶¶ 41–45)—they acknowledge that router

8    performance at the application layer depends on numerous environmental factors in which the router is

9    used, including the other devices used with the router and Internet speed (*see id.* ¶¶ 55, 66, 75, 84, 94

10   (Plaintiffs "wanted to have the ability to take advantage of future increases in speeds and/or bandwidths

11   provided or required by device manufacturers, internet service providers, and/or content providers.")).

12   In *Rahman v. Mott's LLP*, the court addressed a nearly identical allegation. No. 13-CV-03482-

13   SI, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018). The plaintiff claimed that Mott's "No Sugar

14   Added" label "caused [him] to believe that Mott's 100% Apple Juice contained less sugar than, and was

15   healthier than, other 100% apple juices." *Id.* at *3. As Plaintiffs here, Rahman also alleged that he

16   "intend[ed] to purchase Mott's 100% Apple Juice in the future." *Id.* The court disagreed that he was

17   entitled to injunctive relief: "even if plaintiff were misled by the 'No Sugar Added' statement to believe

18   that Mott's 100% Apple Juice 'contained less sugar than, and was healthier than, other 100% apple

19   juices,' he is now aware that such a belief was unfounded." *Id.* (internal citations omitted). "Because

20   [Plaintiffs are] now aware that [TP-Link's] products [are mislabeled], [they] cannot allege that [they]

21   would be fraudulently induced to purchase the products in the future." *Frenzel v. AliphCom*, 76 F. Supp.

22   3d 999, 1015 (N.D. Cal. 2014) (quotations and citation omitted). As in *Frenzel*, where the court

23   dismissed with prejudice an injunction claim where a fitness tracker purchaser claimed to have been

24   misled by false advertising regarding battery life, *id.*, Plaintiffs' allegations that they intend to buy the

25   routers with which they were highly dissatisfied again are simply not credible.[12]

26

---

27   [12] Although Plaintiffs claim that speed is the most important factor to the putative class they claim to
     represent, FAC ¶ 1, they seek injunctive relief to change the allegedly misleading advertising, *id.* ¶¶ 71,

28   80, 90, 99, 127, 153. But changing the advertising will not make the routers faster.

1   Moreover, TP-Link marketing includes a disclaimer regarding the advertised speed. *See, e.g.,*

2   RJN Ex 14, at 95. The Ninth Circuit has not "created a freestanding right to seek injunctive relief based

3   on conduct that has ended." *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2018 WL 1009257,

4   at *7 (N.D. Cal. Feb. 13, 2018); *see, e.g.*, *Tyler Barnett PR, LLC v. Facebook Inc.*, No. 16-CV-06232-

5   JSW, 2017 WL 6449821, at *3 (N.D. Cal. Dec. 18, 2017) (plaintiffs lacked standing to seek injunctive

6   relief as defendant had already corrected relevant analytics). When "the business has ceased the

7   offending practice on its own . . . there is nothing left to enjoin." *Bruton*, 2018 WL 1009257, at *7 (no

8   standing because mislabeling had ended). Plaintiffs lack standing to seek any injunctive and declaratory

9   relief. The CLRA claim is moot and should be dismissed in its entirety because it only seeks injunctive

10   relief. *See* FAC ¶ 136.

11   **I.   Unjust Enrichment Is Not A Stand-Alone Claim**

12   "California does not recognize unjust enrichment as a stand-alone claim." *Stowers v. Wells*

13   *Fargo Bank, N.A.*, No. 3:13-CV-05426-RS, 2014 WL 1245070, at *8 (N.D. Cal. Mar. 25, 2014)

14   (Seeborg, J.). Plaintiffs have pleaded no independent cognizable claim, requiring dismissal of this count.

15   *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *18 (N.D. Cal. July 23,

16   2013) (finding "where the plaintiff[] [has] failed properly to allege any cognizable claim for relief . . .

17   the unjust enrichment claim must also be dismissed").

18   **J.   Dismissal Should Be With Prejudice**

19   Where amendment would be futile, the complaint should be dismissed with prejudice. *Steckman*

20   *v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998); *see also Leadsinger, Inc. v. BMG Music*

21   *Publ'g*, 429 F. Supp. 2d 1190, 1197 (C.D. Cal. 2005) (leave to amend is not required where "any

22   amendment would be futile"). Here, Plaintiffs have already been given an opportunity to remedy the

23   fatal defects in their original Complaint yet have failed to do so.

24   **K.   In The Alternative, Plaintiffs' Class Allegations Should Be Stricken**

25   Alternatively, TP-Link asks that the Court strike Plaintiffs' class allegations as they are

26   insufficient as a matter of law. The purpose of Rule 12(f) is "to avoid the expenditure of time and money

27   that must arise from litigating spurious issues by dispensing with those issues prior to trial."

28   *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quotation omitted). "A motion

1    to strike should be granted if it will eliminate serious risks of prejudice to the moving party, delay, or

2    confusion of issues." *Lee v. Hertz Corp.*, 330 F.R.D. 557, 560 (N.D. Cal. 2019) (Seeborg, J.). "Where

3    the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant

4    may move to strike class allegations prior to discovery." *Sanders*, 672 F. Supp. 2d at 990. Plaintiffs

5    plainly cannot satisfy Rule 23's typicality or commonality requirements.

6        Rule 23 requires that "the claims or defenses of the representative parties are typical of the

7    claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). *First*, Plaintiffs' definition of "TP-Link

8    Routers" upon which their class allegations are based include a wide array of TP-Link routers which all

9    include different representations regarding different 802.11 standards and speeds.[13] However, Plaintiffs

10   only purchased three of the over twenty routers identified by name. FAC ¶ 20. Given the varying speeds

11   and 802.11 standards, as well as the presence of individualized environmental factors affecting router

12   speeds, Plaintiffs' claims are not typical of class members that purchased different routers with different

13   representations and different performance. *Second*, Plaintiffs' claims depend on how routers are *used*

14   by purchasing consumers. The FAC is filled with descriptions of Plaintiffs' idiosyncratic use cases—

15   designed to manufacture a dispute where none otherwise exists. As examples: Gonzales "wanted to

16   own" a router capable of "actually providing 1750Mbps of wireless bandwidth" just in case he ever

17   needed to use that bandwidth or take advantage of future technologies. FAC ¶ 55. Walker intended to

18   "transfer large amounts of data using the router." *Id.* ¶ 66. Hernandez intended to use the router for

19   "demanding services such as video streaming" and "handle simultaneous connections with multiple

20   devices." *Id.* ¶ 75. Chuanroong wanted to use "demanding services," but not multiple connections. *Id.*

21   ¶ 84. Todd wanted to handle multiple connections, but did not intend to use "demanding services." *Id.*

22   ¶ 94. Plaintiffs do not allege that class members intend to use routers in the same ways. Nor can they.

23   Plaintiffs' use is atypical is because the overwhelming majority of class members are likely to use

24   devices to access the Internet, in which case the application layer speed is immaterial as long as it

25   exceeds the Internet connection bandwidth. *Third*, as explained *supra* at II.C–D, even the named

26   Plaintiffs—let alone the class as a whole—cannot agree on what the at-issue advertising means. That

27

---

28   [13] The definition of TP-Link Routers also broadly includes "any other[] [wireless routers] sold by TP-Link within the last four years." FAC ¶ 20.

1    alone defeats any finding of typicality.

2        Rule 23 requires also that class action plaintiffs establish that "there are questions of law or fact

3    common to the class." Fed. R. Civ. P. 23(a)(2). This means that the class members' claims must "depend

4    on a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Commonality

5    requires the plaintiff to demonstrate that the class members have suffered the same injury," and "not . . .

6    merely that they have all suffered a violation of the same provision of law." *Id.* at 349–50. As the

7    Supreme Court has cautioned, it is easy to misread the commonality requirement of Rule 23 because

8    "any competently crafted class complaint literally raises common 'questions.'" *Id.* at 349 (citation

9    omitted). "What matters to class certification . . . is not the raising of common 'questions'—even in

10   droves—but rather, the capacity of a classwide proceeding to generate common answers apt to drive

11   the resolution of the litigation." *Id.* at 350 (citation omitted).

12       Here, Plaintiffs will be unable to demonstrate common questions of law or fact so as to satisfy

13   Rule 23. The crux of Plaintiffs' proposed common questions focus on TP-Link's speed representations

14   and what speeds are *actually experienced* by each consumer at the application layer. *See, e.g.,* FAC ¶

15   103 ("whether the TP-Link Routers are capable of achieving the wireless data rates advertised by TP-

16   Link, and what the rates actually are under certain conditions;" "whether the TP-Link Routers have a

17   tendency (and in what frequency and degree) to cause or contribute to data transfer rates below the data

18   transfer rates advertised for the TP-Link Routers;" "whether TP-Link misled class members by

19   representing that the TP-Link Routers are capable of achieving the advertised wireless data rates");

20   Prayer for Relief (B1, C2, F2) ("requiring TP-Link to disclose the average wireless data transfer rates

21   actually available to purchasers of the Routers under reasonable testing conditions.").

22       Yet the FAC *expressly* acknowledges that speeds can vary greatly for any given consumer. *See*

23   FAC ¶ 40. Moreover, Plaintiffs further acknowledge these differences in actual experienced speed even

24   for different users testing the same router. *See id.* ¶ 41 (articles reviewing the Archer C7 found

25   application layer speeds range from 166 Mbps to 360.6 Mbps depending on the proximity of the router

26   to the testing device), *id.* ¶ 42 (Plaintiffs' "investigator" tested the Archer C7 and determined different

27   speeds), *id.* ¶¶ 43–44 (different speeds experienced by Plaintiffs' investigator and Hexus.net article

28   when testing the TL-WDR3600).

1        These differences are largely due to the fact that numerous environmental factors can affect

2   transfer speeds, including: (1) proximity of each device connected to the router; (2) signal interference

3   from other devices (including other nearby Wi-Fi routers operating on either the 2.4 GHz or 5 GHz

4   bands); and (3) physical obstructions such as walls and other elements of building construction. Indeed,

5   the articles Plaintiffs cite in their FAC acknowledge the impact of these factors. *See* RJN Ex. 18, at

6   114–120 (Archer C7 performed differently under different test conditions, including short/medium/long

7   distance testing and obstructed/unobstructed testing); *id.* Ex. 19, at 121–130 (different test distances for

8   Archer C7 and referencing "real-world testing" involving a "crowded office environment with lots of

9   Wi-Fi networks"); *id.* Ex. 20, at 131–140 (TL-WDR3600 performed different under "near" and "far"

10  testing conditions and the impact of "intervening walls providing signal resistance" as well as the

11  "default [2.4 GHz] channel occupied a crowded space in which several other Wi-Fi networks were

12  present, pushing performance down to a crawl"); *id.* Ex. 21, at 141–160 (Archer C50 performance was

13  impacted "if multiple devices are sucking bandwidth at the same time").

14       Additionally, the putative class will experience different router speeds based on other factors

15  such as: (1) the Mbps provided by their internet service provider; (2) the number of devices they have

16  concurrently connected to their router at any given time; (3) whether their typical usage is bandwidth

17  intensive (e.g. 4k video streaming or online gaming) or not (e.g. email and basic web browsing); and

18  (4) the firmware version installed on each class member's router. Given the wide variety of actual

19  consumer usage and experience, whether each class member suffered injury-in-fact, and to what degree,

20  is an inherently individualized question. Plaintiffs' proposed common questions therefore really are not

21  "common" at all and are not appropriate for class resolution.

22       Nor can Plaintiffs cure their class allegations by limiting it to purchasers who intended to use

23  routers in the same ways—and under the same circumstances—as them. Such a definition would make

24  the class unascertainable. The class allegations are futile and should be stricken.

25  **V.    CONCLUSION**

26       For the foregoing reasons, TP-Link respectfully requests that the Court grant this Motion and

27  dismiss Plaintiffs' Complaint without leave to amend, or in the alternative, strike class allegations.

28

Date:  July 10, 2019

Respectfully submitted,

LTL ATTORNEYS LLP


By:  */s/ Heather F. Auyang*
Heather F. Auyang
Paul Moskowitz
Prashanth Chennakesavan
David A. Crane
*Attorneys for Defendant*
*TP-Link USA Corporation*

.