1  **GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
2  adam@gutridesafier.com
SETH A. SAFIER (State Bar No. 197427)
3  seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
4  marie@gutridesafier.com
100 Pine St., Suite 1250
5  San Francisco, California 94111
Telephone: (415) 639-9090
6  Facsimile:  (415) 449-6469
7
STEPHEN M. RAAB (appearing pro hac vice)
8  stephen@gutridesafier.com
113 Cherry Street, #55150
9  Seattle, WA 98140-2205
Telephone: (415) 639-9090 x109
10
11  Attorneys for Plaintiffs

12

13

14                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA
15

16
RICHARD GONZALES, MATTHEW WALKER,          CASE NO. 3:18-cv-05824-RS
17  JON HERNANDEZ, JULIANNE CHUANROONG,
and DARREN TODD, on behalf of themselves, the   UNLIMITED CIVIL CASE
18  general public, and those similarly situated
**PLAINTIFFS' OPPOSITION TO**
19      Plaintiffs,                          **DEFENDANT'S MOTION TO**
**DISMISS PLAINTIFFS' FIRST**
20          v.                               **AMENDED COMPLAINT OR, IN**
**THE ALTERNATIVE, TO STRIKE**
21  TP-LINK USA CORPORATION,                 **CLASS ALLEGATIONS**

22              Defendant.                   Honorable Richard Seeborg
Date:   August 22, 2019
23                                           Time:  1:30 p.m.
Location:  Courtroom 03, 17th Floor
24

25

26

27

28

# TABLE OF CONTENTS

II.     Introduction .................................................................................................. 1

III.    Background .................................................................................................. 3

IV.    Legal Standard ............................................................................................ 4

V.     Argument .................................................................................................... 5

        A.     Plaintiffs' Case Theory Is Essentially the Same, Even Though the Routers'
               Compliance with the 802.11 Standards Is Not at Issue .............................. 5

        B.     The Amended Complaint Plausibly Alleges Deceptive Conduct ................ 7

        C.     Plaintiffs May Pursue Claims Concerning Non-Purchased Routers ...................... 10

        D.     The Complaint Adequately Pleads Fraud With Particularity .................................. 11

        E.     The Negligent Misrepresentation Claim Is Not Barred by the
               Economic Loss Doctrine ................................................................................. 14

        F.     The Complaint Adequately Pleads a Claim for Injunctive Relief ........................... 14

        G.     The Complaint Appropriately Pleads Unjust Enrichment ....................................... 19

        H.     If the Motion to Dismiss Is Granted, Plaintiff Should Be Given
               Leave to Amend ............................................................................................ 20

        I.     TP-Link's Alternative Motion to Strike Plaintiffs' Class Allegations
               Should Be Denied .......................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**

*Arroyo v. TP-Link USA Corp.*, No. 5:14-cv-04999-EJD, 2015 U.S. Dist. LEXIS 133473
(N.D. Cal. Sept. 29, 2015) .......................................................................... 9, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 4

*Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 U.S. Dist.
LEXIS 101371 (N.D. Cal. July 20, 2012) .................................................. 11, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 4

*Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 U.S. Dist. LEXIS 100528
(N.D. Cal. July 19, 2012) ............................................................................ 13

*Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 U.S. Dist. LEXIS 5493
(N.D. Cal. Jan. 15, 2014) ............................................................................. 17

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) ............................... 12, 14-18, 21

*Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2019 U.S. Dist.
LEXIS 8740 (N.D. Cal. Jan. 17, 2019) ......................................................... 21

*Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913 (N.D. Cal. 2012) ..................................... 11

*Frye v. Wine Library, Inc.*, 2006 U.S. Dist. LEXIS 96075, 2006 WL 3500605
(N.D. Cal. Dec. 4, 2006) .............................................................................. 14

*Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018 U.S. Dist. LEXIS 19542
(N.D. Cal. Feb. 6, 2018) .............................................................................. 12

*Grouse River Outfitters Ltd v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 U.S. Dist.
LEXIS 141478 (N.D. Cal. Oct. 12, 2016) ..................................................... 14

*In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058
(N.D. Cal. July 23, 2013) ............................................................................. 19

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) .................................................... 7

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) ........................................... 11

*Koh v. S.C. Johnson & Son, Inc.*, No. C-09-0927 RMW, 2010 U.S. Dist. LEXIS 654
(N.D. Cal. Jan. 6, 2010) ............................................................................... 11

*Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) .............................. 16

*Lee v. Hertz Corp.*, 330 F.R.D. 557 (N.D. Cal. 2019) ............................................ 22

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231 (N.D. Cal. 2014) ........................................ 21

*Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) .................................................. 10

*Morgan v. Apple Inc.*, No. 17-cv-05277-RS, 2018 U.S. Dist. LEXIS 82836
    (N.D. Cal. May 16, 2018).......................................................................................... 10

*Nunez v. Saks Inc.*, No. 17-56821, 2019 U.S. App. LEXIS 16147 (9th Cir. May 30, 2019)........ 10

*Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005 (N.D. Cal. 2018) ...... 7

*Puentes v. Wells Fargo Home Mortg.*, Inc., 160 Cal. App. 4th 638 (2008)................................. 7

*Rahman v. Mott's LLP*, 2018 U.S. Dis.t LEXIS 164620 (N.D. Cal. Sept. 25, 2018) ................... 16

*Reed v. Gen. Mills, Inc.*, No. C19-0005-JCC, 2019 U.S. Dist. LEXIS 99388
    (W.D. Wash. June 13, 2019) .................................................................................... 17

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015) ......................................................... 9

*Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004)............................................... 14

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)................................. 19

*Silva v. Unique Bev. Co., LLC*, No. 3:17-cv-00391-HZ, 2017 U.S. Dist. LEXIS 179362
    (D. Or. Oct. 30, 2017) ............................................................................................. 18

*Stafford v. Rite Aid Corp.*, No. 3:17-cv-1340-AJB-JLB, 2018 U.S. Dist. LEXIS 169580
    (S.D. Cal. Sep. 28, 2018)......................................................................................... 19

*United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984 (9th Cir. 2011) ................................. 5

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ....................................................... 4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)................................................... 4

*Walter v. Hughes Communs., Inc.*, 682 F. Supp. 2d 1031 (N.D. Cal. 2010)................................. 10

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010)........................................... 20

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008) ............................................. 7, 18

**Other Authorities**

55 Cal. Jur. 3d Restitution § 2 ....................................................................................... 19

1   **I.      Introduction**

2         Plaintiffs Richard Gonzales, Matthew Walker, Jon Hernandez, Julianne Chuanroong, and

3   Darren Todd ("Plaintiffs") allege a straightforward case of false and deceptive marketing by TP-

4   Link USA Corporation ("TP-Link" or "Defendant") as follows: TP-Link advertises its routers (the

5   "TP-Link Routers" or "Routers") as capable of operating at particular speeds of data transfer (e.g.,

6   "1300 + 450Mbps Wireless Speed," "1.75Gbps total available bandwidth, which includes

7   450Mbps at 2.4GHz and 1300Mbps at 5GHz," and "delivering up to 1750Mbps of Wi-Fi speed"),

8   when the Routers are incapable of operating even close to the advertised speeds.

9         In their original Complaint, Plaintiffs alleged that these representations were false and

10  confusing to consumers. Plaintiffs also alleged that the TP-Link Routers did not comply with

11  certain technical standards ("802.11" standards). In moving to dismiss the original Complaint,

12  TP-Link argued that Plaintiffs' allegations regarding router speeds and the 802.11 standards were

13  inextricably intertwined and that the question of whether the Routers conformed to the 802.11

14  standards was the determinative issue in the case. Plaintiffs disagreed and maintained that they

15  had pled two separate theories (one regarding speed representations such as those above and the

16  other regarding compliance with the 802.11 standards), each of which could stand on its own. To

17  simplify this case, Plaintiffs have now dropped the allegations regarding the 802.11 standards and

18  are focusing on TP-Link's separate speed representations.

19        In response, TP-Link again tries to divert attention from its straightforward speed

20  misrepresentations by focusing once again on the 802.11 standards, which are no longer part of

21  this case. TP-Link argues that Plaintiffs Gonzales and Walker have always understood that users

22  could not actually experience the advertised speeds when using the Routers, and that Plaintiffs'

23  sophisticated understanding of the Routers precludes their ability to pursue this case. As set forth

24  below, TP-Link's argument is completely at odds with the pleadings in this case, and with TP-

25  Link's own prior statements.

26        In its first motion to dismiss, TP-Link argued that Plaintiffs did not understand (1) that the

27  real world speeds experienced by users are irrelevant to whether the Routers comply with the

28  802.11 standards (because the standards concern theoretical speeds at an underlying "physical"

1

layer not experienced by users) and (2) that the allegation that the TP-Link Routers did not comply with 802.11 standards was not the same as the allegation that the Routers do not actually perform at the advertised speeds when used by consumers. TP-Link now reverses course to argue that Plaintiffs *did* understand those technical issues and thus Plaintiffs cannot now allege that TP-Link deceived Plaintiffs and consumers regarding the speeds of the Routers. But TP-Link's accusation of inconsistency between the pleadings is a fantasy; Plaintiffs never alleged that consumers interpret TP-Link's speed representations merely as expressions of consistency with certain technical standards concerning theoretical speeds at to the "physical" layer of the TP-Link Routers.

To the contrary, Plaintiffs have consistently maintained TP-Link misled consumers with representations about the *actual* data transfer speeds of the TP-Link Routers. The only difference between the original Complaint and the Amended Complaint is that Plaintiffs' claims have been simplified to focus on TP-Link's explicit speed representations, without reference to the 802.11 standards. TP-Link's contention that there is some inherent contradiction here, requiring dismissal of Plaintiffs' straightforward claims, has no merit.

TP-Link then doubles down on its opening gambit, arguing that *all* reasonable consumers—not just Plaintiffs—understand that TP-Link's representations regarding the wireless speeds of the TP-Link Routers are just technical minutiae regarding theoretical speeds at the "physical" layer of the Routers. TP-Link thus asks this Court to hold, as a matter of law, that TP-Link never represented or implied anything about the data speeds consumers actually experience. But ordinary consumers are not experts in computer networking and ordinary consumers do not interpret TP-Link's marketing claims in the manner TP-Link suggests, especially given that TP-Link's speed representations often appear separately from any reference to the 802.11 standards and often appear near representations regarding how consumers will actually experience the Routers (such as, "Smooth Gaming and HD Streaming"). Moreover, TP-Link's ads do not mention anything about the "physical" layer of the Routers and the ads do not clearly state that consumers cannot actually experience the advertised speeds.

In sum, the original Complaint and Amended Complaint both plausibly allege (1) that an ordinary consumer would—and in the case of the Plaintiffs *did*—read TP-Link's marketing claims as an indication that the TP-Link Routers are actually capable of providing data transfer rates at or near the advertised speeds when used by consumers and (2) that TP-Link's false speed claims thereby induced consumers—including Plaintiffs—to purchase the TP-Link Routers at prices higher than Plaintiffs and consumers would have otherwise paid and/or instead of competing routers. TP-Link's arguments to the contrary—that Plaintiffs cannot even allege plausible claims—have no basis and should be rejected.

TP-Link also moves to dismiss the Amended Complaint for a variety of technical reasons, such as lack of standing, an alleged failure to identify an injury-in-fact, an alleged bar to the negligent misrepresentation claim, inability to seek an injunction, and inability to assert unjust enrichment. Each of these arguments is just as baseless as TP-Link's primary arguments. Accordingly, the motion should be denied in full.

## II.    Background

Plaintiffs allege that Defendant manufactures, markets, advertises, and sells various models of wireless routers which Defendant claims offer customers certain bandwidths or speeds of data transfer (also referred to as the routers' signal rates). TP-Link makes representations about the "speed" or rate of data transfer for each Router model. However, TP-Link fails to disclose that the routers actually transfer data at speeds far below the advertised rates.

Each Plaintiff purchased one of the TP-Link Routers after reading and relying on the specific representations TP-Link made about the Router's data transfer speeds. Dkt. 50 ("Am. Compl.") ¶¶ 51-56, 61-67, 72-76, 81-85, 91-95. For example, Plaintiffs Gonzales, Hernandez, and Chuanroong purchased Archer C7 AC1750 Wireless Dual Band Gigabit Routers on Amazon.com after reading representations on the Router's product page such as "1300Mbps wireless speeds over the crystal clear 5GHz band and 450 Mbps over the 2.4GHz band," "1.75Gbps total available bandwidth, which includes 450Mbps at 2.4GHz and 1300Mbps at 5GHz," and other representations confirming that the product offered 1750Mbps of total bandwidth. Am. Compl. ¶¶ 29-30, 51-52, 72-73, 81-82.

The Amended Complaint identifies specific misrepresentations by TP-Link regarding the speeds of the purchased routers (Am. Compl. ¶¶ 22-35) and alleges that substantially similar representations (made in similar locations and using a common format with rate specifications in Mbps that are characterized as the "speed" of the TP-Link products) are made for all of the TP-Link Routers at issue. *See* Am. Compl. ¶¶ 2, 21, 36, 104. Each of these representations is false because, among other things, the TP-Link Routers are incapable of achieving the advertised speeds. Am. Compl. ¶¶ 41-45, 57, 68, 77, 87, 96, 118-19, 135. Moreover, TP-Link admits that it knows that the Routers cannot actually deliver the advertised speeds. *See* Dkt. #16 at 10 (arguing that its advertising was not misleading because experts in networking would know that the IEEE 802.11 standards "are protocols for only the MAC sublayer and physical layer," and that the advertised speeds do not refer to the "application layer . . . where user activities occur").

If Plaintiffs had known that the wireless data rates actually available to and capable of being experienced by them when using the Router for wireless data transfer were far below the advertised speeds, they would not have paid as much for the routers, or would have purchased different wireless routers. *Id*. ¶¶ 58-59, 69-70, 78-79, 88-89, 97-98.

## III.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In deciding such a motion to dismiss, the court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This is not akin to a "probability requirement," but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

4

(internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

## IV.   Argument

### A.   Plaintiffs' Case Theory Is Essentially the Same, Even Though the Routers' Compliance with the 802.11 Standards Is Not at Issue

TP-Link's primary argument is that "Gonzales and Walker's allegations in the FAC are diametrically opposed to their prior allegations and omissions" purportedly because the original Complaint makes clear that they understood TP-Link's speed representations to refer to "the physical layer speed, and not the application layer speed." Dkt. #54 at 8-9. Nothing could be further from the truth. The original Complaint, just like the Amended Complaint, alleged that Plaintiffs Gonzales and Walker believed that the TP-Link Routers were capable of providing the advertised speeds when used for real world wireless data transfer, that they purchased routers based on those beliefs, and that they were harmed because the Routers are not capable of providing such speeds when used by consumers for wireless data transfers. *See, e.g.*, Compl. (Dkt. 1-3) ¶¶ 30 (Mr. Gonzales "was specifically looking for a router could transfer data at a high rate of speed"), 43 (same for Mr. Walker), 32 ("Mr. Gonzales also reviewed and relied on representations on Amazon.com that originated from TP-Link regarding the wireless data speed of the router."), 45 (same for Mr. Walker), 39 ("Had Mr. Gonzales known that the TP-Link router's wireless data rate was so slow, or that it was not compliance with the IEEE 802.11n specification, he would not have paid as much for the router, or would have purchased a different wireless router."), 53 (same for Mr. Walker). The Amended Complaint is entirely consistent with and elaborates on those allegations. *See, e.g.*, Am. Compl. ¶¶ 51, 53, 58, 61, 63, 69.

TP-Link's characterization of the original Complaint is not only a complete U-turn from TP-Link's previous argument that Plaintiffs Gonzales and Walker misunderstood the 802.11 standards,[1] but it makes no sense. Plaintiffs have never claimed that they and other ordinary

---

[1] In its first motion to dismiss, TP-Link's leading argument was that Plaintiffs' claims should be dismissed because "They Rely on an Inaccurate Interpretation of the 802.11 Standards." *See* Dkt. 16 at 10. TP-Link

5

1   consumers understood that the speeds prominently advertised for the TP-Link Routers have

2   *nothing* to do with the real-world performance of the Routers, and that consumers, such as

3   themselves, are instead concerned only with theoretical speeds at the unobservable "physical"

4   layer of the Routers. Indeed, the original Complaint contains no reference at all to physical layers,

5   the testing discussed in the original Complaint measured the Routers' actual speeds when used,

6   and the Court has acknowledged that "plaintiffs insist that despite a great deal of technical detail

7   pleaded in the complaint, they are representing ordinary consumers who would not understand the

8   distinctions between 'layers' and who would reasonably understand defendants to be making

9   claims about the speed consumers will actually experience when using the routers." Dkt. #47 at 7.

10      Plaintiffs' theory is essentially the same as it was in the beginning: TP-Link misled

11   consumers with representations about the data transfer speeds consumers will actually experience

12   when using the TP-Link Routers. While the original Complaint also alleged noncompliance with

13   the 802.11 standards, the Amended Complaint avoids disputes about the 802.11 standards and

14   alleges that TP-Link's marketing is misleading even assuming the Routers comply with the

15   technical standards. If anything, Plaintiffs have simplified their allegations by removing

16   references to the 802.11 standards and by providing even more detail regarding TP-Link's explicit

17   speed representations. Despite TP-Link's suggestions to the contrary, Plaintiffs *never* alleged that

18   they understood at the time of their purchases both that (a) the 802.11 standards applied only to

19   theoretical speeds at the physical layer and (b) TP-Link's speed representations were just

20   references to the way in which the 802.11 standards applied to the "physical" layer of the Routers.

21   Moreover, TP-Link has argued that compliance with the 802.11 standards is a separate issue from

22   the actual speed available to users (*see* Dkt. #16 at 10) and TP-Link made multiple

23   representations regarding the speeds of its Routers separately from, and independently of,

24

---

25   argued that "Plaintiffs' claims are based on what a user experiences in the application layer . . . where user
    activities occur," but that the 802.11 standards concern only theoretical speeds at a "physical" layer and

26   that "realized speeds" are irrelevant to whether the routers comply with the standards. *Id.* ("Realized
    speeds do not make a router incompatible—or compatible—with the 802.11. Plaintiffs incorrectly allege

27   that it is the ascertained throughput speeds that supposedly makes the routers noncompliant with the
    802.11n and 802.11ac standards.").

28

1   representations regarding the Routers' compliance with the 802.11 standards (*see* Am. Compl.

2   ¶¶ 22-35).

3   Because the Amended Complaint does not contradict the original Complaint with respect

4   to Plaintiffs' reliance on the deceptive advertising at issue, Defendant's primary grounds for its

5   motion to dismiss (Dkt. #54 at 7-12 (Argument section A and portions of sections B and C,

6   discussing supposed inconsistency between the Complaint and Amended Complaint)) fail to

7   support Defendant's motion.

8   **B.      The Amended Complaint Plausibly Alleges Deceptive Conduct**

9   To meet the pleading standard for fraud claims under the UCL, CLRA, and FAL, a

10  plaintiff must show that "members of the public are likely to be deceived." *Williams v. Gerber*

11  *Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The challenged conduct "is judged by the effect

12  it would have on a reasonable consumer." *Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.

13  App. 4th 638, 645 (2008) (citation omitted). A true representation can mislead a reasonable

14  consumer if it is actually misleading or has the capacity, likelihood or tendency to deceive or

15  confuse members of the public. *See Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002). Whether a

16  representation is deceptive so as to mislead a reasonable consumer is normally a question of fact

17  incapable of resolution on a motion to dismiss. *Williams*, 552 F.3d at 938-39; *Organic Consumers*

18  *Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1014-15 (N.D. Cal. 2018) (Seeborg, J.)

19  (denying a motion to dismiss on plausibility grounds and explaining that "[w]hether a business

20  practice is deceptive is generally a question of fact that requires weighing of evidence from both

21  sides" and that courts grant motions to dismiss under the reasonable consumer test only in rare

22  situations in which the facts alleged in the complaint "compel the conclusion as a matter of law

23  that consumers are not likely to be deceived").

24  TP-Link argues that no reasonable consumer could possibly be misled by TP-Link's speed

25  representations because TP-Link repeatedly references the 802.11 standards in its advertising.

26  Dkt. #54 at 11-14 (Argument section C and portion of section B). This argument fails in at least

27  three ways.

28

7

1    First, TP-Link cannot establish either that consumers understand that the 802.11 standards

2    concern theoretical speeds at a physical layer or that consumers understand the difference

3    between that standard and the real-world speeds they experience. In fact, TP-Link does not even

4    attempt to make such a showing; it simply mischaracterizes the record by stating "Gonzales and

5    Walker previously confirmed—and the Court found—that a reasonable consumer would view TP-

6    Link's advertising as representing that its routers conform with the 802.11 standards and the

7    physical layer speeds regulated by those standards." Dkt. #54 at 12. As set forth above, neither

8    Plaintiffs nor the Court stated that consumers understand that the 802.11 standards concern only

9    theoretical speeds at a physical layer.

10    Second, TP-Link does not and cannot establish that every speed representation at issue

11    was made in clear conjunction with a reference to a particular 802.11 standard. In the Amended

12    Complaint, Plaintiffs have included multiple examples of speed representations where a reference

13    to an 802.11 standard did not appear in the same sentence or even in the same section of the page

14    (or package) as the speed representation. *See* Am Compl. ¶¶ 22-33. In many cases, the speed was

15    characterized as "Wi-Fi speed" and not in terms of compliance with a theoretical standard.

16    Third, TP-Link does not and cannot establish that consumers understand that any speed

17    representation appearing anywhere near a reference to an 802.11 standard necessarily refers to the

18    theoretical physical layer speed (*i.e.*, is just another way of identifying compliance with the

19    standard) rather than to actual speeds available to consumers for wireless data transfer. TP-Link

20    notes that the names or descriptions of the routers often appear in a format such as AC1750 or

21    N600, where the "AC" or "N" refers to the 802.11 standard applicable to the router and that most

22    pages include, somewhere on the page, a further reference to the standard (*e.g.*, that the router

23    "supports 802.11ac"). Dkt. #54 at 13. However, those sparse references do not explicitly inform

24    consumers that multiple, separate speed representations such as "450Mbps at 2.4GHz and

25    1300Mbps at 5GHz" or "delivering up to 1750Mbps of Wi-Fi speed" (*see, e.g.*, Am Compl. ¶ 28)

26    should *not* be interpreted to mean that the Routers are actually able to transfer data wirelessly at

27    those speeds but only that the Routers comply with standards governing capacity at a "physical

28    layer." *Cf. Reid v. Johnson & Johnson*, 780 F.3d 952, 958-59 (9th Cir. 2015) (holding that a

8

1   complaint should not be dismissed where it is far from clear typical consumers understand

2   whether two aspects of a product are related, such as that a product containing partially

3   hydrogenated vegetable oil necessarily has trans-fat).

4        It is certainly plausible that a reasonable consumer who looks at a statement on a product

5   webpage or package indicating that a router operates at a particular speed, such as 1,750 Mbps,

6   will interpret that as a statement that the router operates quickly enough to transfer that much data

7   each second in actual use, at least when operating at peak performance. A reasonable consumer is

8   not an electrical engineer or computer scientist and simply will not have the technical experience

9   to surmise that TP-Link intended its statements to describe only the physical network layer and

10  not the *actual* speeds the routers are capable of producing in operation.

11       TP-Link's argument that there is no plausible allegation of a false or misleading

12  representation or marketing in this case is similar to the argument that was rejected in another

13  class action lawsuit against TP-Link. *See Arroyo v. TP-Link USA Corp.*, No. 5:14-cv-04999-EJD,

14  2015 U.S. Dist. LEXIS 133473 (N.D. Cal. Sept. 29, 2015). In *Arroyo*, a plaintiff filed a lawsuit

15  based on TP-Link's advertising claims that a different set of routers operated at speeds of "up to

16  500 Mbps." *Id.* at *2. TP-Link moved to dismiss the claims, arguing that the "speed" claims were

17  not misleading because it was "common knowledge" that the routers would not always operate at

18  the listed speeds. *Id.* at *20-21. The court denied the motion to dismiss the fraud-based claims on

19  that ground, noting that the advertising claims were facially misleading to the extent they

20  suggested the routers were capable of speeds up to 500 Mbps, when they were not. *Id.* at *21

21  ("However, if the allegations are construed in the light most favorable to the Plaintiff, it is

22  apparent a significant proportion of the population is likely to be deceived by the representations

23  made, even with an 'up to' qualification.").

24       Similarly, in *Walter v. Hughes Communications, Inc.*, 682 F. Supp. 2d 1031, 1043-45

25  (N.D. Cal. 2010), the plaintiffs sued an internet service provider, alleging that the defendant made

26  representations (in a format such as "speeds up to x megabits per second") regarding the data

27  transfer rates of the internet connections that it offered but that "the actual speeds obtainable

28  under any of the respective service plans is substantially and systematically slower than is

9

1    advertised." The court denied the defendant's motion to dismiss and held that the allegations were

2    sufficiently plausible and particular because the plaintiffs alleged defendant made measurable

3    claims and the plaintiffs alleged that they were unable to experience the advertised speeds and

4    systematically experienced much lower speeds. *Id.* Here, Plaintiffs allege (and TP-Link has

5    already conceded) that all consumers systematically experience speeds far below the advertised

6    speeds and that consumers cannot possibly experience the advertised speeds.

7         TP-Link cannot mislead its customers to sell its routers, make millions of dollars from the

8    sales, and then escape liability by arguing in a motion to dismiss that there was no deception or

9    confusion because everyone supposedly realized what TP-Link's claims meant on some highly

10   technical level. Accordingly, Defendant's motion should be denied; Plaintiffs have adequately

11   stated claims under the CLRA, UCL, and FAL based on the misleading statements about the TP-

12   Link Routers operating at specific high speeds.

13        **C.      Plaintiffs May Pursue Claims Concerning Non-Purchased Routers**

14        Defendant argues that Plaintiffs lack standing to assert claims about router models that

15   they did not purchase. *See* Dkt. #54 at 14-16. The Ninth Circuit has squarely rejected this

16   argument, holding that whether plaintiffs "may be allowed to present claims on behalf of others

17   who have similar, but not identical, interests depends not on standing, but on an assessment of

18   typicality and adequacy of representation"—i.e. issues to be decided at class certification, not on a

19   motion to dismiss. *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015). Indeed, earlier

20   this year, the Ninth Circuit specifically reversed a district court that had held a plaintiff lacked

21   standing to represent purchasers of the defendant's other products "regardless of the similarity of

22   items purchased." *Nunez v. Saks Inc.*, No. 17-56821, 2019 U.S. App. LEXIS 16147, at *2 (9th

23   Cir. May 30, 2019). "Because Nunez has demonstrated standing to pursue his individual claims,

24   the district court should have deferred consideration of whether he was an adequate class

25   representative until the class certification stage of proceedings." *Id.*; *see also Morgan v. Apple*

26   *Inc.*, No. 17-cv-05277-RS, 2018 U.S. Dist. LEXIS 82836, at *28-29 (N.D. Cal. May 16, 2018)

27   (Seeborg, J.) (holding that whether non-purchased products are sufficiently similar to purchased

28   products boils down to "questions of whether common issues predominate and whether plaintiff

1    can adequately represent absent class members, issues that are better resolved at the class

2    certification stage") (quoting *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012));

3    *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-0927 RMW, 2010 U.S. Dist. LEXIS 654 at *7 (N.D.

4    Cal. Jan. 6, 2010) (deferring ruling on which product lines would be included in the class until the

5    class certification stage). Similarly, here, Plaintiffs have alleged sufficient economic injury to

6    demonstrate standing to pursue their individual claims and any questions about their ability to

7    pursue class claims with respect to other router models must wait until class certification.

8         Even if the Court were to consider whether the misleading marketing and resulting harm

9    for non-purchased routers are substantially similar to those for the router models purchased by

10   Plaintiffs, it is clear that Plaintiffs alleged such substantial similarity. *See* Am. Compl. ¶¶ 2, 21,

11   36, 104; *cf. Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 U.S. Dist.

12   LEXIS 101371, at *37-38 (N.D. Cal. July 20, 2012) (rejecting argument that claims regarding

13   non-purchased products should be dismissed where plaintiffs challenged "the same basic

14   mislabeling practice" across a single kind of product line (ice cream), despite differences in

15   ingredients). Moreover, TP-Link has conceded that there is a common core pattern at issue for all

16   the TP-Link Routers, as there is necessarily a significant difference between the speeds advertised

17   (which are theoretical speeds for a "physical layer" of the routers) and the speeds experienced by

18   the consumers. Dkt. #16 at 10 (explaining "the data rate measured at the application layer is

19   always lower than the physical layer data rate").

20        **D.      The Complaint Adequately Pleads Fraud With Particularity**

21        The Court should not dismiss the Amended Complaint under Rule 9(b) because Plaintiffs

22   have pleaded the "the who, what, when, where, and how" relating to Defendant's misconduct. *See*

23   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). The "who" is TP-Link. The

24   "what" comprises the sales of TP-Link Routers and the speed representations specifically set forth

25   in the Amended Complaint, and substantially similar marketing statements. Am. Compl. ¶¶ 21-36.

26   The "when" is identified for each individual Plaintiff. Am. Compl. ¶¶ 51, 61, 72, 81, 91. The

27   "where" for Plaintiffs are the webpages they viewed and the sites where they purchased the

28   Routers. Am. Compl. ¶¶ 22-35, 51-53, 56, 61-64, 67, 72-73, 76, 81-82, 85, 91-92, 95. The "how"

11

1   is by misleading consumers regarding the actual speeds of the TP-Link Routers to cause

2   consumers to purchase the Routers at prices above what consumers would otherwise pay. Am.

3   Compl. ¶¶ 4-7, 38-50, 54-60, 65-71, 74-80, 83-90, 93-99, 113-127, 133-138, 140-154, 174-181.

4          TP-Link incorrectly argues that the Amended Complaint fails to identify any injury-in-

5   fact. To the contrary, each Plaintiff alleged that he or she "would not have paid as much for the

6   router, or would have purchased a different wireless router" if he or she had known the actual

7   speeds of the Routers.  Am. Compl. ¶¶ 58-59, 69-70, 78-79, 88-89, 97-98. Those allegations are

8   sufficient allegations of injury-in-fact under controlling law. *Davidson v. Kimberly-Clark Corp.*,

9   889 F.3d 956, 965-66 (9th Cir. 2018) ("To properly plead an economic injury, a consumer must

10  allege that she was exposed to false information about the product purchased, which caused the

11  product to be sold at a higher price, and that she 'would not have purchased the goods in question

12  absent this misrepresentation.'") (applying California law).

13         TP-Link's contentions that Plaintiffs must, at this time, provide an accounting of the

14  specific price premiums they paid and to describe in more detail what problems they had with the

15  Routers, what speeds they experienced, and the testing of their personal Routers (*see* Dkt. #54 at

16  17-18) are inconsistent with *Davidson. See* 889 F.3d at 965 (holding that plaintiff was not

17  required to allege ensuing damage from the product, just that she would not have purchased the

18  product or would have paid less for it absent the deception); *see also Arroyo*, 2015 U.S. Dist.

19  LEXIS 133473 at *16-21 (rejecting TP-Link's argument that plaintiff's complaint was deficient

20  under Rule 9(b) to the extent plaintiff did not explain how he estimated that he would never

21  realize certain speeds, and holding it was sufficient that plaintiff alleged the product could never

22  reach speeds close to the advertised speed and that he would not have bought the product or

23  would have paid less if he had known the truth). Plaintiffs are also not required to specify precise

24  dollar amounts for the price premium, as that would require evidence and expert analysis far in

25  excess of any pleading requirement. *See Gregorio v. Clorox Co.*, No. 17-cv-03824-PJH, 2018

26  U.S. Dist. LEXIS 19542, at *16-17 (N.D. Cal. Feb. 6, 2018) (rejecting the argument that plaintiffs

27  were required to include "specific factual allegations about the dollar amount plaintiffs paid for

28  each product" and noting "[c]ourts routinely deny motions to dismiss similar actions in which the

1    complaint alleges that a price premium was paid but fails to allege the specific amount paid for

2    each product").

3          TP-Link cites *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 U.S. Dist. LEXIS

4    100528 (N.D. Cal. July 19, 2012), to argue that Plaintiffs were required under Rule 9(b) to

5    specifically identify an alternative router that would provide certain speeds in actual usage. Dkt.

6    #54 at 18. But *Boysen* does not impose any such requirement; rather, the *Boysen* court simply

7    listed the *complete* lack of injury allegations in that case. 2012 U.S. Dist. LEXIS 100528, at *23-

8    24 (noting that the plaintiff did not allege "that the products caused him any physical injury,"

9    "that consumption of the products may cause physical harm," "that the products function less well

10   than advertised," or "that had defendant's juice been differently labeled, he would have purchased

11   an alternative juice"). Here, by contrast, Plaintiffs have alleged that the TP-Link Routers perform

12   far below the advertised speeds and that they would not have paid as much if the TP-Link Routers

13   were accurately advertised, regardless of the prices and features of other routers. That is sufficient

14   to allege an injury-in-fact under *Davidson*.

15         TP-Link also errs in arguing that Plaintiffs fail to adequately allege TP-Link's knowledge

16   of its misconduct. Dkt. #54 at 19. In fact, Plaintiffs explicitly and directly allege that TP-Link

17   knowingly misleads consumers regarding the actual speeds they are capable of experiencing when

18   using the TP-Link Routers, that TP-Link tests the Routers before distribution, and that TP-Link

19   has acknowledged that speeds users experience (at the application layer) are substantially less

20   than the advertised speeds (which TP-Link alleges are intended to describe theoretical speeds at

21   the physical layer). *See*, *e.g.*, Am. Compl. ¶¶ 5, 38, 46, 118-19, 124, 145. TP-Link has also

22   *conceded* that it knows that the Routers cannot actually deliver the advertised speeds. Dkt. #16 at

23   10 (stating that the IEEE 802.11 standards "are protocols for *only* the MAC sublayer and physical

24   layer," acknowledging that "Plaintiffs' claims are based on what a user experiences in the

25   application layer . . . where user activities occur," and acknowledging that "the data rate measured

26   at the application layer is always lower than the physical layer data rate"). Indeed, TP-Link has

27   now decided that its best bet is to argue that *everyone* knows that consumers cannot actually

28   experience the advertised speeds. Dkt. #54 at 11-13. As set forth above, that supposition has no

13

1  basis in reality and, in any event, is not what Plaintiffs allege. TP-Link is not entitled to dismissal

2  of Plaintiffs' claims simply because it contests Plaintiffs' allegations.

3       **E.**     **The Negligent Misrepresentation Claim Is Not Barred by the**

4                **Economic Loss Doctrine**

5       TP-Link incorrectly argues that the economic loss doctrine bars Plaintiffs' negligent

6  misrepresentation claim. Although that doctrine bars tort claims for losses arising out of a

7  contract, it does not apply to "claims that 'a contract was fraudulently induced.'" *Grouse River*

8  *Outfitters Ltd v. NetSuite, Inc.*, No. 16-cv-02954-LB, 2016 U.S. Dist. LEXIS 141478, at *29

9  (N.D. Cal. Oct. 12, 2016) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988

10  (2004)). This includes inducement claims stated in negligent misrepresentation. *See Frye v. Wine*

11  *Library, Inc.*, 2006 U.S. Dist. LEXIS 96075, at *8 (N.D. Cal. Dec. 4, 2006) ("As Plaintiff's

12  negligent misrepresentation claim can be characterized as relating to Defendant's inducement of

13  Plaintiff to contract, there is also no question of it being barred by the economic loss rule.").

14       Here, Plaintiffs allege TP Link fraudulently induced them to enter into contracts, including

15  that TP-Link knowingly misled Plaintiffs regarding the actual speed of the TP-Link Routers, that

16  the actual speed capabilities of the Routers were material to Plaintiffs' purchases, that Plaintiffs

17  relied on TP-Link's speed representations, and that Plaintiffs would not have entered the contracts

18  at those prices but for TP-Link's misrepresentations. Am. Compl. ¶¶ 51-99, 113-26, 155-64.

19  Accordingly, the economic loss rule does not apply.

20       **F.**     **The Complaint Adequately Pleads a Claim for Injunctive Relief**

21       TP-Link argues that Plaintiffs lack standing to seek injunctive relief because they do not

22  allege that they are going to buy TP-Link Routers at particular times in the near future and thus

23  their risk of future injury is not "actual or imminent." Dkt. #54 at 20. But this conception of

24  Plaintiffs' position and their need for injunctive relief ignores controlling Ninth Circuit precedent.

25       In *Davidson*, the Ninth Circuit held that "a previously deceived consumer who brings a

26  false advertising claim can allege that her inability to rely on the advertising in the future is an

27  injury sufficient to grant her Article III standing to seek injunctive relief." 889 F.3d at 967. This is

28  because "[k]nowledge that the advertisement or label was false in the past does not equate to

14

1    knowledge that it will remain false in the future." *Id.* at 969. In particular, the Ninth Circuit held

2    that Davidson had "adequately alleged that she faces an imminent or actual threat of future harm

3    due to Kimberly-Clark's false advertising" where she alleged that she "continues to desire to

4    purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly

5    flushable wipes manufactured by [Kimberly-Clark] if it were possible"; "regularly visits stores . .

6    . where [Kimberly-Clark's] 'flushable' wipes are sold"; and is continually presented with

7    Kimberly-Clark's flushable wipes packaging but has "no way of determining whether the

8    representation 'flushable' is in fact true." *Id.* at 970-71.

9        Here, Plaintiffs similarly allege that each of them "intends to purchase high-speed routers

10   in the future and intends to include TP-Link routers in [his/her] consideration of routers," "[w]hen

11   faced with TP-Link's advertising and labeling in the future, [he or she] will be unable to

12   determine the true speed of the router that [he or she] will be capable of experiencing for data

13   transfer," that he or she "will not know whether TP-Link's speed representations must be

14   interpreted as applying only to the 'physical' layer, nor the relationship between speeds at that

15   layer and speeds that [he or she] will actually achieve for data transfer," and that "in the absence

16   of injunctive relief, [he or she] is likely to be harmed again by false, misleading, and unfair

17   representations with respect to the data rates of the TP-Link Routers because [he or she] will be

18   unable to determine whether such representations are false, misleading, or unfair, without

19   purchasing and testing such TP-Link Routers." Am. Compl. ¶¶ 60, 71, 80, 90, 99. Accordingly,

20   each Plaintiff has pled an actual and imminent injury. *See Davidson*, 889 F.3d at 969-71 (noting

21   that a consumer may plausibly allege "that she will be unable to rely on the product's advertising

22   or labeling in the future" or "that she might purchase the product in the future, despite the fact it

23   was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume

24   the product was improved," and that "Davidson's alleged harm is her inability to rely on the

25   validity of the information advertised on Kimberly-Clark's wipes despite her desire to purchase

26   truly flushable wipes").

27        TP Link asserts that Plaintiffs make only "mere professions of 'some day' intentions" to

28   purchase a router again rather than "concrete plans," of when they will buy routers again. But that

argument reflects a misunderstanding of *Davidson*. The Ninth Circuit did not require that a plaintiff specify a particular date or date range when she might purchase the product at issue on the mistaken belief that it had been improved, or the date when she will actually be looking at the product and decide not to purchase it because of her uncertainty regarding the truthfulness of the advertising or labeling, because the Ninth Circuit recognized that the harm justifying injunctive relief is an ongoing "informational" injury. *Id.* at 971-72 (explaining that if the plaintiff encountered the representation at issue again "today, she could not rely on that representation with any confidence" and that her injury was the state of "being unable to rely on [defendant's] representations of its product in deciding whether or not she should purchase the product in the future"). In other words, the threat of injury to Plaintiffs does not just occur at the point of some actual future purchase, but exists *right now* (and will continue in the future until the Court issues an injunction) because Plaintiffs cannot rely on the truth of TP-Link's representations despite their current desire to purchase a router at the advertised speeds.

TP-Link's reliance on *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) is misplaced. In *Lanovaz*, the Ninth Circuit upheld an order granting summary judgment after the plaintiff testified "that she would not purchase Twinings products again, even if the company removed the allegedly misleading labels." *Id.* at 591. Plaintiffs here have alleged that they *will* consider TP-Link Routers in their next router purchases but that they face anxiety and uncertainty regarding TP-Link's advertising and labeling practices, which is sufficient under *Davidson*.

Defendant's reliance on *Rahman v. Mott's LLP*, 2018 U.S. Dist. LEXIS 164620 (N.D. Cal. Sept. 25, 2018), is also misplaced. In *Rahman*, the issue was whether the statement "No Sugar Added" on the defendant's apple juice was false or misleading in light of the fact that the apple juice naturally contained sugar. *Id.* at *9. The defendant explained that "No Sugar Added" simply meant that it had not added sugar to the product. *Id.* The court concluded that plaintiff was now aware that his belief was "unfounded." *Id.* at *10. Furthermore, in *Rahman*, the plaintiff could not allege that he could be deceived again in the future by the phrase "No Sugar Added." A product with that representation would always have 0 grams of added sugar, and the amount of naturally

1   occurring sugar would be the amount stated on the label. There was no future uncertainty to

2   address.

3         Here, by contrast, Plaintiffs still cannot tell from TP-Link's marketing what actual speeds

4   they can reasonably expect to have available to them if they were to purchase TP-Link Routers.

5   Going forward, it is entirely possible that TP-Link could truthfully (or falsely) advertise a TP-

6   Link Router as "delivering up to 1750Mbps of Wi-Fi speed" or as providing "1300 + 450Mbps

7   Wireless Speed" or "1.75Gbps total available bandwidth." Although TP-Link argues it has thus

8   far intended those representations to convey esoteric information concerning physical layers

9   (rather than information about the actual speeds users care about, which is what the

10  representations naturally convey), Plaintiffs cannot assume that TP-Link's speed representations

11  will always have the same hyper-technical meaning and will not know what the *actual* speeds are

12  or if they have improved. Without the injunctive relief requested, Plaintiffs cannot be certain

13  whether TP-Link's speed representations can be taken at face value from a consumer perspective.

14  Therefore, the uncertainty (or informational injury) recognized in *Davidson* afflicts Plaintiffs here

15  and will continue to harm them until an injunction is entered.

16        Defendant's offhand reliance on a supposed disclaimer appearing in fine print at the

17  bottom of one of its exhibits (*see* Dkt. #54 at 22, Dkt. #56-2 at 95) also does not foreclose

18  Plaintiffs' entitlement to injunctive relief.

19        First, the versions of the websites submitted by TP-Link have not been authenticated and

20  likely do not cover the entire relevant time period. They are merely attached to a "Request for

21  Judicial Notice." Dkt. #54-1. There is no indication where and during what time period the

22  relevant pages were in use or whether there were material variations (in content or format) in the

23  documents or in any supposed disclaimers contained therein. In the absence of a more

24  comprehensive authentication of the labels and their applicability, TP-Link's reliance on those

25  labels cannot justify a dismissal of Plaintiffs' claims. *See Reed v. Gen. Mills, Inc.*, No. C19-0005-

26  JCC, 2019 U.S. Dist. LEXIS 99388, at *6-8 (W.D. Wash. June 13, 2019) (holding it was

27  inappropriate to take judicial notice of documents referenced in a complaint but still subject to

28  disputes concerning authenticity and applicability); *Bruton v. Gerber Prods. Co.*, No. 12-CV-

17

1   02412-LHK, 2014 U.S. Dist. LEXIS 5493, at *17-18 (N.D. Cal. Jan. 15, 2014) ("[T]he Court

2   concludes that Gerber's present request goes beyond the scope of matters that may be properly

3   subject to judicial notice and instead asks the Court to adjudicate factual disputes between the

4   parties."); *see also* Fed. R. Evid. 201(b) (providing for judicial notice only where a fact is not

5   subject to reasonable dispute because it is "generally known within the trial court's territorial

6   jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot

7   reasonably be questioned"). Plaintiffs' allegations that Defendant failed to make adequate

8   disclosures (Am. Compl. ¶¶ 6, 47-48, 119, 122) must be presumed true for purposes of this

9   motion.

10       Second, the purported "disclaimer" referenced by TP-Link is not sufficiently clear or

11   conspicuous to dispel, as a matter of law, the deceptive practices alleged by Plaintiffs. *See*

12   *Williams*, 552 F.3d at 939 (explaining "reasonable consumers should [not] be expected to look

13   beyond misleading representations on the front of the box to discover the truth from the ingredient

14   list in small print on the side of the box"); *Silva v. Unique Bev. Co., LLC*, No. 3:17-cv-00391-HZ,

15   2017 U.S. Dist. LEXIS 179362, at *13-14 (D. Or. Oct. 30, 2017) (explaining that a label as a

16   whole could be misleading, given "the prominence of the coconut depictions on the front label

17   and the word 'Coconut,'" despite a disclosure on the back or side of a product that it contains no

18   coconut).

19       As recognized by the Ninth Circuit in *Davidson*, allowing Plaintiffs to obtain the required

20   injunction in federal court is the only way to avoid the anomaly of a state law claim that cannot be

21   pursued in state court due to removal by an out-of-state defendant, yet cannot be pursued in

22   federal court due to lack of Article III standing. *Id.* If mere knowledge that one had been deceived

23   in the past defeated Article III standing, state law consumer protection statutes such as the UCL

24   "would effectively be gutted" with respect to out-of-state defendants, because their primary

25   remedy of injunctive relief would become unenforceable in federal diversity cases. *Id*. Indeed,

26   that is exactly what TP-Link seeks to do, having removed this case to federal court. Accordingly,

27   TP-Link's motion to dismiss the injunctive (and declaratory) relief claims must be denied.

28

1        **G.      The Complaint Appropriately Pleads Unjust Enrichment**

2        TP-Link mistakenly asserts that Plaintiffs cannot plead an independent claim for unjust

3    enrichment. This is not the law in the Ninth Circuit. In *Astiana*, the Ninth Circuit explained that,

4    although unjust enrichment was not recognized as a standalone cause of action under California

5    law, a claim for "unjust enrichment" could describe a valid claim that a defendant has been

6    unjustly conferred a benefit "through mistake, fraud, coercion, or request." *Astiana v. Hain*

7    *Celestial Grp., Inc.,* 783 F.3d 753, 762-63 (9th Cir. 2015) (citing 55 Cal. Jur. 3d Restitution

8    § 2). Accordingly, when a plaintiff "alleges unjust enrichment, a court may 'construe the cause of

9    action as a quasi-contract claim seeking restitution.'" *Id.* at 762 (quoting *Rutherford Holdings,*

10   *LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014)).

11       TP-Link relies on case law that was decided without the benefit of the Ninth Circuit's

12   more recent decision in *Astiana. Compare* Dkt. #54 at 22 (citing *Stowers v. Wells Fargo Bank,*

13   *N.A.*, No. 3:13-CV-05426-RS, 2014 WL 1245070, at *8, 2014 U.S. Dist. LEXIS 41712, at *26

14   (N.D. Cal. Mar. 25, 2014) (holding unjust enrichment could not be pled as a standalone claim))

15   *with Stafford v. Rite Aid Corp.*, No. 3:17-cv-1340-AJB-JLB, 2018 U.S. Dist. LEXIS 169580, at

16   *24-25 (S.D. Cal. Sep. 28, 2018) (recognizing Ninth Circuit rejection of position unjust

17   enrichment is not a cause of action). The cases Defendant cites also involved a complete failure

18   by the plaintiffs to identify any fraudulent inducement. *See Stowers*, 2014 U.S. Dist. LEXIS

19   41712, at *26 (plaintiff had failed to allege "the basic underlying requirement: enrichment that

20   lacks an adequate legal basis"); *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 U.S.

21   Dist. LEXIS 103058 at *35 and *61-62 (N.D. Cal. July 23, 2013) (noting the plaintiffs' failure to

22   plead "how" Apple had misled consumers and holding that plaintiffs in that case had not

23   adequately pled a quasi-contract theory supporting unjust enrichment).

24       Here, however, Plaintiffs adequately plead that TP-Link has been unjustly conferred the

25   benefit of sales and price premiums for the TP-Link Routers as a result of its fraudulent and

26   unlawful representations of those routers' actual speeds. This sufficiently states a claim for unjust

27   enrichment under *Astiana*, so the motion to dismiss Plaintiffs' unjust enrichment claim should be

28   denied. *See Astiana*, 783 F.3d at 762 (noting that plaintiff had alleged quasi-contract "because

19

1   Hain had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling,

2   and that Hain was 'unjustly enriched' as a result.").

3       **H.    If the Motion to Dismiss is Granted, Plaintiff Should Be Given**
4           **Leave to Amend**

5       As shown above, the Amended Complaint pleads plausible claims that TP-Link is

6   marketing and selling its TP-Link Routers using deceptive and false speed claims. If necessary,

7   however, Plaintiffs could file a Second Amended Complaint to identify additional marketing,

8   further details about Plaintiffs' purchases and their present and future injuries, or other facts

9   necessary to further address any of the bases of TP-Link's motion. As such, amendment would

10  not be futile and, if the Court decides to grant TP-Link's motion in full or in part, it should give

11  Plaintiffs leave to amend.

12      **I.    TP-Link's Alternative Motion to Strike Plaintiffs' Class Allegations**
13          **Should Be Denied**

14      Finally, in a premature challenge to class certification, Defendants move to strike

15  Plaintiffs' class allegations, referencing two previous arguments—(1) that Plaintiffs cannot

16  represent purchasers of Routers that Plaintiffs did not themselves purchase and (2) that Plaintiffs'

17  Amended Complaint is inconsistent with the original Complaint—and arguing that potential

18  differences in how consumers intended to use the Routers and the speeds they actually

19  experienced when using the Routers make class certification impossible in this case. Dkt. #54 at

20  22-25.

21      As a preliminary matter, Plaintiffs' class allegations are not a proper target of a motion

22  under Rule 12(f). Rule 12(f) authorizes a court to strike "any redundant, immaterial, impertinent,

23  or scandalous matter." *See also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir.

24  2010) (holding a district court erred in striking certain damages claims because the allegations did

25  not fit within any of the categories specified in Rule 12(f)). Plaintiffs' class allegations do not fit

26  any of these specified categories. The class allegations are not "immaterial" because they relate to

27  Plaintiffs' claims for relief. *Id.* (noting "[i]mmaterial matter is that which has no essential or

28  important relationship to the claim for relief or the defenses being plead") (quotation marks and

20

1   citation omitted). Plaintiffs' class allegations are also not "impertinent" because they pertain

2   directly to the issues presented in this case. *Id.* (noting "[i]mpertinent matter consists of

3   statements that do not pertain, and are not necessary, to the issues in question") (quotation marks

4   and citation omitted). And TP-Link does not even attempt to argue that the allegations are

5   redundant or scandalous.

6          Beyond the procedural problems with TP-Link's motion to strike, TP-Link's recycling of

7   its arguments regarding non-purchased Router models and alleged inconsistency between

8   Plaintiffs' pleadings should be rejected for the reasons set forth above. And TP-Link's additional

9   arguments regarding the potential differences among consumers regarding their reasons for

10  purchasing the Routers and their actual experiences with the Routers also fail to support the

11  motion. A class action is appropriate where consumers were generally exposed to substantially

12  similar misleading representations that were material to the purchase price of the products at

13  issue, even if there is some variety among the class members regarding their particular intended

14  uses of the products. *See Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922-HSG, 2019

15  U.S. Dist. LEXIS 8740, at *13 (N.D. Cal. Jan. 17, 2019) ("In cases alleging misrepresentation,

16  common issues predominate when plaintiffs are exposed to a common set of representations about

17  a product.") (quotation marks and citation omitted); *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 242

18  (N.D. Cal. 2014) (explaining that claims under the CLRA, UCL, and FAL are subject to common

19  proof pursuant to the "reasonable consumer" standard). Moreover, as set forth in section IV(D)

20  above, the injury at issue in this case is the price premiums for the Routers, not the consequential

21  harms each class member experienced as a result of slow internet speeds or other data transfer

22  issues. *See Davidson*, 889 F.3d at 965-66. The determination of that price premium is a standard

23  common question in consumer class actions. Also, TP-Link's deception will be determined with

24  reference to the actual speeds the TP-Link Routers are reasonably *capable* of achieving when

25  used for wireless data transfer (just as many products can be characterized in terms of their

26  general performance capacity), not based upon each consumer's actual, personal experience with

27  a Router.

28

1    Because Plaintiffs' class allegations are not immaterial or impertinent to their claims,

2  Plaintiffs have adequately pled facts satisfying the criteria for a class action under Rule 23, and

3  Plaintiffs could otherwise amend their allegations to cure any pleading issues, and because the

4  issues raised by TP-Link should be addressed at the class certification stage, TP-Link's alternative

5  motion to strike Plaintiffs' class allegations should be denied. *See Lee v. Hertz Corp.*, 330 F.R.D.

6  557, 562 (N.D. Cal. 2019) (Seeborg, J.) (denying a motion to strike class allegations, because they

7  were "certainly not redundant, immaterial, impertinent, or scandalous," and noting that "a motion

8  to strike almost inevitably is a less efficient way of moving towards a resolution on the merits"

9  and that "such motions are rarely successful").

10

11

12                                                 Respectfully submitted,

13  Dated: July 24, 2019                           **GUTRIDE SAFIER LLP**

14

15

16                                                 */s/Stephen M. Raab/*

17                                                 Adam J. Gutride
                                                   Seth A. Safier
18                                                 Marie McCrary
                                                   100 Pine Street, Suite 1250
19                                                 San Francisco, California 94111
                                                   Telephone: (415) 789-6390
20                                                 Facsimile: (415) 449-6469

21
                                                   Stephen M. Raab (pro hac vice)
22                                                 stephen@gutridesafier.com
                                                   113 Cherry Street, #55150
23                                                 Seattle, WA 98140-2205
                                                   Telephone: (415) 639-9090 x109
24

25                                                 Attorneys for Plaintiffs

26

27

28