UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GONZALES, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>TP-LINK USA CORPORATION,<br><br>  Defendant. | Case No. 18-cv-05824-RS<br><br>**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND** |

In this putative class action, the named plaintiffs each allege they purchased wireless routers from defendant TP-Link USA Corporation that were marketed as offering wireless connections at particular "speeds"—also referred to as bandwidth, data transfer rates, or data throughput rates—which in actual use do not perform at the advertised speeds. Plaintiffs' initial complaint focused on allegations that the routers failed to comply with certain industry-defined performance criteria, known as the IEEE 802.11n and/or IEEE 802.11ac standards. Faced with a motion to dismiss contending the complaint actually showed the routers *do* comply with those standards, plaintiffs suggested they were alleging, or could allege, that the marketing of the routers is deceptive even assuming they meet the specifications of the standards.

The motion to dismiss the original complaint was granted, with leave to amend. Plaintiffs' First Amended Complaint abandons any claim that the routers do not comply with the IEEE standards. Plaintiffs' remaining contentions that the routers do not perform at the "advertised speeds," however, still fail to state a viable claim because the alleged facts do not plausibly show

that reasonable consumers were misled. The motion to dismiss the First Amended Complaint, submitted without argument pursuant to Civil Local Rule 7-1(b), must be granted.

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Courts, however, need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

The First Amended Complaint, like the original complaint, expressly alleges plaintiff Richard Gonzales purchased a router that was represented as providing a speed of 1300 megabits per second on the 5GHz band and 450 megabits per second on the 2.4GHz band for a total of 1750 megabits per second. Plaintiff Matthew Walker's router was sold as offering 300 megabits per second on each band for a total of 600 megabits per second. Three new plaintiffs added to the First Amended Complaint make similar allegations.

Plaintiffs assert reasonable consumers believe that these representations refer to the speed of data transfer that consumers will experience when using the routers for wireless data transfers, but that "as used by consumers," the routers "are incapable of providing bandwidth or speed at anywhere near the advertised rates." While TP-Link argues plaintiffs are now presenting a theory that contradicts the allegations and arguments they made previously, plaintiffs insist their theory is

"essentially" the same, and they merely have dropped references to the IEEE standards "to simplify this case."

TP-Link is correct to identify some inconsistency between plaintiffs' prior arguments and their current position. Previously, plaintiffs acknowledged and alleged that consumers interpret TP-Link's advertising to mean its routers' data speeds are consistent with the IEEE standards and the data rates defined in those standards. Now, plaintiffs are contending consumers understand the speed representation to refer to data transfer at the so-called "application layer," rather than at the "networking layer" regulated by the IEEE standards.

From plaintiffs' perspective, however, their pleadings are consistent because they have always contended the speed representations described the performance they would experience in ordinary use. Although plaintiffs stop short of conceding the point, it appears their prior willingness to accept that the speed representations meant the routers complied with the IEEE standards was based on a mistaken belief as to what those standards actually mean. Plaintiffs' apparent error in embracing the IEEE standards to support the claim it was trying to plead from the outset is not fatal in and of itself. Having now disavowed any reliance on those standards, plaintiffs are free to attempt to show the advertising is misleading in some other way.

The First Amended Complaint, however, fails to do so. It is reasonable to infer from plaintiffs' allegations (and from common sense) that typical consumers are primarily concerned with the actual speed rates they generally encounter from their modems in ordinary use. From the facts alleged, however, there is no basis to infer that a typical consumer relies on the advertised "networking layer" speeds to mean that a modem in ordinary use will transfer data at the "application layer" at those speeds. Rather, the reasonable inference is that ordinary consumers may use the advertised "networking layer" speeds as a *proxy* for the performance that will be realized in daily use. Thus, while an ordinary consumer is unlikely to care or even know whether a modem transfers data at any particular rate of megabits per second at the networking layer, he or she may reasonably expect that a modem touting 1300 megabits per second on the 5GHz band and 450 megabits per second on the 2.4GHz band for a total of 1750 megabits per second performs

substantially faster than one offering 300 megabits per second on each band for a total of 600 megabits per second.

To allege plausibly that consumers have been misled by TP-Link's advertising and labeling of the routers at issue, plaintiffs would have to present something more than the fact that application layer speeds do not equal networking layer speeds. For, example, if plaintiffs could truthfully allege that other router manufacturers typically advertise only application layer speeds, then TP-Links' use of networking layer speeds might have the tendency to mislead, even if factually accurate. Alternatively, if plaintiffs truthfully could state that the gap between network layer speeds and applications layer speeds is greater in these routers than in most or many other routers, a deception claim might lie.

At this juncture, however, plaintiffs have only alleged, in conclusory fashion, that had they known they would not experience the stated speeds in ordinary use, they would have paid less, or bought other routers. Unless there is a basis to claim that "other routers" do not state speeds in the same way, or offer faster speeds at the application layer even if they advertise network layer speeds, consumers would not appear to have been misled. There is no indication TP-Links routers do not perform at the claimed speed rates at the networking layer. That consumers will experience slower rates in use is of no consequence, absent some reason that distinguishes TP-Links advertising and labeling practices from those of others.[1]

As an exercise of discretion, plaintiffs will be permitted one further opportunity to amend. Plaintiffs, of course, are not obligated to amend, and should do so only in the event they have a good faith basis for alleging facts that overcome the issues identified in this order. Any amended complaint, or a statement that no amended complaint will be presented, shall be filed within 20

---

[1] Assuming the entire industry typically advertises routers by stating networking layer speeds, a plaintiff theoretically could challenge the industry-wide practice as deceptive, although there would still be at least some issues as to how the practice caused harm. There also is at least some indication that TP-Link and others may ordinarily claim networking-level speeds because the speeds end users experience at the application layer depend on too many variables to make it practical to advertise any particular speeds.

days of the date of this order. If plaintiffs elect not to amend, a separate judgment will be entered.

**IT IS SO ORDERED**.

Dated:  October 21, 2019

RICHARD SEEBORG
United States District Judge